1  JEFFREY L. HOGUE, ESQ. (SBN 234557)
   TYLER J. BELONG, ESQ. (SBN 234543)
2  BRYCE A. DODDS, ESQ. (SBN 283491)
   **HOGUE & BELONG**
3  430 Nutmeg Street, Second Floor
   San Diego, CA 92103
4  Telephone No:  (619) 238-4720
   Facsimile No:   (619) 270-9856

### UNITED STATES DISCTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Greg Garrison,  individually and  on behalf of all others similarly situated;  ) ) ) | CASE NO.: |
| vs.                ) ) | **ANTITRUST CLASS ACTION COMPLAINT** |
| Oracle Corporation, a Delaware corporation;  ) ) ) | |
| Defendant.        ) ) ) | DEMAND FOR JURY TRIAL |

ANTITRUST CLASS ACTION COMPLAINT

Greg Garrison ("Garrison" or "Plaintiff"), individually and on behalf of all others similarly situated, (collectively, "Plaintiffs") allege the following:

## I.    INTRODUCTION

1.   This class action is brought by Plaintiff, on behalf of himself, and on behalf of all others similarly situated, who have sustained injuries or incurred damages arising from Defendants' (defined below) violations of the antitrust and unfair competition laws of the United States and the State of California.

2.   This class action challenges (1) a conspiracy among defendant Oracle ("Defendant" or "Oracle") and other companies to fix and suppress the compensation of their employees by way of Restricted Hiring Agreement (defined below).

3.   Plaintiff is informed and believes that other companies were involved with the conspiracy described below.  These companies involved in the conspiracy shall be referred to herein sometimes as unnamed "parties," "co-conspirators," or "co-participants."

4.   Without the knowledge or consent of their employees, senior executives from Oracle entered into an agreement with Google not to pursue manager level and above candidates from one another for Product, Sales, General & Administrative ("G&A") positions.  The aforementioned agreement shall be known as the "Restricted Hiring Agreement," and is set forth in greater detail in the Factual Background section below.

5.   The Restricted Hiring Agreement effectively eliminated competition for skilled labor.

6.   This Restricted Hiring Agreement first came to light on May 17, 2013.  Before that time, the identities of the companies who were included in the Restricted Hiring Agreement were unknown to Plaintiff and the general public.

7.   It is believed that, in addition to Oracle, Google, Microsoft, Novell, and Sun Microsystems[1] were part of the conspiracy to suppress wages for managerial employees in the technology industry by way of the Restricted Hiring Agreement.

_____

[1] On or about January 27, 2010, Oracle acquired Sun Microsystems ("Sun"), making it a wholly owned subsidiary.

ANTITRUST CLASS ACTION COMPLAINT

8.   The intended and actual effect of the Restricted Hiring Agreement was to fix and suppress employee compensation, and to impose unlawful restrictions on employee mobility.  Oracle's conspiracy and agreements restrained trade and the overarching conspiracy has been deemed *per se* unlawful under federal and California law.  Plaintiff seeks injunctive relief and damages for violations of: the Sherman Act, section 1 (15 U.S.C. § 1); Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, *et seq.*); and California Business & Professions Code sections 16600 and 17200, *et seq.*

9.   Plaintiff petitions this Court to allow him to represent and prosecute claims against Defendants in this class action proceeding on behalf of all those similarly situated who are residents of the State of California.  This class action is brought under Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION

10. This Court has subject matter jurisdiction over this action under 15 U.S.C. sections 4 and 16, and 28 U.S.C. sections 1331 and 1337.

11. This Court has personal jurisdiction over Defendants because each resides in or has its principal place of business in the state of California, employed individuals in the state of California during the class period, and has had substantial contacts within the state of California in furtherance of the injuries and conspiracy described herein.

12. Venue is proper in this judicial district under 15 U.S.C. section 22 and 28 U.S.C. section 1391(b)(1)-(2) because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this judicial district, a substantial portion of the affected interstate trade and commerce was carried out in this district, and multiple defendants reside in this district.

## INTRADISTRICT ASSIGNMENT

13. Under Civil Local Rule 3-2(c) and (e), assigning this case to the San Jose Division of the United States District Court for the Northern District of California is proper as a substantial part of the events and omissions giving rise to Plaintiff's antitrust claims occurred within the county of San Jose.

ANTITRUST CLASS ACTION COMPLAINT

1

**PARTIES**

2      14. Plaintiff Garrison, an individual, is a former employee of Oracle.  Mr. Garrison worked for

3  Oracle from approximately December 2008 to June 2009.

4      15. Defendant Oracle[2] is a Delaware corporation with its principal place of business located at

5  500 Oracle Parkway, Redwood Shores, CA 94065.

6

7

**FACTUAL BACKGROUND**

8  **A.  The Restricted Hiring Agreement Conspiracy**

9      16. Oracle is a U.S.-based multinational computer technology corporation.  It specializes in

10  developing and marketing computer hardware systems and enterprise software products –

11  particularly its own brands of database management systems.  Oracle is the second-largest

12  software maker by revenue, after Microsoft.

13      17. Oracle also builds tools for database development and systems of middle-tier software,

14  enterprise resource planning (ERP) software, customer relationship management (CRM) software

15  and supply chain management (SCM) software.

16      18. Managerial employees at companies, such as Oracle, are in high demand because they,

17  among other things, are skilled at managing specialized technology labor.

18      19. In May 2007, Oracle and Google entered into a Restricted Hiring Agreement pursuant to

19  which Oracle, Google, and the other technology companies who were a party to the Restricted

20  Hiring Agreement agreed to the following:

21          "1) Not to pursue manager level and above candidates for Product, Sales, or
            G&A roles – even if they have applied to [any of the other companies who are
22          parties to the Restricted Hiring Agreement];

23           2) However, there are no restrictions to our recruiting from these companies at
            individual contributor levels for PSG&A; [and]
24

25           3) Additionally, there are no restrictions at any level for engineering
            candidates."
26

27

28  [2] Sun was a California corporation until its acquisition by Oracle in January 27, 2010.

ANTITRUST CLASS ACTION COMPLAINT

20. Senior executives at Oracle reached this Restricted Hiring Agreement through direct, and explicit communications.  The executives actively managed and enforced the Restricted Hiring Agreement through direct, and indirect communications.

21. The Restricted Hiring Agreement covered all managerial employees and above at Oracle and was not necessarily limited by geography, job function, product group, or time period.

22. Oracle employees were not apprised and did not consent to this restriction on their mobility of employment.

23. Plaintiff was a Senior Account Manager who managed sales of Oracle's Crystal Ball software to the North East United States and Eastern Canada.  Crystal Ball was a spreadsheet-based software used for predictive modeling, forecasting, simulation, and optimization across various business industries.

24. At all relevant times, Plaintiff had between two to six direct reports that reported to him at Oracle.  Thus, the Restricted Hiring Agreement necessarily applied to Plaintiff and precluded parties to the Restricted Hiring Agreement from hiring Plaintiff.

25. The Restricted Hiring Agreement conspiracy was part of a bigger conspiracy where technology companies located primarily in Silicon Valley, including, without limitation, Google, entered into express Anti-Solicitation Agreements (defined below), which included not only the Restricted Hiring Agreement, but also a "Do Not Cold Call Agreement" with one another, as well as a covenant to inform each other before hiring one another's employees (the "Sensitive Companies Agreement") .  The Restricted Hiring Agreement, the Do Not Cold Call Agreement, and the Sensitive Companies Agreement were all memorialized by, and made a part of the same broader express agreement and shall collectively be referred to herein as the Anti-Solicitation Agreements.  As further explained below, the "Do Not Cold Call Agreement was deemed unlawful *per se* by the Department of Justice ("DOJ").

26. In approximately 2009, the Antitrust Division of the United States Department of Justice (the "DOJ") investigated several technology giants, such as Google and Apple, and their mutual conspiracy to not solicit one another's employees. The DOJ examined Google's "Do Not Cold Call" provisions of the Anti-Solicitation Agreements that were the subject of the

ANTITRUST CLASS ACTION COMPLAINT

investigation, and found that the agreements were "facially anticompetitive" and violated the Sherman Act *per se*.  According to the DOJ, the Anti-Solicitation Agreements "eliminated significant forms of competition" and, "substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities."  The DOJ concluded that the "Do Not Cold Call" agreements "disrupted the normal price-setting mechanisms that apply in the labor setting."

27. At the time of the DOJ's investigation and findings, the only Defendant disclosed as being a part of the conspiracy to control labor costs was Google.  After the DOJ's findings, Google signed a settlement enjoining it from making such "Do Not Cold Call" Agreements again.  Thereafter, on or about May 17, 2013, the identity of all (or almost all) of the companies who were parties to the Anti-Solicitation Agreements became publicly available.  Thus, in May 2013, the public first became capable of learning about the total conspiracy as well as learning that Oracle was among the participants to the Restricted Hiring Agreement.

28. The Restricted Hiring Agreement between Google and Oracle unreasonably restrained trade in violation of the Sherman Act (15 U.S.C. § 1), and the Cartwright Act (Cal. Bus. & Prof. Code §§ 16720 *et seq.*), and constituted unfair competition and unfair practices in violation of California's Unfair Competition Law, California Business & Professions Code sections 17200, *et seq.* and 16600.  Such agreements resulted in Google and Oracle refusing to competitively seek contracts with one another's managerial employees.

29. In a lawfully competitive labor market, the Defendant and each of its co-participants in the Restricted Hiring Agreement would have competed against each other for employees and would have hired employees according to the needs of their business and the going market rates for employee wages.  And, in such a lawfully competitive labor market, the participants in the Restricted Hiring Agreement would have engaged in such employee hiring in direct competition with one another, resulting in employees accepting offers from the company who makes the most favorable offer of employment.  This competitive process helps to ensure that companies benefit by taking advantage of rivals' efforts expended soliciting, interviewing, and training skilled employees.  It also benefits the public through fostering flow of new non-proprietary information

and technologies across competing industry leaders.  And, this competitive process benefits our country's work force by compensating employees for the fair market value of their skills knowledge, and experience.

30. For these reasons, competitive hiring serves as a critical competitive role, particularly in the high technology industry where companies benefit from obtaining employees with advanced skills and abilities.  By restricting hiring, employee salaries at competing companies is restricted and depressed, decreasing the pressure of an employee's current employer to match a rival's offer and vice versa.  Restrictions on hiring also limit an employee's leverage when negotiating his or her salary with his or her current employer.  Furthermore, when companies restrict hiring of rival companies' top tiers employees (e.g., management level and above) the wages of those top tier employees, as well as all other employees underneath them are suppressed because companies are highly unlikely to offer higher salaries to subordinates than they are to managers and executives.  As a result, the effects of hiring restrictions impact all employees of participating companies, regardless of whether or not an employee was within the class of employees expressly covered by the Restricted Hiring Agreement.

31. Oracle entered into, implemented, and policed the Restricted Hiring Agreement with the knowledge of the overall conspiracy, and did so with the intent and effect of fixing the compensation of the employees of participating companies at artificially low levels.  As additional companies joined the conspiracy to control labor costs, competition among participating companies for skilled labor continued to drop, and compensation and mobility of the employees of participating companies was further suppressed.  These anticompetitive effects were the purpose of the Restricted Hiring Agreements, and Defendant and the other parties to the Anti-Solicitation Agreement succeeded in lowering the compensation and mobility of their employees below what would have prevailed in a lawful and properly functioning labor market.

32. Plaintiff and each member of the Class (defined below) was harmed by the Restricted Hiring Agreement herein alleged.  The elimination of competition and suppression of compensation and mobility had a negative cumulative effect on all Class members.  For example, an individual who was a managerial employee of Oracle received faced unlawful obstacles to

ANTITRUST CLASS ACTION COMPLAINT

mobility as a result of the illicit Restricted Hiring Agreements they had with Google and others. In fact, under the Restricted Hiring Agreement, an Oracle managerial employee was prevented from consideration even if he or she proactively applied to Google, and vice versa.

## INTERSTATE COMMERCE

33. Defendant's conduct substantially affected interstate commerce throughout the United States and caused antitrust injury throughout the United States because, among other things, Defendant has employees across state lines as well as did business over state lines.

## CLASS ALLEGATIONS

34. Plaintiff sues on his own behalf and, under Federal Rule of Civil Procedure 23 on behalf of the following Class:

> All persons who worked at any time from May 10, 2007 to the present for Oracle in the United States in any manager level or above positions for Product, Sales, or General and Administrative roles, excluding engineers.

35. The above-referenced class shall be known as the Plaintiff Class.

36. The Plaintiff Class has thousands of members, as each defendant employed hundreds or thousands of class members each year. The Plaintiff Class is so numerous that individual joinder of all members is impracticable.

37. The Plaintiff Class is ascertainable from Defendant's employee and or payroll records.

38. Plaintiff's claims are typical of the claims of other class members comprising the Plaintiff Class as they arise out of the same course of conduct and the same legal theories, and they challenge Defendant's conduct with respect to the Plaintiff Class as a whole.

39. Plaintiff has retained able and experienced class action litigators as their counsel. Plaintiff has no conflicts with other class members and will fairly and adequately protect the interests of Plaintiff Class.

40. This case raises common questions of law and fact that are capable of class-wide resolution, including:

    a. whether Oracle agreed not to pursue other companies' managerial-level and above employees;

ANTITRUST CLASS ACTION COMPLAINT

      b.   whether Oracle's Restrictive Hiring Agreement was a *per se* violation of the Sherman Act;

      c.   whether Oracle's Restrictive Hiring Agreement was a *per se* violation of the Cartwright Act;

      d.   whether Oracle's Restrictive Hiring Agreement is void as a matter of law under California Business and Professions Code section 16600;

      e.   whether Oracle's Restrictive Hiring Agreement constituted unlawful or unfair business acts or practices in violation of California Business and Professions Code section 17220;

      f.   whether Oracle fraudulently concealed its conduct;

      g.   whether Defendant's conspiracies and associated agreements restrained trade, commerce, or competition;

      h.   whether Plaintiff and the other members of the Plaintiff Class suffered injury as a result of Oracle's conspiracies and Restrictive Hiring Agreement;

      i.   whether any such injury constitutes antitrust injury; and

      j.   the measure of damages incurred by Plaintiff and Plaintiff Class.

41.     These and other common questions predominate over any questions affecting only individual class members.

42.     This class action is superior to any other form of resolving this litigation. Separate actions by individual class members would be enormously inefficient and would create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims. There will be no material difficulty in the management of this action as a class action.

## STATUTE OF LIMITATIONS

### Continuing Violation

43.     Defendant's conspiracy was a continuing violation through which Defendant repeatedly invaded Plaintiff and Plaintiff Class' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

///

///

44.     Defendant communicated among itself and among the other participants to the Anti-Solicitation Agreement by phone and e-mail and through in-person meetings to further the conspiracy and the secrecy of the conspiracy as described in this Complaint.

**Fraudulent Concealment**

45.     Before May 17, 2013, at the earliest, Plaintiff did not have actual or constructive notice, and was not on inquiry notice of certain facts when he discovered he has certain claims and can seek certain relief.  The Restrictive Hiring Agreement between Oracle and Google was first publicly disclosed in a filing in this Court on May 17, 2013.  Thus, the identity of Oracle's involvement in the conspiracy remained unknown and unknowable to Plaintiff until that time.

46.     Defendant took active measures to keep the Restrictive Hiring Agreement secret, including, without limitation, ensuring that any written memorialization of the Restrictive Hiring Agreement was not widely disseminated or disclosed to any employees other than Oracle's officers.  For example, during meetings concerning the acquisition of new employees, former CEO, Larry Ellison, and current CEO, Safra Catz, personally ensured that the division of Oracle engaging in the employee acquisitions was not hiring employees from companies who were co-participants in the Restrictive Hiring Agreement.  In order to keep the Restrictive Hiring Agreement secretive, Oracle's officers refrained from delegating such tasks.  Defendant also provided pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions made under the conspiracy.  Defendant's explanations for its conduct served only to further and conceal Defendant's conspiracy.

47.     Defendant has attempted to create the false impression that their decisions are independent and that it was acting in accordance with the antitrust laws.

48.     As a result of Defendant's fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to the claims that Plaintiff and Plaintiff Class have as a result of the anticompetitive and unlawful conduct alleged herein.

///

///

///

ANTITRUST CLASS ACTION COMPLAINT

**FIRST COUNT**

**(Violation of the Sherman Act, *15 U.S.C. § 1*)**

49.     Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

50.     15 U.S.C. section 1 provides, in part, that every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

51.     Defendant, by and through its officers, directors, employees, agents, or other representatives, has entered into an unlawful agreement, combination, and conspiracy in restraint of trade, in violation of 15 U.S.C. section 1.  Specifically, Defendant agreed in advance that Google and Oracle would not pursue one another's managerial employees.  All of the foregoing directly and negatively affected and suppressed the wages of managerial employees at Oracle. Oracle and Google conspired and agreed to restrict competition for services provided by Plaintiff and members Plaintiff Class through Restrictive Hiring Agreements and agreements to fix the wage and salary ranges for said class members, all with the purpose and effect of suppressing class members' compensation and restraining competition in the market for services of class members.

52.     Defendant's conduct injured and damaged Plaintiff and members of the Plaintiff Class and the Oracle Class by suppressing compensation to levels lower than the members otherwise would have received in the absence of the Restrictive Hiring Agreements, all in an amount to be proven at trial.

53.     Defendant's agreements are *per se* violations of the Sherman Act.

54.     The acts done by each defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

55.     As a result of the above violations, Plaintiff and Plaintiff Class have been damaged in an amount according to proof.  Accordingly, Plaintiff and Plaintiff Class seeks three times their

ANTITRUST CLASS ACTION COMPLAINT

damages caused by Defendant's violations of the Sherman Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendant from ever again entering into similar agreements in violation of the Sherman Act.

## SECOND COUNT

**(Violation of the Cartwright Act, *Cal. Bus. & Prof. Code §§ 16720, et seq.*)**

56.     Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

57.     Except as expressly provided in California Business and Professions Code sections 16720 *et seq.*, every trust is unlawful, against public policy, and void.  A trust is a combination of capital, skill, or acts by two or more persons for any of the following purposes:

(a) To create or carry out restrictions in trade or commerce.

(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.

(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

58.     Defendant, by and through its officers, directors, employees, agents or other representatives, has entered into an unlawful agreement, combination, and conspiracy in restraint of trade, in violation of California Business and Professions Code section 16720.

59.     Defendant Oracle conspired with Google and entered into an unlawful trust agreement in restraint of trade and commerce by, among other things, restricting and limiting, to a substantial degree, competition among these defendants' skilled labor, and fixing the wages and salary ranges for said class members, all with the purpose and effect of suppressing class members' compensation and restraining competition in the market for services of class members. As of 2007, Oracle involved itself with this conspiracy.

60.     As a direct and proximate result of these Defendant's conduct members of the

ANTITRUST CLASS ACTION COMPLAINT

Plaintiff Class were also injured by incurring suppressed compensation to levels lower than the members otherwise would have incurred in the absence of Defendant's unlawful trust, all in an amount to be proven at trial.

61.     Defendant, Plaintiff, and other class members are "persons" within the meaning of the Cartwright Act as defined in California Business and Professions Code section 16702.

62.     Defendants' agreements are *per se* violations of the Cartwright Act, and their conduct violates the Cartwright Act.

63.     As a result of the above violations, Plaintiff and Plaintiff Class have been damaged in an amount according to proof.

## THIRD COUNT

### (Unfair Competition, *Cal. Bus. & Prof. Code §§ 17200 et seq.*)

64.     Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

65.     Under California Business and Professions Code sections 17200, *et seq.*, any person who engages, has engaged, or proposes to engage in unfair competition—which includes any fraudulent or unlawful business act or practice—may be enjoined in any court of competent jurisdiction, may be held liable for restoring to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition, and may be held liable for civil penalties.

66.     Defendant is a "person" under the meaning of sections 17200, *et seq.*

67.     Defendant Oracle entered into an illegal Restrictive Hiring Agreement to suppress wages of their respective workforce by restricting the ability of its managerial employees from attaining employment with the other technology companies.

68.     Defendant's acts were unfair, unlawful, and or unconscionable, both in their own right and because they violated the Sherman Act and the Cartwright Act.

69.     Defendant's conduct injured Plaintiff and other members of Plaintiff Class suppressing the value of managerial employees' services and thus suppressing their wages.

ANTITRUST CLASS ACTION COMPLAINT

Plaintiff and other class members are therefore persons who have suffered injury in fact and lost money or property as a result of the unfair competition under California Business and Professions Code section 17204.

70.     Under California Business and Professions Code section 17203, disgorgement of Defendant's unlawful gains is necessary to prevent the use or employment of Defendant's unfair practices and restitution to Plaintiff and other class members is necessary to restore to them the money or property unfairly withheld from them.

71.     As a result of the above unlawful acts, Plaintiff and Plaintiff Class have been damaged in an amount according to proof.

## **FOURTH COUNT**

### **(Violation of *Cal. Bus. & Prof. Code §§ 16600 et seq.*)**

72.     Plaintiff incorporates by reference all the allegations in the above paragraphs as if fully set forth herein.

73.     Under California Business and Professions Code section 16600, *et seq.*, except as expressly provided for by section 16600, et seq., every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

74.     Defendant entered into, implemented, and enforced express agreements that are unlawful and void under Section 16600.

75.     Defendant's agreements and conspiracy have included concerted action and undertakings among the Defendant and others with the purpose and effect of: (a) reducing open competition among Defendant and other companies for skilled labor; (b) reducing employee mobility; (c) reducing or eliminating opportunities for employees to pursue lawful employment of their choice; and (d) limiting employee professional betterment.

76.     Defendant's agreements and conspiracy are contrary to California's settled legislative policy in favor of open competition and employee mobility, and are therefore void and unlawful.

ANTITRUST CLASS ACTION COMPLAINT

77.     Defendant's agreements and conspiracy were not intended to protect and were not limited to protecting any legitimate proprietary interest of Defendant.

78.     Defendant's agreements and conspiracy do not fall within any statutory exception to Section 16600, *et seq.*

79.     The acts done by Defendant and each of the parties to the Anti-Solicitation Agreement as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each defendant's affairs.

80.     Accordingly, Plaintiff and members of Plaintiff Class seek a judicial declaration that Defendant's agreements and conspiracy are void as a matter of law under Section 16600, and a permanent injunction enjoining Defendant from ever again entering into similar agreements in violation of Section 16600.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself individually and on behalf of Plaintiff Classes prays for relief and judgment against Defendant and any later named defendant, jointly and severally as follows:

1.  that the Court determine that this action may be maintained as a class action;

2.  Appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

3.  Pre-judgment and post-judgment interest as provided by law or allowed in equity;

4.  An incentive award to compensate Plaintiff for his effort in pursuit of this litigation;

5.  For nominal damages;

6.  For compensatory damages;

7.  For injunction against Defendant, prohibiting any further acts in continuance or perpetuation of any Restrictive Hiring Agreements;

8.  For restitution of all monies due to Plaintiff, and the Plaintiff Class, and disgorged profits from the unlawful business practices of Defendant;

ANTITRUST CLASS ACTION COMPLAINT

1           9.  For costs of suit and expenses incurred herein;

2           10. For reasonable attorneys' fees;

3           11. For treble damages; and

4           12. For all such other and further relief the Court may deem just and proper.

5

6

7           **JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL**

8           Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

9   on all issues so triable.

10

11   Dated:  October 14, 2014           **HOGUE & BELONG**

12

13                     *s/ Jeffrey L. Hogue*

14                     JEFFREY L. HOGUE
                      TYLER J. BELONG

15                     BRYCE A. DODDS
                      Attorney for Plaintiff and on behalf of those

16                     similarly situated

17

18

19

20

21

22

23

24

25

26

27

28

ANTITRUST CLASS ACTION COMPLAINT