1  LATHAM & WATKINS LLP
     Daniel M. Wall (Bar No. 102580)
2    Sarah M. Ray (Bar No. 229670)
     505 Montgomery Street, Suite 2000
3    San Francisco, California 94111-6538
     Telephone: (415) 391-0600
4    Facsimile:  (415) 395-8095
     Email: Dan.Wall@lw.com
5    Email: Sarah.Ray@lw.com

6    Elyse M. Greenwald (Bar No. 268050)
     John Hancock Tower, 27th Floor
7    200 Clarendon Street
     Boston, Massachusetts 02116
8    Telephone: (617) 948-6000
     Facsimile:  (617) 948-6001
9    Email: Elyse.Greenwald@lw.com

10  ORACLE CORPORATION
     Dorian Daley (Bar No. 129049)
11   Deborah K. Miller (Bar No. 95527)
     James C. Maroulis (Bar No. 208316)
12   500 Oracle Parkway
     Redwood Shores, California 94065
13   Telephone: (650) 506-5200
     Facsimile:  (650) 506-7114
14   Email: dorian.daley@oracle.com
     Email: deborah.miller@oracle.com
15   Email: jim.maroulis@oracle.com

16  Attorneys for Defendant
    ORACLE CORPORATION

17

18                          UNITED STATES DISTRICT COURT

19                         NORTHERN DISTRICT OF CALIFORNIA

20                                SAN JOSE DIVISION

21  GREG GARRISON, individually and on          CASE NO. 5:14-cv-04592-LHK
    behalf of all others similarly situated;
22
                       Plaintiff,               **DEFENDANT ORACLE CORPORATION'S**
23                                              **MOTION FOR JUDGMENT ON THE**
              v.                                **PLEADINGS**
24
    ORACLE CORPORATION, a Delaware              Date:   April 23, 2015
25  corporation;                                Time:   1:30 p.m.
                                                Place:  Courtroom 8, 4th Floor
26                     Defendant.               Judge: Honorable Lucy H. Koh

27

28

1

## TABLE OF CONTENTS

2

**Page**

3   I.   INTRODUCTION .................................................................................................. 1

4   II.  STATEMENT OF ISSUES TO BE DECIDED ................................................... 3

5   III. BACKGROUND .................................................................................................. 3

6        A.   The DOJ Investigation ............................................................................. 3

7        B.   The Follow-On Class Action:  In re High-Tech Employee Antitrust
              Litigation ................................................................................................. 4
8
         C.   Plaintiff's Allegations Against Oracle ..................................................... 5
9
     IV.  ARGUMENT ....................................................................................................... 6
10
         A.   Legal Standard ......................................................................................... 6
11
         B.   The Court Should Enter Judgment On Plaintiff's Antitrust Claims ...................... 8
12
              1.   Plaintiff's Antitrust Claims Are Barred By The Statute Of
13                 Limitations ................................................................................... 8

14                 a.   Plaintiff's Allegations Of A Continuing Violation
                        Are Conclusory And Insufficient To Toll The
15                      Statute Of Limitations ....................................................... 8

16                 b.   Plaintiff Cannot Toll The Limitations Period Due
                        To Fraudulent Concealment ............................................. 10
17
              2.   Plaintiff Has Failed To Plead Any Injury-in-Fact Resulting
18                 From The Alleged Conspiracy .................................................... 13

19            3.   Plaintiff Does Not Allege An Agreement Between Oracle
                   And Google ................................................................................. 16
20
         C.   Plaintiff Also Fails To State A Claim Under California Business
21            And Professions Code § 17200 Because He Is Not Eligible For
              Restitution Or Disgorgement ................................................................. 20
22
         D.   Plaintiff Lacks Standing To Seek Injunctive Or Declaratory Relief
23            Because He Is A Former Oracle Employee .......................................... 22

24   V.   CONCLUSION ................................................................................................. 24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AICCO, Inc. v. Ins. Co. of N. Am.,*
  90 Cal. App. 4th 579 (2001) ...................................................................................21

*Arakaki v. Lingle,*
  477 F.3d 1048 (9th Cir. 2007) ...............................................................................22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................................7, 16

*Brantley v. NBC Universal, Inc.,*
  675 F.3d 1192 (9th Cir. 2012) ...............................................................................16

*Cafasso v. Gen. Dynamics C4 Sys.,*
  637 F.3d 1047 (9th Cir. 2011) ....................................................................7, 10, 11

*Clark v. City of Lakewood,*
  259 F.3d 996 (9th Cir. 2001) .................................................................................23

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.,*
  236 F.3d 1148 (9th Cir. 2001) ...............................................................................13

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
  858 F.2d 499 (9th Cir. 1988) .................................................................................10

*Couch v. Morgan Stanley & Co.,*
  2014 U.S. Dist. LEXIS 54428 (E.D. Cal. Apr. 18, 2014)......................................24

*Credit Bureau Servs. v. Experian Info. Solutions, Inc.,*
  2013 U.S. Dist. LEXIS 94313 (C.D. Cal. June 28, 2013) ................................17, 18

*Drake v. Morgan Stanley & Co.,*
  2010 U.S. Dist. LEXIS 47627 (C.D. Cal. Apr. 30, 2010) ......................................23

*Dworkin v. Hustler Magazine, Inc.,*
  867 F.2d 1188 (9th Cir. 1989) .................................................................................7

*Gerlinger v. Amazon.com, Inc.,*
  526 F.3d 1253 (9th Cir. 2008) ..........................................................................13, 14

*Gest v. Bradbury,*
    443 F.3d 1177 (9th Cir. 2006) ......................................................................................23

*Global Services v. IKON Office Solutions,*
    2011 U.S. Dist. LEXIS 143123 (N.D. Cal. Dec. 13, 2011)................................10, 11

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) ....................................................................................24

*In re DRAM Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................7

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.,*
    647 F. Supp. 2d 1250 (W.D. Wash. 2009)..................................................................17

*In re High-Tech Emp. Antitrust Litig.,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ............................................................ *passim*

*In re Late Fee & Over Limit Litig.,*
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................................17

*In re NCAA Student-Athlete Name,*
    2011 U.S. Dist. LEXIS 46841 (N.D. Cal. May 2, 2011) ............................................16

*In re Online DVD Rental Antitrust Litig.,*
    2011 U.S. Dist. LEXIS 150312 (N.D. Cal. Nov. 22, 2011)........................................14

*In re Transpacific Passenger Air Transp. Antitrust Litig.,*
    2011 U.S. Dist. LEXIS 49853 (N.D. Cal. May 9, 2011) ...........................10, 11, 12

*Jadwin v. Cnty. of Kern,*
    2009 U.S. Dist. LEXIS 72369 (E.D. Cal. Aug. 6, 2009)............................................24

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ....................................................................................11

*Kendall v. Visa U.S.A. Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ................................................................16, 18, 19

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
    232 F.3d 979 (9th Cir. 2000) ......................................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ........................................................................................21, 22

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ......................................................................................22

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)............................................................................................13, 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ORACLE'S MOT. FOR J. ON PLEADINGS
CASE NO. 5:14-CV-04592-LHK

*Milligan v. Am. Airlines, Inc.*,
    327 F. App'x 694 (9th Cir. 2009) ........................................................................24

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)..............................................................................................16

*Nat'l ATM Council, Inc. v. Visa, Inc.*,
    922 F. Supp. 2d 73 (D.D.C. 2013) .................................................................14, 15

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ..................................................................................7

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
    202 F.3d 1088 (9th Cir. 2000) ..............................................................................13

*Nw. Publ'ns, Inc. v. Crumb*,
    752 F.2d 473 (9th Cir. 1985) ................................................................................13

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    939 F. Supp. 2d 1002 (N.D. Cal. 2013) ...............................................................20

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ..................................................................................9

*Plumlee v. Pfizer, Inc.*,
    2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014) ......................................7

*Prianto v. Experian Info. Solutions, Inc.*,
    2014 U.S. Dist. LEXIS 94673 (N.D. Cal. July 10, 2014).......................................7

*Rambus Inc. v. Samsung Elecs. Co.*,
    2007 U.S. Dist. LEXIS 3088 (N.D. Cal. Jan. 4, 2007), *aff'd*, 645 F.3d 1336
    (Fed. Cir. 2011).............................................................................................10, 11

*Ramirez v. Manpower, Inc.*,
    2014 U.S. Dist. LEXIS 4072 (N.D. Cal. Jan. 13, 2014) .......................................24

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ................................................................................11

*Samsung Elecs. Co. v. Panasonic Corp.*,
    747 F.3d 1199 (9th Cir. 2014) ................................................................................9

*Somers v. Apple*,
    729 F.3d 953 (9th Cir. 2013) ...........................................................................14, 15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th
    Cir. 2001) ..............................................................................................................7

*Stanislaus v. Food Prods. Co. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011)........................................................17, 19

*Thomas v. Fin. Recovery Servs.*,
    2013 U.S. Dist. LEXIS 19775 (C.D. Cal. Jan. 31, 2013) ........................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).........................................................................................23

*Walsh v. Nevada Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) ..............................................................................23

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*,
    2013 U.S. Dist. LEXIS 138896 (N.D. Cal. Sept. 26, 2013) .....................................7

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................11

*Zanze v. Snelling Servs., LLC*,
    412 F. App'x 994 (9th Cir. 2011) ..........................................................................23

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)............................................................................................8, 9

**STATUTES**

15 U.S.C.
    § 15b........................................................................................................................8
    § 16b........................................................................................................................8

Cal. Bus. & Prof. Code
    § 16600...................................................................................................3, 20, 22, 24
    § 16750.1..................................................................................................................8
    § 17200.........................................................................................................3, 8, 20
    § 17203..................................................................................................................21
    § 17208....................................................................................................................8

**RULES**

Fed. R. Civ. P.
    9(b)..........................................................................................................10, 11, 13
    12(b)(6) ...............................................................................................................6, 7
    12(c)....................................................................................................................6, 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ORACLE'S MOT. FOR J. ON PLEADINGS
CASE NO. 5:14-CV-04592-LHK

1

**DEFENDANT ORACLE CORPORATION'S
NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

2

3        TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

4        PLEASE TAKE NOTICE THAT on April 23, 2015 at 1:30 p.m., or as soon thereafter

5   as counsel may be heard before the Honorable Lucy H. Koh, United States District Judge, in

6   Courtroom 8 of the above-captioned court, located at 280 South 1st Street, San Jose, California,

7   95113, Defendant Oracle Corporation ("Oracle") will and hereby does move for an order

8   entering judgment on the pleadings on plaintiff's Antitrust Class Action Complaint pursuant to

9   Federal Rule of Civil Procedure 12(c).

10        This motion is based on this Notice of Motion and Motion, the Memorandum of Points

11   and Authorities, Oracle's Request for Judicial Notice, the Declaration of Sarah M. Ray in

12   Support of Oracle's Request for Judicial Notice, the records on file in this case, the arguments

13   of counsel, and any other matter that the Court may properly consider, or that may be presented

14   to the Court at the hearing.

15        Oracle respectfully requests that the Court grant its motion and enter judgment in

16   Oracle's favor on each of plaintiff's claims.

17

18   Dated:  January 5, 2015                    Respectfully Submitted,

19                                              /s/ Daniel M. Wall

20                                              Daniel M. Wall

21                                              LATHAM & WATKINS LLP
                                                  Daniel M. Wall (Bar No. 102580)
22                                                Sarah M. Ray (Bar No. 229670)
                                                  505 Montgomery Street, Suite 2000
23                                                San Francisco, California 94111-6538
                                                  Telephone: (415) 391-0600
24                                                Facsimile: (415) 395-8095
                                                  Email: Dan.Wall@lw.com
25                                                Email: Sarah.Ray@lw.com

26                                                Elyse M. Greenwald (Bar No. 268050)
                                                  John Hancock Tower, 27th Floor
27                                                200 Clarendon Street
                                                  Boston, Massachusetts 02116
28                                                Telephone: (617) 948-6000

Facsimile: (617) 948-6001
Email: Elyse.Greenwald@lw.com

ORACLE CORPORATION
    Dorian Daley (Bar No. 129049)
    Deborah K. Miller (Bar No. 95527)
    James C. Maroulis (Bar No. 208316)
    500 Oracle Parkway
    Redwood Shores, California 94065
    Telephone: (650) 506-5200
    Facsimile: (650) 506-7114
    Email: dorian.daley@oracle.com
    Email: deborah.miller@oracle.com
    Email: jim.maroulis@oracle.com

Attorneys for Defendant
ORACLE CORPORATION

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3            This case seeks to ensnare Oracle in the widely publicized "no poach" conspiracy that

4    was the subject of a U.S. Department of Justice ("DOJ") investigation and is at issue in the *In re*

5    *High-Tech Employee Antitrust Litigation* ("*High-Tech*") that is proceeding before this Court.

6    Both the DOJ and the plaintiffs in the *High-Tech* case took discovery from Oracle years ago, and

7    both chose to bring no claims against Oracle.  Nonetheless, in his complaint, plaintiff Greg

8    Garrison alleges that Oracle too participated in this "bigger conspiracy" by purportedly entering

9    into an agreement with Google "not to pursue" each other's "manager level and above"

10   employees.

11           Plaintiff's allegations of an unlawful agreement between Oracle and Google—which he

12   labels the "Restricted Hiring Agreement"—are based on a *single* document that was produced in

13   in the *High-Tech* case years ago and publicly filed in May 2013.  Dated "1.7.2008," this

14   document appears to be an internal Google memorandum and lists some fifteen companies that

15   purportedly have some form of restrictive hiring agreement with Google.  Four of the fifteen

16   companies are defendants in the *High-Tech* case, eleven are not.  Oracle—which had no hand in

17   creating or maintaining the document—is in the latter group.  Plaintiff has seized on this single

18   reference to Oracle to assert the existence of an unlawful hiring agreement between Google and

19   Oracle; this document is the sole basis of his complaint.  Indeed, aside from the reference to this

20   document, the complaint is just a "cut and paste" of previous complaints.  There is not a single,

21   original *factual* allegation in the complaint that describes Oracle's involvement in the formation

22   or enforcement of the alleged Restricted Hiring Agreement, including *who* at Oracle or Google

23   entered into the alleged agreement, *where* or in what context the agreement was reached, *how* it

24   was enforced, or even *when* this purported conspiracy started or ended.

25           The complaint has many shortcomings, but at the threshold it simply comes too late.

26   Antitrust claims are subject to a four-year statute of limitations.  Plaintiff brings his claims more

27   than seven and a half years after the alleged formation of the purported Restricted Hiring

28   Agreement, four years after the culmination of the DOJ's widely publicized investigation, and

ORACLE'S MOT. FOR J. ON PLEADINGS
CASE NO. 5:14-CV-04592-LHK

1   three plus years into the *High-Tech* case.  Because plaintiff is well aware that his complaint is

2   time-barred, he attempts to invoke two tolling doctrines: fraudulent concealment and "continuing

3   conspiracy."  But plaintiff has not sufficiently alleged any conduct by Oracle that would warrant

4   restarting or delaying the running of the statute of limitations.  He has made no effort to plead

5   with specificity, as he must, that Oracle concealed anything about an alleged conspiracy.  Such

6   an allegation would be implausible on its face, where Oracle cooperated for years with both the

7   DOJ investigation and, as a third-party, the *High-Tech* plaintiffs, and where the Google

8   document that serves as the sole basis for this complaint was produced and circulated widely in

9   both of those proceedings.[1]  Furthermore, plaintiff fails to plead any non-conclusory facts

10  indicating that the alleged 2007 agreement was in effect anytime in the last four years—also

11  implausible since Google settled with DOJ in 2010.  Under these circumstances, plaintiff has no

12  excuse for his undue delay and his claims should be dismissed as time-barred.

13          Moreover, plaintiff has no standing to pursue his claims or represent a class because he

14  has not alleged that he personally suffered any non-hypothetical injury as a result of the alleged

15  Restricted Hiring Agreement.  Plaintiff's few vague allegations regarding his injury are imported

16  wholesale from the *High-Tech* complaint without any adjustment for the salient differences in

17  plaintiff's personal circumstances or the two conspiracies alleged.  The only facts plaintiff

18  alleges are that he worked as a Senior Account Manager at Oracle for six months from December

19  2008 to June 2009 in Colorado.  He does not allege that he ever applied to work for Google,

20  desired to work for Google, or that opportunities at Google (real or hypothetical) ever played any

21  role in his personal circumstances.  His generic and speculative assertions of injury are therefore

22  legally insufficient.

23          Finally, notwithstanding the one Google document, plaintiff has only made conclusory

24  and vague allegations of an unlawful hiring agreement.  As the Court will recall, the *High-Tech*

---

25  [1]   Nor is this case the only one in which plaintiff's counsel seeks to peddle the Google
26        document to allege a conspiracy.  Three days after filing this action, plaintiff's counsel filed a
        similar complaint against IAC/InterActiveCorp.  *See Arriaga v. IAC/InterActiveCorp.*, 5:14-
27        cv-04656-NC (Oct. 17, 2014).  Plaintiff's complaint is also virtually identical to a complaint
        filed two days later against Microsoft.  *See Ryan v. Microsoft*, 5:14-cv-04634-LHK (Oct. 16,
28        2014).

cases were based on express, written agreements between pairs of defendants.  In denying a motion to dismiss, the Court observed that the *High-Tech* "Plaintiffs' [complaint] details the actors, effect, victims, location, and timing of the six bilateral agreements between Defendants." *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1116 (N.D. Cal. 2012) (hereinafter "*In re High-Tech*").  In contrast, here, plaintiff pleads *no facts* as to what Oracle did that supposedly resulted in the agreement with Google.  Plaintiff's threadbare allegations of a conspiracy and its effects expose this case for what it really is:  a meritless lawsuit seeking to capitalize on the recent successes of the *High-Tech* plaintiffs.  The Court should preclude plaintiff's claims from moving forward and enter judgment on the pleadings in Oracle's favor.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Are plaintiff's antitrust and state law claims barred by the applicable four-year statute of limitations because no tolling doctrine applies?

2.   Does the complaint fail to state antitrust claims under the Sherman Act and California's Cartwright Act because plaintiff has not pled a plausible agreement between Oracle and Google or any non-speculative or particularized injury?

3.   Does the complaint fail to state a claim under California Business and Professions Code § 17200 because, as a matter of law, plaintiff may not recover through restitution or disgorgement the higher compensation he claims he would have received in the absence of the alleged conspiracy?

4.   Does the complaint fail to state claims for injunctive and declaratory relief under the Sherman Act and California Business and Professions Code § 16600 because plaintiff, as a former Oracle employee, lacks Article III standing to pursue such relief?

## III.   BACKGROUND

### A.   The DOJ Investigation

In 2009, the Antitrust Division of the U.S. Department of Justice ("DOJ") launched an investigation into the hiring and recruiting practices of several Silicon Valley technology companies.  (*See* Compl. ¶ 26; Am. Answer ¶ 26.)  The DOJ's investigation culminated in the filing of a complaint in September 2010 against six of the companies investigated—Adobe

1   Systems, Inc., Apple Inc., Google Inc., Intel Corporation, Intuit, Inc., and Pixar.  (*Id.*; *see also*

2   Decl. of Sarah M. Ray in Supp. of Def. Oracle Corporation's Req. for Judicial Notice ("Ray

3   Decl."), Ex. 2.)[2]  The DOJ alleged that the named companies had entered into express, written

4   agreements not to "cold call" each other's engineer employees.  (*See* Ray Decl., Ex. 2.)

5   Specifically, the DOJ alleged that five bilateral agreements had been reached between:  (1)

6   Apple and Google, (2) Apple and Adobe, (3) Apple and Pixar, (4) Google and Intel, and (5)

7   Google and Intuit.  (*See id.*)  Each of the companies denied any wrongdoing and entered into

8   consent decrees with the DOJ whereby they agreed not to enter into any agreements that would

9   restrict their hiring or recruiting practices.  (*See* Ray Decl., Exs. 3 and 4.)

10         In connection with its investigation, the DOJ investigated more than a dozen technology

11   companies, including Oracle, to which it issued a Civil Investigative Demand.  (Am. Answer ¶

12   26.)  Oracle cooperated with the DOJ's requests and produced responsive documents.  (*Id.*)  The

13   DOJ, however, never filed a claim against Oracle, and instead, closed its investigation without

14   taking any action.  (*See id.*)

15         **B.        The Follow-On Class Action:  In re High-Tech Employee Antitrust Litigation**

16         In May 2011, former and current engineer employees of Adobe, Apple, Google, Intel,

17   Intuit, Pixar, and Lucasfilm initiated a class action lawsuit in this Court based on the same

18   conduct underlying the DOJ complaint—the *In re High-Tech Employee Antitrust Litigation*, 11-

19   cv-2509-LHK ("*High-Tech*").  The *High-Tech* plaintiffs alleged that the same bilateral "do not

20   cold call" agreements at issue in the DOJ's investigation gave rise to an "overarching

21   conspiracy" that had been orchestrated and implemented by three individuals:  Apple and Pixar

22   CEO, Steve Jobs, Apple and Google board member, Arthur Levinson, and Google CEO and

23   Apple board member, Eric Schmidt.  (Ray Decl., Ex. 5 ¶¶ 55, 57, 58, 72, 79, 87, 97, 103, 108;

24   *see also In re High-Tech*, 856 F. Supp. 2d at 1118.)  Despite having access to document

25   productions from the *High-Tech* defendants (including Google), as well as from third parties

26

27   [2]   For the reasons explained in its concurrently-filed Request for Judicial Notice, Oracle
       respectfully requests that the Court consider the contents of the DOJ's complaint (and the
       other documents that plaintiff's complaint incorporates by reference).  *See* Def. Oracle
28     Corporation's Req. for Judicial Notice, Jan. 5, 2015.

1   (including Oracle), the *High-Tech* plaintiffs never named Oracle as a defendant nor was Oracle

2   otherwise implicated in the "overarching conspiracy" alleged in the *High-Tech* case.

3        On May 17, 2013, the *High-Tech* plaintiffs publicly filed a number of business

4   documents in support of their supplemental motion for class certification.  (*See High-Tech*, 11-

5   cv-2509-LHK, Dkt. 418, 428.)  One of the documents filed that day was an internal Google

6   document purporting to describe Google's hiring protocols and practices as of "1.7.2008."  (*See*

7   *id.*; *see also* Ray Decl., Ex. 1.)  The document "fits" the allegations of the *High-Tech* case only

8   in part, as there are eleven companies listed as subject to a Google hiring "agreement" (many

9   more if one counts subsidiaries) that neither the DOJ nor the *High–Tech* plaintiffs sued.  In any

10  case, at one point the Google document states:  "For each of these 'Restricted Hiring'

11  companies,"—which it lists as Microsoft, Novell, Oracle, and Sun Microsystems—"Google has

12  agreed to the following protocol:  1.  Not to pursue manager level and above candidates for

13  Product, Sales, or G&A roles – even if they have applied to Google[.]"  (*Id.*)  This statement is

14  the sole and entire predicate for plaintiff's claims against Oracle.

15       **C.      Plaintiff's Allegations Against Oracle**

16       Plaintiff alleges that he was a Senior Account Manager in Colorado for Oracle for six

17  months between December 2008 and June 2009.  (Compl. ¶¶ 14, 23; Am. Answer ¶¶ 14, 23.)  He

18  claims that sometime in May 2007, unnamed "senior executives" of Oracle and Google entered

19  into an agreement "[n]ot to pursue manager level and above candidates from one another for

20  Product, Sales, or General & Administrative positions."  (Compl. ¶¶ 19, 20.)  Plaintiff labels this

21  alleged agreement the "Restricted Hiring Agreement" and asserts that it was part of the "bigger

22  conspiracy" at issue in the *High-Tech* case and the DOJ's investigation.  (*Id.* ¶¶ 4, 19, 25.)

23  Because plaintiff purportedly had "between two and six" direct reports during his short tenure at

24  Oracle, he contends he was a "manager level" employee to whom the alleged Restricted Hiring

25  Agreement applied.  (*Id.* ¶ 24.)

26       Plaintiff asserts that the alleged Restricted Hiring Agreement was "reached," "managed,

27  and enforced" by "[s]enior executives at Oracle . . . through direct, and explicit communications"

28  (*id.* ¶ 20), but otherwise provides no details regarding who specifically entered into the

1  agreement, how or where it was reached, how the agreement was enforced, or even when it

2  ended, if ever.

3      To excuse his delay in bringing suit nearly seven and a half years after the formation of

4  the purported Restricted Hiring Agreement, plaintiff attempts to allege that Oracle took "active

5  measures to keep the Restricted Hiring Agreement secret" and "not widely disseminated or

6  disclosed to any employees other than Oracle's officers."  (*Id.* ¶ 46.)  As an "example" of

7  Oracle's purported concealment, plaintiff alleges that Oracle's "former CEO, Larry Ellison, and

8  current CEO, Safra Catz, personally ensured that the division of Oracle engaging in the

9  employee acquisitions was not hiring employees from" Google.  (*Id.*)  As a result of this alleged

10  concealment, plaintiff asserts that he did not have actual or constructive knowledge of his claims

11  against Oracle until May 17, 2013, when the internal Google document described above was first

12  publicly disclosed in a filing in the *High-Tech* case.  (*Id.* ¶ 45.)

13      Plaintiff seeks to bring federal antitrust and state law claims against Oracle on behalf of a

14  putative class numbering in the "thousands," including "[a]ll persons who worked at any time

15  from May 10, 2007 to the present for Oracle in the United States in any manager level or above

16  positions for Product, Sales, or General and Administrative roles, excluding engineers."  (Compl.

17  ¶ 34.)  Plaintiff describes the "critical" role "competitive hiring" serves in the labor market; that

18  agreements that restrict employee hiring limit employee mobility and depress salaries for all

19  affected employees (*see id.* ¶¶ 30, 31); and that the "elimination of competition and suppression

20  of compensation had a negative cumulative effect on all Class members."  (*Id.* ¶¶ 31, 32.)

21  **IV.  ARGUMENT**

22      **A.  Legal Standard**

23      Oracle brings this motion for judgment on the pleadings under Federal Rule of Civil

24  Procedure 12(c).[3]  Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c)

25  _____

26  [3]  Fed. R. Civ. P. 12(c) states:  "After the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."

27  Oracle moves under Rule 12(c), as opposed to under the more common Rule 12(b)(6), because plaintiff's counsel refused to honor an oral agreement to extend the time for Oracle

28  to respond to the complaint just days before that response was due.

1    challenges the legal sufficiency of the claims asserted in the complaint.  *See Plumlee v. Pfizer,*

2    *Inc.*, 2014 U.S. Dist. LEXIS 23172, at *13 (N.D. Cal. Feb. 21, 2014); *In re DRAM Antitrust*

3    *Litig.*, 516 F. Supp. 2d 1072, 1083 (N.D. Cal. 2007); *see also Navarro v. Block*, 250 F.3d 729,

4    732 (9th Cir. 2001).  A Rule 12(c) motion is "functionally identical" to a motion to dismiss and

5    the "same standard" applies.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.

6    1989) (the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing");

7    *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).  Judgment

8    on the pleadings should thus be entered when a complaint does not plead "enough facts to state a

9    claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

10   (2007); *Prianto v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 94673, at *6 (N.D. Cal.

11   July 10, 2014); *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, 2013 U.S. Dist. LEXIS

12   138896, at *7 (N.D. Cal. Sept. 26, 2013).  A claim has "facial plausibility" only where the

13   "pleaded factual content allows the court to draw the reasonable inference that the defendant is

14   liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint

15   does not "suffice if it tenders naked assertions devoid of further factual enhancement" or

16   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

17   statements . . . ."  *Id.*

18         In deciding Oracle's 12(c) motion, the Court may "rely on the complaint and the answer,"

19   *Thomas v. Fin. Recovery Servs.*, 2013 U.S. Dist. LEXIS 19775, at *5 (C.D. Cal. Jan. 31, 2013),

20   and must accept the factual allegations in the complaint as true.  *See, e.g., Plumlee*, 2014 U.S.

21   Dist. LEXIS 23172, at *13 (quoting *Iqbal*, 556 U.S. at 678).  The Court, however, should not

22   "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555,

23   nor allegations that are contradicted by facts set forth in documents incorporated by reference in

24   the complaint or otherwise subject to judicial notice.  *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at

25   *13-14 (internal quotation and citation omitted); *see also Sprewell v. Golden State Warriors*, 266

26   F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).

27

28

B.   **The Court Should Enter Judgment On Plaintiff's Antitrust Claims**

1.   **Plaintiff's Antitrust Claims Are Barred By The Statute Of Limitations**

Brought seven and a half years after the alleged Restricted Hiring Agreement was allegedly formed, four years after the DOJ's widely publicized investigation, and more than three years into the *High-Tech* litigation, plaintiff's federal and state antitrust claims are time-barred. The four-year statute of limitations began to run in May 2007, when plaintiff alleges Oracle and Google entered into the alleged Restricted Hiring Agreement.  15 U.S.C. § 15b; Cal. Bus. & Prof. Code § 16750.1.[4]  It would have expired in May 2011, but for the provisions of Section 5(b) of the Clayton Act, 15 U.S.C. § 16b, which tolls the statute on Sherman Act claims during the pendency of a DOJ investigation and for one year thereafter.  The final judgment in the DOJ action was entered on March 18, 2011 (*see* Ray Decl., Ex. 4); and accordingly, plaintiff had until March 18, 2012 to file suit.

To avoid this bar, plaintiff seeks to toll the limitations period by alleging a "continuing violation" and that Oracle engaged in "fraudulent concealment."  (Compl. ¶¶ 43-48.)  Plaintiff, however, has failed to plead sufficient facts to invoke either tolling doctrine, and the statute of limitations therefore forecloses his claims.

a.   **Plaintiff's Allegations Of A Continuing Violation Are Conclusory And Insufficient To Toll The Statute Of Limitations**

Plaintiff first tries to toll the limitations period by alleging that the purported Restricted Hiring Agreement was a "continuing violation" of the antitrust laws.  (Compl. ¶ 43.)  This is an effort to bring this case within the rule of *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971), in which the Supreme Court held that an antitrust damages cause of action accrues, and the Clayton Act statute of limitations begins to run, "when a defendant commits an act that injures a plaintiff's business," but that "[i]n the context of a continuing conspiracy[,] . . .

---

[4]  Plaintiff's state law claim under Cal. Bus. & Prof. Code § 17200 is also barred by the applicable four-year statute of limitations.  *See* Cal. Bus. & Prof. Code § 17208.

1   each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to

2   recover the damages caused by that act."  The "continuing violation" doctrine, however, does *not*

3   make acts performed outside the limitations period actionable, but it permits a plaintiff to recover

4   for injury caused by *new* acts that the defendant performs within the limitations period.  *See, e.g.,*

5   *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (a continuing

6   violation requires that "defendant complete[] an overt act during the limitations period"); *Pace*

7   *Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987) (defendant's act "outside the

8   limitations period does not constitute a continuing violation").

9         To plead a "continuing violation" that restarts the limitations period, a plaintiff must

10   allege that the defendant engaged in an "overt act" during the limitations period that meets two

11   criteria:  (1) the defendant must have engaged in "a new and independent act that is not merely a

12   reaffirmation of a previous act," and (2) it must "inflict new and accumulating injury."  *Samsung*

13   *Elecs. Co.*, 747 F.3d at 1202 (quoting *Pace Indus.*, 813 F.2d at 238).  "This standard is meant to

14   differentiate those cases where a continuing violation is ongoing—and an antitrust suit can

15   therefore be maintained—from those where all of the harm has occurred at the time of the initial

16   violation."  *Id.*

17         The complaint satisfies neither prong of this standard.  Plaintiff's contention that the

18   alleged "conspiracy was a continuing violation" that "repeatedly invaded Plaintiff and Plaintiff

19   Class' interests by adhering to, enforcing, and reaffirming the [alleged] anticompetitive

20   agreements" is entirely conclusory.  (Compl. ¶ 43.)  He identifies no "overt act" by Oracle or

21   Google, let alone a "new and independent act," as is required.  At best, plaintiff alleges that

22   Oracle "adhere[ed] to, enforce[ed], and *reaffirm[ed]*" its alleged agreement with Google, but

23   without identifying any recent conduct that *constitutes* adherence, enforcement, or reaffirmation.

24   (*Id.*) (emphasis added.)  Indeed, as pleaded, the complaint suggests the alleged agreement

25   continued only by inertia and without any "new" or "independent" conduct by Oracle within the

26   limitations period.  Further, the complaint does not even attempt to address what "new and

27   accumulating injury" plaintiff suffered from any unidentified new and independent act by

28   Oracle.  Plaintiff's allegations are thus plainly insufficient to allege a continuing violation.

1    Moreover, the complaint acknowledges that in September 2010, Google entered into a

2    consent decree with the DOJ precluding it from participating in any anti-competitive hiring

3    agreements.  (*See* Compl. ¶ 27; *see also* Ray Decl., Ex. 3.)  Plaintiff does nothing to square this

4    fact with his obviously inconsistent claim of a continuing conspiracy.  It would not do plaintiff

5    any good if the alleged conspiracy only "continued" up to the point that Google agreed to

6    abandon it in 2010; his claims would remain barred.[5]

7                      **b.      Plaintiff Cannot Toll The Limitations Period Due To**
                             **Fraudulent Concealment**
8

9    Plaintiff makes a second attempt to toll the limitations period by asserting that Oracle

10   "fraudulently concealed" the alleged conspiracy.  (Compl. ¶¶ 45-48.)  But this attempt similarly

11   fails because plaintiff has not alleged evidentiary facts, consistent with Rule 9(b), to establish

12   that Oracle engaged in any misconduct that precluded plaintiff from learning of his claims.

13   To invoke fraudulent concealment, plaintiff must plead facts establishing that (1) Oracle

14   "affirmatively misled" him, (2) he had neither "actual nor constructive knowledge" of his claims,

15   and (3) he exercised due diligence in attempting to discover the facts giving rise to his claims.

16   *Global Services v. IKON Office Solutions*, 2011 U.S. Dist. LEXIS 143123, at *7 (N.D. Cal. Dec.

17   13, 2011) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir.

18   1988)); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49853,

19   at *68-74 (N.D. Cal. May 9, 2011).  Because fraud is the underlying theory of the doctrine of

20   fraudulent concealment, the heightened pleading requirements of Federal Rule of Civil

21   Procedure 9(b) ("Rule 9(b)") apply.  *Rambus Inc. v. Samsung Elecs. Co.*, 2007 U.S. Dist. LEXIS

22   3088, at *19-20 (N.D. Cal. Jan. 4, 2007), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011); *see also In re*

23   *Transpacific Passenger Air Transp. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49853, at *70.

24   Pleading with "particularity" requires that plaintiff "identify the who, what, when, where, and

25   how of the misconduct charged, as well as what is false or misleading about the purportedly

26
     _____
27   [5]   Plaintiff also alleges that his employment with Oracle ended in 2009 and he does not address
          how he could have been harmed by any purported "continuing violation" after that time.
28        (*See* Compl. ¶ 14.)

1  fraudulent" conduct.  *Cafasso*, 637 F.3d at 1055; *In re Transpacific Passenger Air Transp.*

2  *Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49853, at *70.  In addition, allegations of fraudulent

3  concealment must also satisfy *Twombly's* "plausibility" standard.  *Cafasso*, 637 F.3d at 1055.

4  Any allegations that do not meet Rule 9(b)'s heightened pleading standard should be "stripped"

5  from the complaint and "disregarded."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

6  Cir. 2009).

7        Plaintiff's allegations of fraudulent concealment are neither particular nor plausible.  He

8  alleges in only general and unspecific terms that Oracle took "active measures" to keep the

9  alleged Restricted Hiring Agreement a secret by ensuring that any "written memorialization" was

10  not widely disseminated or disclosed and that Oracle's "officers refrained from delegating"

11  hiring responsibilities.  (Compl. ¶ 46.)  Such generic and vague allegations of fraudulent

12  concealment are insufficient to meet the heightened pleading standard imposed by Rule 9(b).

13  *See In re Transpacific Passenger Air Transp.*, 2011 U.S. Dist. LEXIS 49853, at *70-73

14  (rejecting as insufficiently particular plaintiffs' "vague" allegations that defendants had "agree[d]

15  among themselves not to discuss publicly, or otherwise reveal the nature and substances of" their

16  alleged unlawful agreements, "destroy[ed] documentary evidence of the alleged conspiracy," and

17  gave "false and pretextual reasons for their pricing"); *see also Rutledge v. Boston Woven Hose &*

18  *Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (dismissal appropriate where allegations of

19  fraudulent concealment were conclusory and lacked particularity); *Yumul v. Smart Balance, Inc.*,

20  733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010) (dismissing claim as time-barred because plaintiff

21  failed to plead "the who, what, when, where, and how of the alleged fraudulent concealment");

22  *Rambus Inc.*, 2007 U.S. Dist. LEXIS 3088, at * 21 (plaintiff's allegations "lack the specificity

23  required to show fraudulent concealment").

24        Plaintiff also alleges that Oracle provided "pretextual, incomplete, or materially false and

25  misleading explanations" for its hiring practices.  (Compl. ¶ 46.)  But Plaintiff does not allege

26  any specific statement Oracle made regarding its hiring or recruiting practices or explain why

27  any such statement was false, misleading, or pretextual.  *See Cafasso*, 637 F.3d at 1056-57;

28  *Global Servs.*, 2011 U.S. Dist. LEXIS 143123, at *9 ("Plaintiffs do not allege, however, that any

1   Defendant made [false or misleading] representations to them, and they deferred filing suit as a

2   result of the representation.").

3          The complaint includes only a single allegation that is even arguably "particular."

4   Plaintiff contends that "during meetings concerning the acquisition of new employees, former

5   CEO Larry Ellison, and current CEO Safra Catz, personally ensured that the division of Oracle

6   engaging in the employee acquisitions was not hiring employees from companies who were co-

7   participants in the Restrictive Hiring Agreement." (Compl. ¶ 46.) Tossing a couple of well-

8   known names into an otherwise entirely generic allegation does not make it sufficient. This

9   allegation is devoid of factual detail explaining when, where, or how Oracle engaged in any

10  misconduct, as is required. *Cf. In re Transpacific Passenger Air Transp.*, 2011 U.S. Dist.

11  LEXIS, at *70-73 (dismissing Section 1 claim as time-barred where "[o]nly one of the fraudulent

12  concealment allegations names an actual person, and that allegation is far from damning"). This

13  single allegation is thus insufficient to plead fraudulent concealment. *See id.*

14         Moreover, to the extent this allegation is intended to explain how the alleged Restricted

15  Hiring Agreement was kept secret, it renders plaintiff's allegations implausible. Plaintiff alleges

16  that Oracle's CEO and President concealed the alleged conspiracy by managing and

17  implementing it themselves (*i.e.*, by "personally ensur[ing]" that no one from the other "co-

18  participants" to the alleged Restricted Hiring Agreement was hired).[6] In other words, plaintiff's

19  theory is that Larry Ellison and Safra Catz personally handled the hiring of every "Product,

20  Sales, or General and Administrative position" at Oracle—positions which plaintiff claims

21  number in the "hundreds or thousands"—for the duration of the conspiracy, without creating any

22  written record and all while keeping all existing Oracle executives and employees, internal and

23  external recruiters, and applicants and candidates in the dark as to this alleged agreement. (*See*

24  Compl. ¶ 36.) Plaintiff's fraudulent concealment allegations are thus implausible on their face.

25         Nor is Oracle's conduct consistent with fraudulent concealment. Oracle has been

26  cooperating with investigations into technology company hiring and recruiting practices for more

27

28  [6]    This single allegation is one of the only sentences in plaintiff's entire complaint that is not
       copied verbatim from the DOJ or *High-Tech* complaints.

than five years.  Oracle produced documents to the DOJ during its 2009 investigation and to the *High-Tech* plaintiffs as a third-party.  Oracle's behavior is thus inconsistent with plaintiff's claim that it has been engaging in fraud to conceal its hiring practices and exposes plaintiff's allegations for what they are:  bare and unsubstantiated assertions of fraud that are insufficient to satisfy Rule 9(b)'s pleading requirements.  Without any basis to toll the limitations period, plaintiff's claims are time-barred and the Court should enter judgment on the pleadings.

### 2. Plaintiff Has Failed To Plead Any Injury-in-Fact Resulting From The Alleged Conspiracy

Plaintiff's antitrust claims are also legally insufficient because he has failed to allege any concrete or particularized injury resulting from the alleged conspiracy.[7]  To plead injury, plaintiff tries to repurpose the allegations of harm from the *High-Tech* case.  But the theory of injury in the *High-Tech* case does not transfer to the conspiracy that plaintiff has alleged here, and plaintiff's failure to allege any non-speculative injury that is personal to his claim eviscerates his standing under Article III of the Constitution and his ability to serve as a representative of the purported class.

Under settled Supreme Court doctrine, to state an injury-in-fact, a party must allege "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008).  In the context of an antitrust claim, a plaintiff "establishes injury-in-fact when he has suffered an injury which bears a causal connection to the alleged antitrust violation."  *Gerlinger*, 526 F.3d at 1255 (internal quotation and citations omitted); *see also Nw. Publ'ns, Inc. v. Crumb*, 752 F.2d 473, 476 (9th Cir. 1985) ("Causal antitrust injury is an essential element of any remedy under the

---

[7] Plaintiff alleges antitrust claims under both the federal Sherman Act and California's Cartwright Act.  (*See* Compl. ¶¶ 49-55 (Sherman Act), 56-63 (Cartwright Act).)  The analysis of plaintiff's claim under the Cartwright Act, however, "mirrors the analysis" under the Sherman Act, and if plaintiff fails to plead a viable federal antitrust claim, his state antitrust claim based on the same conduct must also fail.  *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000).

1  Sherman Act"); *In re Online DVD Rental Antitrust Litig.*, 2011 U.S. Dist. LEXIS 150312, at *67

2  (N.D. Cal. Nov. 22, 2011) (defining "injury-in-fact" as "the fact of harm to plaintiff, caused by

3  the defendant's conduct").  "[A] plaintiff must allege some credible injury caused by the

4  unlawful conduct" with "facts that rise beyond mere conceivability or possibility."  *Somers v.*

5  *Apple*, 729 F.3d 953, 956 (9th Cir. 2013).  A plaintiff cannot simply allege that the challenged

6  conduct could have affected him "in theory."  Hypothetical and speculative allegations that a

7  party *could* have suffered an injury are insufficient.  *See Nat'l ATM Council, Inc. v. Visa, Inc.*,

8  922 F. Supp. 2d 73, 83-91 (D.D.C. 2013) (plaintiffs did not allege injury-in-fact by pleading that

9  they "may" have completed a transaction that resulted in payment of an overcharge).  Nor is it

10  enough for a plaintiff to plead only that "competition has been restrained" by the defendant's

11  conduct; instead, the plaintiff must allege that he "personally suff[ered] harm as a result" of

12  defendant's alleged violation of the antitrust laws.  *Id.*; *see also Knevelbaard Dairies v. Kraft*

13  *Foods, Inc.*, 232 F.3d 979, 1002 (9th Cir. 2000) (injury-in-fact cannot "be satisfied by broad

14  allegations of harm to the 'market' as an abstract entity") (internal quotations and citations

15  omitted). [8]

16           Plaintiff describes how a "competitive labor market" should function and states generally

17  that unlawful hiring agreements among several companies could reduce compensation for

18  "employees with advanced skills and abilities" at companies who are party to such agreements.

19  (*See* Compl. ¶¶ 29, 30.)  But plaintiff never alleges that there are any similarities among the roles

20  product, sales, or general and administrative employees play at Google and Oracle such that

21  those companies would even be in competition for the same employees.[9]  All plaintiff has done

22  is repurpose the allegations of harm from the *High-Tech* complaint, which address a very

23

---

24  [8]  Injury-in-fact is a distinct and separate element from "antitrust injury," which is a
25  requirement to maintain a damages claim under section 4 of the Clayton Act.  *See, e.g.*,
     *Somers*, 729 F.3d at 963.  While injury-in-fact is one necessary component of "antitrust
26  injury," *see id.*, sufficient allegations of injury-in-fact are a threshold requirement for
     constitutional standing under Article III.  *Gerlinger*, 526 F.3d at 1256.

27  [9]  Instead, plaintiff alleges a broad, far-ranging conspiracy that "covered all managerial
28  employees and above at Oracle and *was not necessarily limited by geography, job function,
     product group, or time period*."  (Compl. ¶ 21 (emphasis added).)

1   different purported conspiracy specific to highly-skilled engineers in an insular market, and

2   which do not fit the alleged conspiracy that plaintiff alleges in *this* case.  (*Compare* Ray Decl.,

3   Ex. 5 ¶¶ 41, 108, 110 *with* Compl. ¶¶ 29, 31, 32.)

4          Plaintiff's complaint is also deficient because he has not pled any facts demonstrating

5   that *he* actually suffered any concrete or particularized injury caused by the alleged Restricted

6   Hiring Agreement.  Plaintiff states that he worked as a Senior Account Manager at Oracle for six

7   months from December 2008 to June 2009, supervising "two to six" direct reports.  (Compl. ¶¶

8   14, 23, 24.)  He does not allege that he ever applied to work for Google, desired to work for

9   Google, or was even qualified for a managerial-level position at Google.  Nor does he allege that

10  the alleged Restricted Hiring Agreement otherwise affected his employment choices in any way.

11  Rather, plaintiff offers speculative and conjectural allegations of how the alleged Restrictive

12  Hiring Agreement *could* have caused him harm.  He asserts that "an individual who was a

13  managerial employee of Oracle . . . faced unlawful obstacles to mobility as a result of the illicit

14  Restricted Hiring Agreement" and that "an Oracle managerial employee was prevented from

15  consideration even if he or she proactively applied to Google."  (Compl. ¶ 32.)  But he never

16  alleges that *he actually* faced any obstacles in mobility or that *he* applied to Google and was not

17  considered for a job because of the alleged agreement.[10]  Plaintiff thus has not alleged an injury

18  that "rise[s] beyond mere conceivability or possibility."  *Somers*, 729 F.3d at 956.  Nor has

19  plaintiff alleged any facts indicating that salaries at Oracle were in fact lower during the

20  purported conspiracy period.  *Cf.* Ray Decl., Ex. 5 ¶ 70 (*High-Tech* plaintiffs expressly alleged

21  that defendants' conduct "reduced artificially the compensation of Lucasfilm employees"); *see*

22  *also Nat'l ATM Council,* 922 F. Supp. 2d at 84 (dismissing complaint where plaintiffs did "not

23  allege facts to support the necessary allegation that they were personally affected" by the

---

24  [10]   Plaintiff alleges that for the six months he worked for Oracle, he lived in Colorado and sold

25  business software in the Northeast United States and Canada.  (Compl. ¶¶ 14, 23; Am.
    Answer ¶¶ 14, 23.)  But he does not allege that his work experience was transferable to

26  Google, that Google had job opportunities for which he was qualified in Colorado, or that he
    was willing or able to move to another location in order to work for Google.  This is in stark

27  contrast to the *High-Tech* case, which involved a conspiracy targeting highly specialized,
    transferable engineering positions among a small group of Silicon Valley technology

28  companies.

defendants' allegedly unlawful conduct).  Plaintiff's allegations of injury are thus only hypothetical and conjectural and he lacks standing to pursue his antitrust claims.  The Court should therefore enter judgment on the pleadings in favor of Oracle.

### 3.     Plaintiff Does Not Allege An Agreement Between Oracle And Google

To state a conspiracy claim under Section 1 of the Sherman Act, a plaintiff must allege evidentiary facts that, if true, plausibly indicate (1) an agreement between two or more people or business entities, (2) by which the persons or entities intended to harm or restrain interstate commerce, and (3) which actually injures competition.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012); *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *In re High-Tech*, 856 F. Supp. 2d at 1114.

Proof of an "agreement" is the key element of an antitrust conspiracy:  "Because § 1 of the Sherman Act does not prohibit all unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express."  *Twombly*, 550 U.S. at 553 (citations omitted).  As a result, to sufficiently plead a Section 1 claim, a plaintiff must allege "enough factual matter . . . to suggest that an agreement was made" and thus "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id.* at 556.  This requires, at a minimum, that the complaint "answer the basic questions:  who, did what, to whom (or with whom), where, and when?"  *Kendall*, 518 F.3d at 1048; *In re High-Tech*, 856 F. Supp. 2d at 1116.  But in addition, the plaintiff must set forth allegations "point[ing] toward a meeting of the minds" with regard to the alleged concerted and anticompetitive conduct.  *In re NCAA Student-Athlete Name*, 2011 U.S. Dist. LEXIS 46841, at *18 (N.D. Cal. May 2, 2011) (quoting *Kendall*, 518 F.3d at 1048); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (an agreement under Section 1 requires the "conscious commitment" by the defendant "to a common scheme designed to achieve an unlawful result").  Without allegations "point[ing] toward a meeting of the minds" among the alleged co-conspirators, there can be no unlawful agreement.  *In re NCAA Student-Athlete Name*, 2011 U.S. Dist. LEXIS 46841, at *18-20.

1    Plaintiff's complaint is devoid of factual detail regarding the purported Restricted Hiring

2    Agreement and lacks any specific, evidentiary facts regarding Oracle's involvement in the

3    formation or enforcement of the alleged agreement.  The complaint is silent as to *who* at Oracle

4    or Google entered into the alleged Restricted Hiring Agreement; *where* or *how* these individuals

5    reached their purported agreement; *who* else besides Google and Oracle, if anyone, was also a

6    party to the alleged agreement; or *when*, specifically, the alleged agreement was formed and

7    when, if ever, it ended.

8    Courts have routinely held that such vague and unspecific allegations of a conspiracy are

9    insufficient to state a Section 1 claim.  *See, e.g.*, *Credit Bureau Servs. v. Experian Info.*

10   *Solutions*, *Inc.*, 2013 U.S. Dist. LEXIS 94313, at *20-22 (C.D. Cal. June 28, 2013) (dismissing

11   alleged conspiracy where complaint failed to "demonstrate that anyone at CoreLogic ever

12   communicated with or even was in the same room as anyone at Experian, let alone that their

13   communications involved an illicit agreement"); *Stanislaus v. Food Prods. Co. v. USS-POSCO*

14   *Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (conspiracy allegations insufficient where

15   complaint did not allege any specific corporate players or key executives who participated, or

16   where the agreements were made); *In re Late Fee & Over Limit Litig.*, 528 F. Supp. 2d 953, 962

17   (N.D. Cal. 2007) (dismissing complaint that included "several conclusory allegations that

18   defendants agreed to increase late fees but [that] provide[d] no details as to when, where, or by

19   whom this alleged agreement was reached"); *In re Hawaiian & Guamanian Cabotage Antitrust*

20   *Litig.*, 647 F. Supp. 2d 1250, 1257 (W.D. Wash. 2009) ("[P]laintiffs offer no particulars

21   concerning the locations or dates of any meetings, and although they name certain members of

22   defendant, they do not identify any individuals who might have been involved in any illicit

23   communications.").

24   Of course, plaintiff relies on the Google document, but it is not the license to sue that

25   plaintiff apparently thinks it is.  On its face, the document purports to describe Google's hiring

26   and recruiting "agreements" with fifteen companies, only four of which were charged by the

27   DOJ.  None of those charges relate to the "special restriction" that the document says applied to

28   Microsoft, Novell, Oracle, and Sun Microsystems:  "Not to pursue manager level and above

1   candidates for Product, Sales, or G&A roles–even if they have applied to Google[.]"  (Ray Decl.,

2   Ex. 1; *see also* Compl. ¶ 19.)  The document states that "Google has agreed to [that] protocol,"

3   but it does not say that any of Microsoft, Novell, Oracle, or Sun Microsystems agreed as well.

4   (*See id.*)  In fact, other than listing its name, the document says *nothing* about Oracle, its hiring

5   practices, or its consent to Google's self-described hiring policies.  (*See id.*)  The document could

6   very well be referring to "agreement" *internally*, within Google, which would be insufficient to

7   state a conspiracy claim.  *See, e.g.*, *Credit Bureau Servs.*, 2013 U.S. Dist. LEXIS 94313, at *14-

8   19 (dismissing Section 1 claim where allegations described only unilateral conduct and not an

9   agreement).  Otherwise, it is hard to imagine why the DOJ—after thoroughly investigating both

10  Google and Oracle—took no action against Oracle and the ten other companies mentioned in the

11  document.  But regardless, the Google document alone is insufficient to answer the questions

12  "who, did what, to whom (or with whom), where, and when," as is required to state a conspiracy

13  claim.  *Kendall*, 518 F.3d at 1048; *In re High-Tech*, 856 F. Supp. 2d at 1116.

14          Indeed, the deficiencies in plaintiff's complaint come into stark relief when one compares

15  it to the *High-Tech* complaint.  The *High-Tech* plaintiffs alleged that the defendant companies,

16  each under the control of Steve Jobs or who shared a board member with Apple, had entered into

17  an "interconnected web of express bilateral agreements."  *In re High-Tech*, 856 F. Supp. 2d at

18  1110.  More specifically, the plaintiffs asserted that three individuals—Steve Jobs of Apple,

19  Arthur Levinson of Intuit, and Eric Schmidt of Google—were responsible for orchestrating each

20  of the six bilateral agreements at issue, and provided an example of how Steve Jobs had

21  personally tried to negotiate a similar agreement with the CEO of another company.  *Id.* at 1111-

22  12.  The plaintiffs described precisely *when* and the *context in which* each of the alleged bilateral

23  agreements was formed and enforced.  *Id.* (*e.g.*, "In January 2005, while Mr. Jobs was CEO of

24  Pixar, senior executives of Pixar and Lucasfilm entered into express, written agreements to

25  eliminate competition between them for skilled labor.  Pixar drafted the terms of the agreements

26  in Emeryville, California and sent those terms to Lucasfilm . . . .") (internal citations omitted).

27  From these allegations, and others, the Court concluded the *High-Tech* plaintiffs had "alleged a

28  'larger picture' of senior executives from closely connected high-tech companies in Northern

1   California contemporaneously negotiating and enforcing six bilateral 'Do Not Cold Call'

2   agreements" and it was thus "reasonable to infer" that the alleged bilateral agreements had been

3   "negotiated directly CEO to CEO." *Id.* at 1116 (plaintiffs had sufficiently alleged the "actors,

4   effect, victims, location, and timing of the six bilateral agreements between Defendants.").

5        In contrast, plaintiff's complaint contains no such specific allegations.  It alleges only that

6   the purported Restricted Hiring Agreement was entered into by unnamed "senior executives" at

7   both companies.  (Compl. ¶ 20.)  No "senior executives" are named as the orchestrators, nor does

8   plaintiff assert that Oracle and Google share any directors, officers, senior advisors, or that the

9   two companies otherwise have a relationship that would make it "reasonable to infer" that an

10  agreement was reached between its unnamed "senior executives."  *Cf. In re High-Tech*, 856 F.

11  Supp. 2d at 1116 (allegation that "agreements were negotiated, executed, and, in most cases,

12  enforced by Defendants' senior executives" was insufficiently vague on its own to state a Section

13  1 claim) (quoting *Kendall*, 518 F.3d at 1047).

14       The complaint is also silent as to when, specifically, how, or in what context the alleged

15  agreement was formed.  Plaintiff asserts that the alleged Restricted Hiring Agreement was

16  entered into some time in "May 2007."  (Compl. ¶ 19.)  But under *Twombly*, "plaintiff cannot

17  simply allege a conspiracy beginning at a particular time."  *Stanislaus Food Prods. Co.*, 782 F.

18  Supp. 2d at 1074.  Rather, he "must at least provide a factual basis for [the conspiracy's] starting

19  date, to show an entitlement to relief . . . ."  *Id.*  Plaintiff has alleged "no factual basis" to suggest

20  that any alleged conspiracy began in May 2007.  *See id.*  The Google document on which he

21  relies is dated January 7, 2008 and he does not allege any other facts that suggest that a

22  conspiracy was formed in May 2007.  He does not allege any meeting between Oracle and

23  Google "senior executives" in May 2007 nor any other communications at that time that could

24  have given rise to an agreement.  The complaint includes no facts providing any context or the

25  "larger picture" surrounding the formation of the alleged agreement.  Nor does the complaint

26  address when, if ever, the alleged Restricted Agreement ended.[11]

27  ───────────────────

28  [11]  By seeking to represent a class of all manager level and above employees who have worked
        at Oracle from May 10, 2007 to the present (*see* Compl. ¶ 34), plaintiff implies that the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Without more factual detail regarding Oracle's involvement in the purported conspiracy,

2    which the complaint does not provide, the Google document alone cannot serve as the basis for

3    inferring an agreement between Oracle and Google.  The document is thus not the smoking gun

4    that plaintiff suggests and its contents are insufficient to state a conspiracy claim.

5    **C.    Plaintiff Also Fails To State A Claim Under California Business And Professions Code § 17200 Because He Is Not Eligible For Restitution Or Disgorgement**

6

7    Judgment on the pleadings is also warranted on plaintiff's third cause of action for

8    violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et*

9    *seq.* for two reasons.  *First*, because plaintiff has not alleged viable claims under the Sherman

10   Act, Cartwright Act, or California Business and Professions Code § 16600 (*see infra* Section

11   IV.D), there is no "unlawful, unfair, . . . or unconscionable" conduct giving rise to his UCL

12   claim.  *See, e.g.*, *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d

13   1002, 1011 (N.D. Cal. 2013) (dismissing UCL claim where plaintiff had failed to plead viable

14   claims under any other law).  *Second*, plaintiff, as a matter of law, may not recover the higher

15   compensation he claims he would have received absent the alleged conspiracy through either

16   disgorgement or restitution.

17   Plaintiff alleges that the purported Restricted Hiring Agreement was "unlawful, unfair,

18   and or unconscionable" under the UCL and caused him and the putative class injury by

19   "suppressing the value of managerial employees' services and thus suppressing their wages."

20   (Compl. ¶¶ 67-69.)  As his remedy for Oracle's alleged UCL violation, plaintiff seeks to recover

21   "disgorgement of [Oracle's] unlawful gains" and "restitution to . . . restore to [Plaintiff and

22   putative class members] the money or property unfairly withheld from them."  (*Id.* ¶ 70.)

23   It is well-settled, however, that an individual may not recover damages or disgorgement

24   for violations of the UCL.  *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

25   _____

26   Google/Oracle conspiracy remains ongoing.  The complaint, however, includes no facts suggesting that any alleged agreement continues to the present, nor could it.  As plaintiff admits, Google entered into a consent decree with the DOJ in September 2010 precluding it

27   from entering into any agreements whereby it refrained from competing for employees, and thus any conspiracy involving Google would have ended at that time, at the latest.  (*See id.* ¶

28   27; *see also* Ray Decl., Ex. 3.)

1   1134, 1148-49, 1152 (2003) ("nonrestitutionary disgorgement is not an available remedy . . .

2   under the UCL"); *In re High-Tech*, 856 F. Supp. 2d at 1124 ("Damages and disgorgement are

3   unavailable under the UCL.").  Remedies under the UCL are instead limited to injunctive,

4   declaratory, and restitutionary relief.[12]  *See* Cal. Bus. & Prof. Code § 17203 (authorizing

5   injunctive and restitutionary relief); *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal. App. 4th 579, 590

6   (2001) (authorizing declaratory relief).  Under the UCL, a plaintiff may recover as restitution

7   "profits unfairly obtained to the extent that the[] profits represent monies given to the defendant

8   or benefits in which the plaintiff has an ownership interest," *i.e.,* "a vested interest."  *Korea*

9   *Supply Co.*, 29 Cal. 4th at 1148; *In re High-Tech*, 856 F. Supp. 2d at 1124.  Where the plaintiff

10   has only an "attenuated expectancy" in the monies or benefits he seeks to recover restitution is

11   unavailable.  *Korea Supply Co.*, 29 Cal. 4th at 1150; *In re High-Tech*, 856 F. Supp. 2d at 1124

12   ("[A] mere 'expectation interest' is not a 'vested interest' for purposes of stating a claim for

13   restitution under the UCL.") (internal quotation omitted).

14       Plaintiff has not pled a viable UCL claim because he does not have a "vested interest" in

15   the higher compensation he contends he would have received in the absence of the alleged

16   conspiracy.  Indeed, this Court held just that in the *High-Tech* case.  *See* 856 F. Supp. 2d at 1124.

17   There, the Court dismissed the *High-Tech* plaintiffs' UCL claim seeking disgorgement and

18   restitution to remedy the alleged "elimination of competition and suppression of compensation

19   and mobility."  *Id.*  The Court explained that "the speculative higher compensation Plaintiffs may

20   have gotten in the absence of the alleged conspiracy, unlike unpaid wages, is not a vested interest

21   . . . that may be compensated through restitution or disgorgement."  *Id.*  Instead, the Court found

22   that "the salaries Plaintiffs may have been able to negotiate in the absence of the alleged

23   conspiracy [were] an 'attenuated expectancy'– akin to 'lost business opportunity' or lost revenue

24   – which [could not] serve as the basis for restitution."  *Id.* (quoting *Korea Supply*, 29 Cal. 4th at

25   1150-51).  The Court also rejected the *High-Tech* plaintiffs' request for disgorgement since that

26

27   [12]   Plaintiff is only seeking restitutionary relief for his UCL claim (*see* Compl. ¶ 70), and were
     he to seek an injunction or declaratory relief, he would lack Article III standing.  *See infra*
28   Section IV.D.

1   "remedy is available only to the extent it constitutes restitution" and "[a]ny profits Defendants

2   made through the alleged conspiracy at the expense of Plaintiffs' wages [were] likewise

3   attenuated expectancies."  *Id.* at 1125.

4        Plaintiff's UCL claim, which is identical to the claim pursued by the *High-Tech*

5   plaintiffs, fails for the same reasons the claim failed in that case.

6        **D.**    **Plaintiff Lacks Standing To Seek Injunctive Or Declaratory Relief Because**

7                   **He Is A Former Oracle Employee**

8        As a remedy for his federal antitrust claim, in addition to treble damages, plaintiff seeks a

9   permanent injunction enjoining Oracle from "ever again entering into similar agreements."

10  (Compl. ¶ 55.)  He also requests declaratory relief and a permanent injunction as a remedy for

11  his state law claim under California Business and Professions Code § 16600.[13]  (*Id.* ¶ 80.)  But as

12  a former Oracle employee to whom the alleged Restrictive Hiring Agreement no longer applies,

13  plaintiff lacks standing under Article III to pursue either injunctive or declaratory relief.[14]

14       "The 'irreducible constitutional minimum' of standing requires that a plaintiff allege that

15  he has suffered concrete injury, that there is a causal connection between his injury and the

16  conduct complained of, and that the injury will likely be redressed by a favorable decision."

17  *Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007); *see also Lujan*, 504 U.S. at 560-61;

18  *Lopez v. Candaele,* 630 F.3d 775, 785 (9th Cir. 2010).  In the context of a request for injunctive

19  or declaratory relief, a plaintiff must demonstrate "a real or immediate threat of an irreparable

20  injury" to establish Article III standing.  *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir.

21  2001); *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (to be eligible for declaratory

22  relief, plaintiff must "demonstrate that [he is] realistically threatened by a repetition of the

23

24    13  Section § 16600 provides in pertinent part: "[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

25

26    14  As with his UCL claim, plaintiff has cut and pasted his claims for injunctive and declaratory relief from the *High-Tech* complaint without conducting any investigation into their merits or even how they were resolved in that case.  If he had, he would have seen that after the *High-Tech* defendants challenged the plaintiffs' lack of standing to pursue injunctive and declaratory relief, the *High-Tech* plaintiffs voluntarily withdrew those claims.  *See In re High-Tech*, 856 F. Supp. 2d at 1112 n.7, 1113, 1114, 1124.

27

28

1   violation.").

2       Plaintiff's allegations are insufficient on their face to establish Article III standing for

3   injunctive or declaratory relief.  Plaintiff is a former employee of Oracle (Compl. ¶ 14) with no

4   alleged intention of seeking work at Oracle (or Google) in the future.  The alleged Restricted

5   Hiring Agreement, by its own terms, no longer applies to him or constrains his mobility.

6   Plaintiff has alleged no facts indicating that the conspiracy is ongoing.[15]  To the extent plaintiff

7   has alleged any injury, it is purely backward-looking and monetary.  As a result, the declaratory

8   and injunctive relief he seeks cannot redress any alleged injury nor can it protect him from a

9   "real or immediate threat" of harm, because there is none.

10      Indeed, courts routinely find that former employees lack standing to seek injunctive or

11  declaratory relief against a former employer's employment practices.  *See, e.g.*, *Wal-Mart Stores,*

12  *Inc. v. Dukes*, 131 S. Ct. 2541, 2259-60 (2011) (putative class members who were "no longer

13  employed by Wal-Mart lack[ed] standing to seek injunctive or declaratory relief against its

14  employment practices" because they had "no . . . need for prospective relief"); *Zanze v. Snelling*

15  *Servs., LLC,* 412 F. App'x 994, 997 (9th Cir. 2011) (affirming dismissal of former employee's

16  claims for declaratory judgment and injunctive relief regarding non-compete agreement with

17  former employer); *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)

18  (former employee lacked standing to seek injunctive relief where employee had given "no

19  indication . . . that [she] ha[d] any interest in returning to work" for the defendant); *Drake v.*

20  *Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 47627, at *19-20 (C.D. Cal. Apr. 30, 2010) ("In

21  the case of an employment action, a former employee lacks standing to sue for declaratory or

22  injunctive relief because he may realize no benefit upon the successful prosecution of his

23  claim.").

24      It makes no difference that plaintiff seeks to bring his claims on behalf of a putative class

25  that includes current Oracle employees.  On this issue, the law is well-settled:  "Unless the

26

27  [15]  Nor can he, because as explained earlier, any alleged conspiracy would have ended no later
    than September 2010, when Google agreed to refrain from entering into any anticompetitive
28  hiring agreements.  (*See* Ray Decl., Ex. 3.)

1   named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class

2   seeking that relief.  Any injury unnamed members of th[e] proposed class may have suffered is

3   simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief

4   they seek." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also*

5   *Milligan v. Am. Airlines, Inc.*, 327 F. App'x 694, 696 (9th Cir. 2009) (former employee could not

6   show "real or immediate threat of irreparable injury" from employer's employment practices and

7   "[t]he fact that [plaintiff] brought a class-action claim does not alter this analysis"); *Ramirez v.*

8   *Manpower, Inc.*, 2014 U.S. Dist. LEXIS 4072, at \*22-23 (N.D. Cal. Jan. 13, 2014) ("a former

9   employee lacks standing to seek prospective injunctive relief on behalf of a putative class

10  containing both former and current employees") (compiling authority).

11      Nor does the analysis change because plaintiff's Section 16600 claim arises under

12  California law.  "In federal court, Article III standing requirements are equally applicable to state

13  law claims."  *Jadwin v. Cnty. of Kern*, 2009 U.S. Dist. LEXIS 72369, at \*19 n.2 (E.D. Cal. Aug.

14  6, 2009); *see also Couch v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 54428, at \*19-21

15  (E.D. Cal. Apr. 18, 2014) (dismissing Section 16600 claim for lack of standing where former

16  employee sought declaratory judgment regarding expired non-compete clause).

17      Because plaintiff is a former Oracle employee who has expressed no interest in returning

18  to work at Oracle, the alleged Restricted Hiring Agreement poses no "real or immediate" threat

19  to him and he lacks standing to seek injunctive or declaratory relief.  The Court should thus enter

20  judgment on plaintiff's claims seeking injunctive and declaratory relief.

21  **V.      CONCLUSION**

22      Plaintiff's complaint is legally insufficient and plagued by incurable deficiencies.

23  Plaintiff (1) has not sufficiently pled any tolling doctrine and thus his claims are time-barred

24  under the applicable four-year statute of limitations; (2) has not alleged any concrete or

25  particularized injury he suffered as a result of the alleged Restricted Hiring Agreement; (3) has

26  failed to plead sufficient factual matter to make an agreement between Oracle and Google

27  plausible; (4) is ineligible to recover either restitution or disgorgement for the higher

28  compensation he claims he would have received in the absence of the alleged conspiracy; and (5)

1   as a former employee, he lacks standing to enjoin Oracle's hiring practices.  These deficiencies

2   are fatal to plaintiff's claims.  Oracle respectfully requests that the Court enter judgment on the

3   pleadings in Oracle's favor on each of plaintiff's claims.

4

5   Dated:  January 5, 2015                      Respectfully submitted,

6
                                                By /s/ Daniel M. Wall
7                                                  Daniel M. Wall

8                                               LATHAM & WATKINS LLP
                                                   Daniel M. Wall (Bar No. 102580)
9                                                  Sarah M. Ray (Bar No. 229670)
                                                   505 Montgomery Street, Suite 2000
10                                                 San Francisco, California 94111-6538
                                                   Telephone: (415) 391-0600
11                                                 Facsimile: (415) 395-8095
                                                   Email: Dan.Wall@lw.com
12                                                 Email: Sarah.Ray@lw.com

13                                                 Elyse M. Greenwald (Bar No. 268050)
                                                   John Hancock Tower, 27th Floor
14                                                 200 Clarendon Street
                                                   Boston, Massachusetts 02116
15                                                 Telephone: (617) 948-6000
                                                   Facsimile: (617) 948-6001
16                                                 Email: Elyse.Greenwald@lw.com

17                                              ORACLE CORPORATION
                                                   Dorian Daley (Bar No. 129049)
18                                                 Deborah K. Miller (Bar No. 95527)
                                                   James C. Maroulis (Bar No. 208316)
19                                                 500 Oracle Parkway
                                                   Redwood Shores, California 94065
20                                                 Telephone: (650) 506-5200
                                                   Facsimile: (650) 506-7114
21                                                 Email: dorian.daley@oracle.com
                                                   Email: deborah.miller@oracle.com
22                                                 Email: jim.maroulis@oracle.com

23                                                 Attorneys for Defendant
                                                   ORACLE CORPORATION
24

25

26

27

28