1  JEFFREY L. HOGUE, ESQ. (SBN 234557)
   TYLER J. BELONG, ESQ. (SBN 234543)
2  BRYCE A. DODDS, ESQ. (SBN 283491)
   **HOGUE & BELONG**
3  430 Nutmeg Street, Second Floor
   San Diego, CA 92103
4  Telephone No: (619) 238-4720
   Facsimile No: (619) 270-9856
5  jhogue@hoguebelonglaw.com
   tbelong@hoguebelonglaw.com
6  bdodds@hoguebelonglaw.com

7  Attorneys for Plaintiff Greg Garrison

8                    **UNITED STATES DISCTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                          **SAN JOSE DIVISION**

11 GREG GARRISON, individually and on        ) CASE NO.: 5:14-cv-04592-LHK
   behalf of all others similarly situated;  )
12                                            ) **OPPOSITION TO DEFENDANT**
                    Plaintiff,                ) **ORACLE CORPORATION'S MOTION**
13                                            ) **FOR JUDGMENT ON THE PLEADINGS**
14        v.                                  )
                                              ) Date:    April 23, 2015
15 ORACLE CORPORATION, a Delaware            ) Time:    1:30 p.m.
   corporation;                               ) Place:   Courtroom 8, 4th Floor
16                                            ) Judge:   Honorable Lucy H. Koh
                    Defendant.                )
17                                            )
                                              )
18                                            )
                                              )
19                                            )
                                              )
20 _____   )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  MATERIAL FACTUAL BACKGROUND ...................................................... 2

III. PROCEDURAL BACKGROUND ..................................................................... 2

IV. LEGAL STANDARD ........................................................................................ 3

V.  LEGAL ARGUMENT ....................................................................................... 6

    A.  Mr. Garrison Adequately Pleads His Antitrust Claims.............................. 6

        1.  Mr. Garrison's Claims *Are Not* Barred by the Statute of Limitations........................... 6

            a.  *The Continuing Violation Doctrine Applies.* ............................. 6

            b.  *Mr. Garrison Pled Fraudulent Concealment Sufficiently.* ...................................... 10

        2.  Mr. Garrison Alleges He Suffered Injury-in-fact Resulting from Oracle's Restricted Hiring Antitrust Conspiracy. ...................................... 13

        3.  Mr. Garrison Sufficiently Alleges that Oracle Entered into and Participated in the Restricted Hiring Antitrust Conspiracy. ...................................... 16

    B.  Mr. Garrison Has Sufficiently Alleged His Unfair Competition Claims. ................... 19

    C.  Mr. Garrison Has Standing to Seek Injunctive and Declaratory Relief under California Business and Professions Code section 16600. .............................................. 21

    D.  Should Oracle Prevail as to Any of Mr. Garrison's Claims, Mr. Garrison Should Be Permitted Leave to Amend.............................................. 22

VI. CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Federal Cases**

*Aurora Enters, Inc. v. Nat. Broadcasting Co.*, 688 F.2d 689 (9th Cir. 1982). ................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 4, 5, 11, 16

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2014 U.S. Dist. LEXIS 116200 (S.D. Cal. 2014) ...................................................................................................................... 15

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ...................................... 4

*Breakdown Servs. LTD v. Now Casting, Inc.*, 550 F. Supp. 2d 1123 (C.D. Cal. 2007) ................... 6

*Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001) ................................................ 22

*Cole v. Oroville Union High Sch.*, 228 F.3d 1092 (9th Cir. 2000) ...................................... 22

*Columbia Steel Casting Co., Inc. v. Portland GE Co.*, 111 F.3d 1427 (9th Cir. 1996) ............... 7, 9

*Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097 (N.D. Cal. 2013) ........................... 5

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ............................................ 3

*Eichorn v. AT & T Corp.*, 248 F.3d 131 (3d Cir. 2001) ................................................. 14

*ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547 (8th Cir. 1991) ...................................... 6

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................. 23

*G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 U.S. Dist. LEXIS 91327 (N.D. Cal. 2007) . 20

*Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253 (9th Cir. 2008) ........................................ 13

*Hall v. Tyco Int'l, Ltd.*, 223 F.R.D. 219 (M.D.N.C. 2004) .............................................. 3

*Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477 (9th Cir. 1988) ................. 6

*Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272 (9th Cir. 1991) ....................... 12

*Haugh v. Depuy-Motech, Inc.*, 14 Fed. Appx. 883 (9th Cir. 2001) ...................................... 13

*Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299 (9th Cir. 1986) ...................... 7, 9, 10

*Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. 2014) ......... 12, 13

*Huck v. Pfizer*, 2011 U.S. Dist. LEXIS 81161 (S.D. Cal. July 25, 2011) ............................ 20, 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............. 10

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................... 5

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ........................................... 4

*In re High-Tech Emple. Antitrust Litig.*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012) .................. passim

*In re Petroleum Products Antitrust Litig.*, 906 F.2d 432 (9th Cir. 1990) ........................ 6

*In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007).......................... 10

*In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................ 5

*Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir. 1980)........................................ 10

*Jones v. GE Life & Annuity Assur. Co.*, 2004 U.S. Dist. LEXIS 5297 (M.D.N.C. 2004) .............. 3

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982)7

*Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042 (9th Cir. 2008)........................................ 16

*Krainski v. State of Nevada ex rel. Bd. Of Regents*, 616 F.3d 963 (9th Cir. 2010)........................ 23

*McCalden v. California Library Ass'n*, 955 F.2d 1214 (9th Cir. 1990).......................... 5

Midwestern Mach. Co. v. Nw. Airlines, Inc., 392 F.3d 265 (8th Cir. 2004) .................................. 9

*O'Bannon v. NCAA*, 2010 U.S. Dist. LEXIS 19170 (N.D. Cal. 2010) .......................... 15

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011). .................................. 4

*Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739 (9th Cir. 1984) .............................. 14, 15

*Pace Indus. Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)...................... 7

*Pecover v. Electronics Arts Inc.*, 633 F. Supp. 2d 976 (N.D. Cal. 2009)........................ 5

*Pennsylvania Dental Ass'n v. Medical Service Ass'n*, 815 F.2d 270 (3rd Cir. 1987)...................... 9

*Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464 (1962)........................................ 5

*Process Specialties, Inc. v. Sematech, Inc.*, 2001 U.S. Dist LEXIS 26261 (E.D. Cal. 2001)....... 8, 9

*Red Lion Med. Safety, Inc. v. Ohmeda*, 63 F. Supp. 2d 1218 (E.D. Cal. 1999) .......................... 8, 9

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2nd Cir. 2009) ...................................... 4

*Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995)...................................... 14

*Rossi v. Standard Roofing*, 156 F.3d 452 (3d. Cir. 1998) ...................................... 6

*Rutledge v. Boston Woven Hose & Rubber Co.* 576 F.2d 248 (9th Cir. 1978) ........................ 10, 13

*Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199 (9th Cir. 2014) .................................. 7, 8

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) .................................. 12

*Sonoma County Ass'n of Retired Emples. v. Sonoma County*, 708 F.3d 1109 (9th Cir. 2013)....... 23

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).................................................... 4

-iii-

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ............................................................ 4

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991) ................................ 6

*White v. Trans Union LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................... 20

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004). ...................... 5


**California Cases**

*Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal.4th 697 (2002) ............................... 13

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163 (2000) ........................... 20

*Juarez v. Arcadia Fin. Ltd.*, 152 Cal.App.4th 889 (2007) ................................................ 20

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003); ........................ 20

*Limandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ........................................................... 12

*Walnut Creek Manor v. Fair Employment & Housing Com.*, 54 Cal.3d 245 (1991) ...................... 20


**Federal Statutes**

15 U.S.C. § 1 ...................................................................................................................... 2

Fed. R. Civ. P. 8 ............................................................................................................. 4, 5

Fed. R. Civ. P. 9 ............................................................................................................... 10

Fed R. Civ. P. 12 ...................................................................................................... passim

Fed. R. Civ. P. 15 ............................................................................................................. 23


**California Statutes**

California Business and Professions Code § 16600 ...................................... 1, 2, 12, 22

California Business and Professions Code §§ 17200, et seq. ..................................... 2, 20

California Business and Professions Code § 17203 ....................................................... 21


**Other Authorities**

*Schwarzer, Tashima & Wagstaffe*, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2012) ............................................................................................................................... 5

-iv-

# I. INTRODUCTION

Defendant Oracle's motion for judgment on the pleadings should fail. Not only does Oracle mischaracterize Mr. Garrison's complaint, ignore and downplay his allegations, it overstates pertinent law. More specifically, Oracle argues for a hyper-particularity standard for allegations in Mr. Garrison's complaint. Granted, a heightened pleading standard exists for Mr. Garrison's *fraudulent concealment* exception to the statute of limitations, but not for the balance of his allegations.

Plaintiff more than adequately pled a single conspiracy that Defendant and other technology companies took part in to restrain competition for employees. In fact, Plaintiff specifically alleged an anti-competitive agreement that Defendant entered into that effectively suppressed Plaintiff's and other employees' wages.

Further, Oracle attempts to support its Motion with *facts*. For example, it attempts to support its motion with claims that Defendant "cooperated" with the Department of Justice ("DOJ") and the DOJ decided not to prosecute it in an effort to support why the Court should grant Defendant's motion. These facts can be considered, but should not as Plaintiff has been unable to take any discovery. Such facts may be pertinent at summary judgment or trial, but serve no purpose in a Rule 12 motion. Finally, a Motion for Judgment on the Pleadings (Rule 12(c)) or Motion to Dismiss (Rule 12(b)(6)) should not be filed as a matter of routine, or as a mere stratagem to bolster a request for a stay of discovery.

Oracle's motion essentially claims that (1) Mr. Garrison's antitrust claims are barred by the statute of limitations; (2) he does not pled his claims with any specificity; (3) his claims are not plausible; (4) he does not have standing because he has not alleged that he suffered any anti-trust injury; and (5) plaintiff, as a former employee, cannot claim injunctive or declaratory relief under California Business and Professions Code section 16600.

As explained in more detail below, Defendant's arguments lack merit, and Plaintiff has more than adequately pled each of his claims. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

OPPOSITION TO DEFENDANT ORACLE CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:14-cv-04592-LHK

## II.     MATERIAL FACTUAL BACKGROUND

Plaintiff Greg Garrison worked as a manager-level employee for Oracle, a computer technology corporation with its principal place of business in Redwood Shores, California, from December 2008 to June 2009. Compl. ¶¶ 14–16 (ECF No. 1).  During this time, Oracle conspired with Google and other high-tech companies to suppress Mr. Garrison's wages and mobility, along with other manager level employees. *Id*. at ¶ 19.

Specifically, Mr. Garrison alleges that Oracle, Google, and others entered into an antitrust conspiratorial agreement to restrict one another from actively pursuing or even hiring each other's managerial level and above employees, whether or not those employees initiated contact. *Id.* ¶¶ 19, 25.  This conspiracy was carried out and enforced through senior executives at Oracle, including Larry Ellison and Safra Catz. *Id.* ¶¶ 20, 46.  Mr. Garrison seeks to represent those injured from this antitrust conspiracy, namely:

> All persons who worked at any time from May 10, 2007 to the present for Oracle
> in the United States in any manager level or above positions for Product, Sales, or
> General and Administrative roles, excluding engineers.

*Id.* at ¶ 34.

Mr. Garrison alleges that Oracle violated section 1 of the Sherman Act (15 U.S.C. § 1); the Cartwright Act; and California Business and Professions Code sections 17200, *et seq.*, and 16600 against himself and those he seeks to represent.


## III.     PROCEDURAL BACKGROUND

On **October 14, 2014**, Mr. Garrison filed his complaint against Oracle for the above-referenced violations. See Complaint.  On **October 20, 2014**, the Complaint was served. Hogue Dec. ¶ 2.  Contrary to Oracle's claim, no "oral agreement" to extend the time for Oracle to respond to the complaint ever existed.[1] *Id.* at ¶ 3.  In fact, Mr. Garrison always maintained that he expected

---

[1] In the 21 day interim before answering the complaint, Oracle's counsel called Plaintiff's counsel and asked him to drop the case. Hogue Decl. ¶ 3.  Plaintiff's counsel said he could not do that absent a compelling reason. *Id.*  In response, Oracle's counsel mentioned that "Oracle litigates hard, and takes things to trial" and that other plaintiffs' firms had Oracle's documents and decided

1    Oracle to respond within the statutory timeframe. *Id.* at ¶ 3.

2          On **November 10, 2014**, Oracle filed its Answer, admitting and denying certain allegations

3    in the Complaint, and then waited <u>*fifty-six days*</u> before it filed this motion. *See* ECF Nos. 9, 17.  To

4    make matters worse, Oracle argues for a stay on discovery until a ruling on this motion and has

5    refused to make its initial Rule 26 disclosures (though Mr. Garrison has already made his). *See*

6    ECF No. 19 at 8:13-15, 9:4–10:4.  The net effect of Oracle's request would preclude Mr. Garrison

7    from any discovery until at the earliest April 23, 2015.

8

9                              IV.    <u>LEGAL STANDARD</u>

10         "[I]n considering a motion for judgment on the pleadings under Federal Rule of Civil

11   Procedure 12(c), facts presented in the pleadings and the inferences drawn therefrom must be

12   viewed in the light most favorable to the non-moving party." *Jones v. GE Life & Annuity Assur.*

13   *Co.*, 2004 U.S. Dist. LEXIS 5297, at *4, 2004 WL 691749, at *1 (M.D.N.C. Mar. 17, 2004)

14   (footnote omitted) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)).

15   "In this respect, the standard applied to a motion for judgment on the pleadings is the same as that

16   applied to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), i.e. [sic] the

17   motion should only be granted if, after taking all well pleaded allegations in the complaint as true,

18   the plaintiff can prove no set of facts entitling her to relief." *Id.* (citing *Edwards*, 178 F.3d at 243);

19   *Hall v. Tyco Int'l, Ltd.*, 223 F.R.D. 219, 231 (M.D.N.C. 2004).

20

---

21   to pass on filing a complaint against Oracle. *Id.*  Nevertheless, defense counsel offered to provide
22   documentation that would dispel any notion that Oracle participated in the anti-competitive
     conspiracy. *Id.*

23   A few days later, defense counsel called back and inquired again whether Plaintiff was going to
24   drop the suit. Hogue Dec. ¶ 4.  Plaintiff's counsel informed him that he did not receive the
     documentation that defense counsel promised to provide so could not seriously look into
25   dismissing his client's case against Oracle. *Id.*  In response, Oracle's counsel stated he was no
     longer willing to provide said documentation that he claimed would exonerate Oracle, reasoning
26   that would only help Plaintiff augment any subsequent complaint. *Id.*  Plaintiff's counsel then
     informed opposing counsel he could not consider Oracle's request to dismiss the case if he would
27   not provide the documents that purportedly exonerated Oracle. *Id.*  Oracle's counsel then informed
     Plaintiff's counsel that he would be filing a Motion to Dismiss (Rule 12(b)(6).)  No other
28   conversations were had, and a Motion to Dismiss was not filed. *Id.*

OPPOSITION TO DEFENDANT ORACLE CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:14-cv-04592-LHK

For a complaint to survive a motion for judgment on the pleadings, it needs to present factual allegations that are *not* detailed, but that provide the defendant fair notice of the claims with more than just formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) ("*Twombly*"). Further, the claims must be facially plausible. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *Twombly*, 550 U.S. at 556, quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). <u>All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim</u>. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(d) practice.").

When a complaint's factual allegations are capable of more than one inference, the court *must* adopt whichever plausible inference supports a valid claim. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).) To put it another way, a complaint satisfies *Twombly* if the allegations, taken as a whole, are not "facially implausible." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). The court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12–13 (1st Cir. 2011). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.*" Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Furthermore, the courts are to keep in mind that "[e]ach allegation must be <u>simple</u>, <u>concise</u>, and direct"; *not* complex or overly-detailed. Fed. R. Civ. P. 8 (d) (emphasis added). Indeed, the Rules instruct that the complaint must be narrowed to "a <u>short</u> and plain statement of the claim

-4-

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Complaints may not be dismissed for omitting information about defenses. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Even if a complaint discloses a defense, if the defense disclosed by the complaint is *conditional* rather than absolute, a Rule 12(b)(6) motion to dismiss should be denied. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).[2]

In light of the above principles espoused in Rule 8, *Twombly*, and its progeny, courts in this circuit and this district have repeatedly declined to dismiss antitrust claims at the pleading stage. *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1115 (N.D. Cal. Aug. 2, 2013) (finding plaintiff had sufficiently alleged an antitrust injury and denying defendants' motion to dismiss because "Plaintiff has met the plausibility requirement of showing that the item he purchased would have been one affected by the allegedly anticompetitive agreement"); *Pecover v. Electronics Arts Inc.*, 633 F. Supp. 2d 976, 983–85 (N.D. Cal. June 5, 2009) (denying the defendant's motion to dismiss the plaintiffs' Sherman Act section 2 claim, Cartwright Act claim, and other claims because "the court must take as true plaintiff's factual allegations that the series of exclusive deals between EA and the NFL, AFL and NCAA 'killed off' competition and 'prevented [competitors] from re-entering the market'"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1138, 1142–50 (N.D. Cal. 2009) (denying motion to dismiss Sherman Act Claims because the complaint alleged enough facts to state plausible claim for relief based upon a horizontal price fixing conspiracy between the defendants); *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1183 (N.D. Cal. Mar. 31, 2009) (noting that *Twombly* does not require "elaborate fact pleading") (quoting *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 473 (1962) ["**in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot**"] (emphasis added).

In fact, numerous courts have noted that in the antitrust context—unlike this case—direct evidence will rarely be available. *See Breakdown Servs. LTD v. Now Casting, Inc.*, 550 F. Supp.

---

[2] *See also AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see Schwarzer, Tashima & Wagstaffe*, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial §§ 9:193–9:197 (The Rutter Group 2012).

2d 1123, 1135 (C.D. Cal. Jan. 25, 2007) (noting it is often difficult to show direct evidence of a combination or conspiracy, and concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings; *In re High-Tech Emple. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1117 (N.D. Cal. Apr. 18, 2012) (citing *Harkins Amusment Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 484 (9th Cir. 1988) (concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings; *see In re Petroleum Products Antitrust Litig.*, 906 F.2d 432, 439 (9th Cir. 1990); *Rossi v. Standard Roofing*, 156 F.3d 452, 465 (3d. Cir. 1998); *ES Dev., Inc. v. RWM Enters., Inc.*, 939 F.2d 547, 553–54 (8th Cir. 1991); *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1456 (11th Cir. 1991). The instant case, however, is different than a typical antitrust case because Plaintiff's claims *are* supported by direct evidence. Complaint (ECF No. 1) ¶ 19.

As shown below, Plaintiff adequately alleges facts which, if established, entitle Plaintiff to relief under each cause of action challenged by Oracle's Motion.


# V.     LEGAL ARGUMENT

## A.     Mr. Garrison Adequately Pleads His Antitrust Claims.

### 1.     Mr. Garrison's Claims *Are Not* Barred by the Statute of Limitations.

Oracle argues that Mr. Garrison's antitrust claims are time-barred and that Mr. Garrison has failed to allege sufficient facts to toll the statute of limitations under either the continuing violation doctrine or fraudulent concealment. Mot. at 8:1-17. Oracle is wrong on both accounts— Mr. Garrison sufficiently alleged that the limitations period for his antitrust claims did not begin to run until May 2013 when Oracle's agreement with Google and others was finally disclosed publicly. Compl. (ECF No. 1) ¶ 6.

#### a.     The Continuing Violation Doctrine Applies.

Oracle first argues that Mr. Garrison insufficiently pled facts to show that the continuing violation doctrine tolls the statute of limitations. Mot. at 9:9–10:6. But, Mr. Garrison sufficiently alleges that Oracle completed overt acts throughout the limitations period that were (1) new and independent and were not merely affirmations of the previous act; and (2) inflicted new and

accumulating injury. Compl. (ECF No. 1) ¶ 43; *see Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (identifying what constitutes the continuing violation doctrine in the Ninth Circuit, and explaining that the standard "is meant to differentiate those cases where a continuing violation is ongoing—and an antitrust suit can therefore be maintained—*from those where all of the harm occurred at the time of the initial violation*.") (emphasis added).

Under this standard, "the cause of action may also re-accrue, in the absence of a conspiracy to violate the antitrust laws, when the defendant commits an act which by its nature is a continuing antitrust violation. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983). An example of this latter type of continuing violation is when a defendant *continuously* enforces an illegal contract. *Aurora Enters, Inc. v. Nat. Broadcasting Co.*, 688 F.2d 689, 694 (9th Cir. 1982). Indeed, the Ninth Circuit has confirmed that "certain actions taken to enforce contracts made in violation of the antitrust laws were sufficient to restart the statute of limitations." *Samsung*, 747 F.3d, at 1203, citing *Pace Indus. Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). As illustrated by the following cases, "non-legal actions taken pursuant to a pre-limitations period contract can lead a new cause of action to accrue." *Id.* at 1203.

For instance, in *Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299 (9th Cir. 1986), the Ninth Circuit faced an arrangement in which a tourism company agreed to steer customers to preferred souvenir shops. The Ninth Circuit held that "a cause of action accrued each and every time that a tourist was shepherded away from the plaintiff's non-preferred shop because even though the agreement predated the limitations period, the agreement itself did not 'immediately and permanently destroy' plaintiff's business nor did it cause 'irrevocable, immutable, permanent, and final' injury." *Samsung*, 747 F.3d at 1203, citing *Hennegan*, 787 F.2d at 1301.

Similarly, in *Columbia Steel Casting Co., Inc. v. Portland GE Co.*, 111 F.3d 1427 (9th Cir. 1996), the Ninth Circuit held that a power producer's refusal to wheel electricity in accordance with a pre-limitations contract constituted an overt act that restarted the statute of limitations. *Id.*, at 1444–45. "Even though the anti-competitive agreement to divide the market between producers

-7-

dated back to 1972, the anti-competitive acts of the parties to that agreement, taken pursuant to its terms, were sufficient to support an antitrust action 18 years later." *Id.*

Likewise, in *Process Specialties, Inc. v. Sematech, Inc.*, 2001 U.S. Dist LEXIS 26261 (E.D. Cal. Nov. 8, 2001), the defendant intended to use government subsidies to dominate the semiconductor test wafer market and drive their competitors out of business. *Id.* at 43–44. The court found that the continuing violation doctrine applied as "[e]ach new sale [of semiconductor test wafers] is, in fact, a new and independent act that potentially inflicts new and accumulating injury on [the plaintiff]" because the antitrust violations were not final in their impact—i.e. to "purportedly effectuated in order to drive the competition out of business." *Id.* at 42–43.

Finally, in *Red Lion Med. Safety, Inc. v. Ohmeda*, 63 F. Supp. 2d 1218 (E.D. Cal. Aug. 4, 1999), the defendant medical anesthesia equipment manufacturer tried to exclude the plaintiffs from the market for servicing defendant's equipment by employing a policy 15 years earlier that restricted what equipment parts they would sell. *Id.* at 1221–22. The plaintiffs argued that the continuing violation doctrine saves their antitrust claims—and the court agreed. The court stated that "[a]lthough [the defendant's] parts policy has been in place for at least 15 years, the policy is not a 'permanent and final' decision that forever more compels [the defendant] to refuse to sell service restricted parts to [the plaintiffs or others similarly situated]. [The defendant] could always change its policy." *Id.* at 1224. The court concluded that the defendant's policy "did not 'immediately and permanently destroy' plaintiffs' businesses or 'completely and permanently exclude' plaintiffs from the relevant market." *Id.* "Instead, [the defendant's] policy incrementally limits plaintiffs' ability to expand their businesses. Thus, the effects of the policy are felt not all at once and for the foreseeable future . . . but each time [plaintiffs and those similarly situated are] unable to sign a hospital customer to a service contract because [they] cannot readily obtain [the defendant's] parts." *Id.* Thus, the continuing violation doctrine applied. *Id.*

In each of the above cases, subtle actions taken pursuant to a pre-limitations contract were sufficient to restart the statute of limitations. Tellingly, the Ninth Circuit has recognized that "[t]he typical antitrust continuing violation occurs . . . when conspirators continue to meet to fine-tune their cartel agreement." *Samsung*, 747 F.3d at 1203, citing *Midwestern Mach. Co. v. Nw.*

*Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004), and *Pennsylvania Dental Ass'n v. Medical Service Ass'n*, 815 F.2d 270, 278 (3rd Cir. 1987).

Here, like *Hennegan*, *Columbia*, *Process Specialties*, and *Red Lion*, Oracle's Restricted Hiring Agreement was an ongoing conspiracy (and part of an ongoing larger conspiracy). Compl. (ECF No. 1) ¶ 25. Under this agreement, Oracle, Google, and other technology companies agreed "Not to pursue manager level and above candidates for Product, Sales, or G&A roles—even if they have applied to [any of the other companies who are parties to the Restricted Hiring Agreement]." *Id.* at ¶ 19. Like the cases above, the ongoing violations were not felt all at once and for the foreseeable future, but in discrete ongoing violations. Here, those violations occurred each time employees were not pursued, when employees were denied mobility (prospective employers drove candidates back to their employers), and even when employees were paid (the Restricted Hiring Agreement drove down compensation). *Id.* at ¶¶ 19, 28–32. As part of the conspiracy, Oracle also took other steps to further the conspiracy:

- "Defendant communicated among itself and among the other participants to the Anti-Solicitation Agreement by phone and e-mail and through in-person meetings to further the conspiracy . . ." *Id.* at ¶ 44.

- "[D]uring meetings concerning the acquisition of new employees, former CEO, Larry Ellison, and current CEO, Safra Catz, personally ensured that the division of Oracle engaging in the employee acquisitions was not hiring employees from companies who were co-participants in the Restrictive Hiring Agreement." *Id.* at ¶ 46.

- "In order to keep the Restrictive Hiring Agreement secretive, Oracle's officers refrained from delegating such tasks." *Id.*

- "Defendant also provided pretextual, incomplete, or materially false and misleading explanations for hiring, recruiting, and compensation decisions made under the conspiracy." *Id.*

Mr. Garrison seeks to represent a class of employees harmed "from May 10, 2007 to *the present*" *Id.* at ¶¶ 34, 40(h), (i) (emphasis added).

Next, Oracle argues that Mr. Garrison's allegations supporting the continuing violation doctrine are inconsistent because "the complaint acknowledges that in September 2010, Google entered into a consent decree with the DOJ precluding it from participating in any anti-competitive hiring agreements." Mot. at 10:1-3. But, this allegation does not undermine the continuing violation doctrine as to Oracle. Nor does it even suggest that Google (or Oracle or any other party

-9-

1  to the Restricted Hiring Agreement) ceased participation in the Restricted Hiring Agreement.

2  All of the above handily establishes that Mr. Garrison has adequately alleged facts to show

3  that the continuing violation doctrine. Therefore, the continuing violation doctrine applies

4  contrary to Oracle's assertions otherwise.

5  *b.      Mr. Garrison Pled Fraudulent Concealment Sufficiently.*

6  Oracle takes the position that Mr. Garrison's allegations are not tolled by the statute of

7  limitations because he has not alleged any facts that demonstrate "Oracle engaged in any

8  misconduct that precluded plaintiff from learning of his claims." Mot. at 10:9-12. Oracle's

9  argument, however, is short-sighted.

10  Primarily, "it is generally inappropriate to resolve the fact-intensive allegations of

11  fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the

12  extent of the fraudulent concealment is alleged to be largely in the hands of the alleged

13  conspirators." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D.

14  Cal. Mar. 30, 2010) (quoting *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789

15  (N.D. Cal. 2007)).

16  "When a motion to dismiss is based on the running of the statute of limitations, it can be

17  granted only if the assertions of the complaint, read with the required liberality, would not permit

18  the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682

19  (9th Cir. 1980). Although ignorance of an antitrust cause of action alone is not sufficient to toll

20  the statute of limitations, it will be tolled if plaintiff acting as a reasonable person, did not know of

21  its existence. *Hennegan*, 787 F.2d at 1302 (citing *Rutledge v. Boston Woven Hose & Rubber Co*.

22  576 F.2d 248, 249–50 (9th Cir. 1978)). Here, Oracle ignores these principles that counsel against

23  granting a Rule 12 motion concerning the fact-intensive allegations of fraudulent concealment.

24  Additionally, Oracle takes inconsistent positions. On the one hand, Oracle claims that Mr.

25  Garrison must meet the heightened pleading requirements under Fed. R. Civ. P. 9(b), and did not

26  because he failed to "'identify the who, what, where, and how of the misconduct charged, as well

27  as what is false or misleading about the purportedly fraudulent' conduct." Mot. at 10:24-11:1.

28  But, on the other hand, Oracle seemingly criticizes Mr. Garrison for being *too* specific because his

allegations include "a couple of well-known names"[3] (Mot. at 12:3-24) and a "*single* document that was produced in the *High-Tech* case." Mot. 1:11-15 (emphasis in original). Oracle recognizes these allegations, then quickly dismisses them as implausible because it disagrees that Oracle's CEO and President concealed the alleged conspiracy by managing and implementing it themselves—insinuating that this was an overly burdensome task *or* it was a task so beneath them that they could not possibly be expected to do it. Mot. at 13:3-24; *see Twombly*, 550 U.S. at 556 (". . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

Furthermore, Oracle ostensibly overlooks that Mr. Garrison alleges that Oracle and Google entered into a Restricted Hiring Agreement in May 2007, and specified the actual terms of that agreement. Compl. (ECF No. 1) ¶ 19. Mr. Garrison also alleges that the effects of that agreement, which, among other things, "eliminated competition for skilled labor" and fixed and suppressed employee compensation and "covered all managerial employees [like Mr. Garrison] and above . . ." *Id*. at ¶¶ 5, 8, 21. Accordingly, Mr. Garrison's allegations should not be viewed as merely conclusory.

Additionally, Oracle claims that its conduct is not consistent with fraudulent concealment because, according to Oracle "[it] has been cooperating with investigations" and it produced documents to the DOJ and to the *High-Tech* plaintiffs as a third party." Mot. 12:25–13:6. But, this fact should not persuade. First, Oracle's statement is merely a denial of Mr. Garrison's prima facie case, which certainly does not make Mr. Garrison's claim "implausible." Plus, other reasons exist for why Oracle's alleged cooperation with the DOJ is, for all intents and purposes, meaningless. For instance, Oracle claims "it has been cooperating with investigations into technology company hiring and recruiting practices for more than five years." Mot. at 12:25–13:1. The assertion that Oracle is "cooperating" can be viewed just as well as tending to prove its culpability and avoidance of prosecution. After all, cooperation with a DOJ antitrust investigation

---

[3] These "well-known names" refer to Larry Ellison and Safra Catz. *See* Compl. (ECF No. 1) ¶ 46. Ironically, Oracle cites to how the other plaintiffs in the *High-Tech* case alleged that Steve Jobs, Arthur Levinson, and Eric Schmidt orchestrated a conspiracy that included the enforcement of bilateral agreements, and ostensibly concedes these allegations were plausible. Mot. at 4:19-23.

is a necessary prerequisite to avoiding criminal charges being filed for illegal antitrust activity. *See* RJN No. 1 at 2 ¶ A.3, 3 ¶ B.4 (explaining that under the DOJ's "Corporate Leniency Policy," also known as the "Corporate Amnesty" or "Corporate Immunity" policy, "cooperation" is one factor that the DOJ considers when deciding whether to bring criminal charges against a company for illegal antitrust violations). Not only can a company avoid prosecution for its antitrust violations by cooperating with the DOJ's investigation, but so can its corporate directors, officers, and employees. *Id*. at 4 ¶ C. And, the leniency the DOJ offers can be a financial boon to those cooperating conspirators:

> Domestic and foreign firms, through their counsel, have come to realize that acceptance into the Amnesty Program can potentially save a company tens of millions of dollars in fines and can eliminate the threat of prosecution and incarceration for the firms' culpable executives.

RJN No. 2 at 4.

Furthermore, even if one ignores the avalanche of facts pleaded above, Mr. Garrison's Complaint still sufficiently alleged fraudulent concealment because Oracle had a duty to disclose the unlawful Restricted Hiring Agreement to Mr. Garrison and all other employees who it affected.

"Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957, at *19–20 (C.D. Cal. 2014) ("*Herremans*") (citing *Smith v. Ford Motor Co*., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing *Limandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997); *see also Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272, 1276 (9th Cir. 1991) (holding that employer and employee were in a fiduciary relationship). Here, Oracle entered into the Restricted Hiring Agreement with its competitors, essentially side-stepping California's public policy prohibiting employment covenants not to compete. Compl. (ECF No. 1) ¶¶ 70, 80, 86, 89 ; Cal. Bus. & Prof. Code § 16600; *Advanced Bionics Corp. v. Medtronic, Inc.*, 29

Cal.4th 697, 706–07 (2002).  Not only did Mr. Garrison not consent to these restrictions on his ability to gain employment elsewhere, he did not even know about these "backdoor" restrictions on his ability to work for Oracle's competitors.  Such restrictions on his livelihood were obviously material facts.  Thus, Oracle had "exclusive knowledge of material facts not known to the plaintiff." *See Herremans*, 2014 U.S. Dist. LEXIS 145957, at *19–20.  It, therefore, had the duty to disclose this Restricted Hiring Agreement to Mr. Garrison, and did not. *Id.*  As such, Mr. Garrison need not plead or prove that the concealment was fraudulent. *See Haugh v. Depuy-Motech, Inc.*, 14 Fed. Appx. 883, 886–87 (9th Cir. 2001); *Rutledge*, 576 F.2d at 250 (stating that to establish fraudulent concealment as a tolling mechanism, there is no need to plead active or intentional concealment where the law "imposes a duty upon the defendant to make disclosure.").  Oracle had an affirmative duty to disclose, thus, Mr. Garrison's pleading that the agreement was concealed is sufficient to toll the statute.

Either way, then, Mr. Garrison has sufficiently alleged fraudulent concealment as an exception to any statute of limitations defense Oracle may assert.

2. <u>Mr. Garrison Alleges He Suffered Injury-in-fact Resulting from Oracle's Restricted Hiring Antitrust Conspiracy.</u>

Incredulously, Oracle asserts that Mr. Garrison does not allege concrete or particularized injury sufficient to confer Article III standing. Mot. at 13:9-15.  Specifically, Oracle claims that the injuries Mr. Garrison alleges are merely speculative and non-personal and thus he has not established his standing to proceed. Mot. at 13:13-15.  But, Mr. Garrison's factually-detailed antitrust claims go well beyond what is required to allege injury-in-fact and establish Article III standing.  To wit, Mr. Garrison alleges that he was Oracle's former employee who was harmed by the Restrictive Hiring Agreement referenced above, and that Oracle intended for the overarching conspiracy to suppress managerial employees' wages and mobility. Compl. (ECF No. 1) ¶¶ 19, 21, 25, 28, 32, 52, 60, 69.

As Oracle points out, to allege injury-in-fact sufficient to establish Article III standing, a plaintiff must allege he "has suffered an injury which bears a causal connection to the alleged antitrust violation." *See Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008).

-13-

Where an employee "is the direct and intended object of an employer's anticompetitive conduct, that employee has standing to sue for antitrust injury." *In re High-Tech Emple. Antitrust Litig.*, 856 F.Supp.2d 1103, 1116 (N.D. Cal. Apr. 18, 2012), citing *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 742–43 (9th Cir. 1984), *Eichorn v. AT & T Corp.*, 248 F.3d 131, 140–41 (3d Cir. 2001), *Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995). Oracle then cites to *In re High-Tech* and claims that, unlike Mr. Garrison, there the plaintiffs "expressly alleged that defendants' conduct "reduced artificially the compensation of Lucasfilm employees." Mot. at 15:18-21.

In Mr. Garrison's complaint he expressly alleges:

> *Oracle entered into, implemented, and policed the Restricted Hiring Agreement* *with the knowledge of the overall conspiracy, and did so with the intent and effect* *of fixing the* ***compensation of the employees of participating companies at*** ***artificially low levels***. As additional companies joined the conspiracy to control labor costs, competition among participating companies for skilled labor continued to drop, ***and compensation and mobility of the employees of*** ***participating companies was further suppressed***. These anticompetitive effects were the purpose of the Restricted Hiring Agreements, and Defendant and the other parties to the Anti-Solicitation Agreement *succeeded* ***in lowering the*** ***compensation*** *and mobility of their employees below what would have prevailed* *in a lawful and properly functioning labor market.*

Compl. (ECF No. 1) ¶ 31 (emphasis added).

The allegations in Mr. Garrison's complaint are explicit; he also alleges that Oracle entered into the Restricted Hiring Agreement causing the injuries he suffered:

> Oracle and Google conspired and agreed to restrict competition for services provided by Plaintiff and members of Plaintiff Class through Restrictive Hiring Agreements and agreements to fix the wage and salary ranges for said class members, all with the purpose and effect of **suppressing class members'** **compensation** and restraining competition in the market for services of class members.

*Id.* at ¶ 51 (emphasis added).

In addition, Mr. Garrison alleges that Oracle's "conduct injured and damaged Plaintiff and members of the Plaintiff Class and the Oracle Class by **suppressing compensation to levels** **lower than the members otherwise would have received in the absence of the Restrictive** **Hiring Agreements**, all in an amount to be proven at trial." *Id.* at ¶ 52 (emphasis added). Mr. Garrison also alleges: "As a result of the above violations, Plaintiff and Plaintiff Class have been damaged . . ." *Id.* at ¶ 55. Essentially, Mr. Garrison has alleged that as a result of the Restrictive

-14-

Hiring Agreements entered into by Oracle and Google (amongst others), he was injured and damaged by receiving lower wages than he would have had Oracle not participated in the restrictive hiring scheme.[4]

Other courts in the Ninth Circuit have found similar allegations sufficient to establish Article III standing. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2014 U.S. Dist. LEXIS 116200 at *15 (S.D. Cal. Aug. 20, 2014) (finding standing under Article III when the plaintiff alleged "Defendants diverted AbilityOne Program contract awards and opportunities from Plaintiff to Defendants, causing damage to Plaintiff."); *O'Bannon v. NCAA*, 2010 U.S. Dist. LEXIS 19170, *17–*18 (N.D. Cal. Feb. 8, 2010) (finding Article III standing when "[h]e alleges that Defendants' actions have deprived him of compensation for the use of images of himself from his collegiate career. That injury is traceable to Defendants' conduct . . .").

Instead of analyzing the facts Mr. Garrison actually alleges, which establish Article III standing, Oracle speculates on what allegations Mr. Garrison *might have* alleged to establish Article III standing. For example, Oracle states that Mr. Garrison did not allege any attempts to work at Google; or that the Restricted Hiring Agreement affected his employment choices in any way; or that he faced any obstacles to mobility; or that salaries at Oracle were lower during the conspiracy period. Mot. at 15:8-10, 15:15-20. But, these different possibilities are irrelevant if a plaintiff can prove he was harmed, like Mr. Garrison has done.

Under the Restricted Hiring Agreement, seeking employment with any of the conspirators would have been futile. *See Ostrofe*, 740 F.2d at 743 (explaining that "[a] request or demand is not always necessary to establish injury from a boycott in an antitrust suit," particularly where a demand for employment amounts to a futile gesture).

In short, Mr. Garrison did not have to make Oracle's suggested allegations to assure he properly pled Article III standing. Mr. Garrison has alleged an injury personal to him that arose from Oracle's Sherman Act and Cartwright Act antitrust violations. Thus, Oracle's motion fails in its claim that Mr. Garrison lacks standing.

---

[4] Mr. Garrison alleges similar facts that likewise establish Article III standing for his Cartwright Act claims. Compl. (ECF No. 1) at ¶¶ 58–60, 63.

3. <u>Mr. Garrison Sufficiently Alleges that Oracle Entered into and Participated in the Restricted Hiring Antitrust Conspiracy.</u>

Astonishingly, Oracle claims that Mr. Garrison did not allege an *agreement* between Oracle and Google. Mot. at 16:4-28. Indeed, this is quite a remarkable assertion given that paragraph 19 of the complaint specifically alleges an anti-competitive agreement, and then even lays out the *terms* of that agreement. Specifically, Mr. Garrison alleges:

> "In May 2007, Oracle and Google entered in a Restricted Hiring Agreement pursuant to which Oracle, Google, and the other technology companies who were a party to the Restricted Hiring Agreement agreed to the following:
>
> > '1) Not to pursue manager level and above candidates for Product, Sales, or G&A roles – even if they have applied to [any of the other companies who are parties to the Restricted Hiring Agreement] . . ."

Apparently, Oracle argues that this is not enough. Citing to *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042 (9th Cir. 2008), Oracle claims that an allegation of an agreement in the antitrust context, *at a minimum*, must make clear who, did what, to whom (or with whom), where, and when. Mot. at 16:15-20, 17:1-7. Oracle, however, fails to put *Kendall* into perspective. The plaintiff in *Kendall* failed to answer <u>*any*</u> of the above-referenced basic questions in the complaint, even after depositions were taken. *Kendall*, 518 F.3d at 1048. Oracle's characterization of what *Kendall* required goes farther than what is needed to satisfy *Twombly*. Nevertheless, Mr. Garrison makes factual allegations that support all of these "basic" questions as noted below.

**<u>Who?</u>** Senior executives at Oracle (including Chief Executive Officers Larry Ellison and Safra Catz) and Google. Compl. (ECF No. 1) ¶¶ 19–20, 46. **<u>Did What?</u>** Entered into a secret Restrictive Hiring Agreement whereby they would agree "[n]ot to pursue manager level and above candidates for Product, Sales, or G&A roles – even if they have applied to [any of the other companies who are parties to the Restricted Hiring Agreement]*." Id*. at ¶ 19. **<u>To Whom?</u>** To all managerial level and above employees who worked at Oracle. *Id.* at ¶ 21. **<u>Where?</u>** Primarily in Silicon Valley. *Id.* at ¶ 25. **<u>When?</u>** Beginning in May 2007 through the present. *Id.* at ¶¶ 19, 34.

Oracle does not stop here, but argues that Mr. Garrison did not sufficiently plead a conspiracy. Mot. at 17:8-9. As support, Oracle cites to some rote law on what is required to properly allege a conspiracy, but also seemingly concedes that Mr. Garrison's allegations are sufficient. Oracle then

goes on to argue certain facts purport to exculpate Oracle; thus, Mr. Garrison's claims are *insufficient* as they pertain to Oracle.[5] Mot. at 17:24-18:24. For instance, although Oracle recognizes that the Restricted Hiring Agreement can be viewed as an "agreement," it points to the fact that no party to the Restricted Hiring Agreement was charged by the DOJ. *Id.* at 17:25-18:2. Oracle then proceeds to describe what is included on the Restricted Hiring Agreement by making the obvious observation that, other than listing its name (Oracle), the document says nothing about Oracle. *Id.* at 18:4-5. Then, Oracle disingenuously insinuates that it was an "internal" agreement by Google describing its own hiring practices. *Id.* at 18:5-7. Oracle, however, offers no explanation *why* it is listed on the Restrictive Hiring Agreement, which begs the question: what reason would a human resource employee at Google have to randomly list Oracle as one of the four companies[6] on the Restrictive Hiring Agreement, and then proceed to the onerous task of finding all of their subsidiaries and including each of them by name as well? This scenario would be "implausible."

In addition, Mr. Garrison alleges that Oracle entered into a conspiracy (by way of its senior executives) with Google and other high-tech companies through direct, indirect, and explicit communications to refuse to competitively seek contracts with one another's managerial employees with the intent of fixing and suppressing the compensation of the conspirators' managerial level employees at artificially low levels to control labor costs and eliminate competition for skilled labor. Compl. (ECF No. 1) ¶¶ 22, 31. The conspirators' intent was effected through the agreement and harmed Mr. Garrison and members of the Plaintiff Class. *See*, *i.e.*, *id.* at ¶¶ 2, 4, 5, 19, 20, 28, 31, 46, 55

Mr. Garrison also alleges that "senior executives" managed and enforced the challenged agreements. *Id.* at ¶ 20. Specifically, Mr. Garrison alleges that "[s]enior executives at Oracle reached this Restricted Hiring Agreement through direct, and explicit communications. The executives actively managed and enforced the Restricted Hiring Agreement through direct, and indirect communications." *Id.* at ¶ 20. Mr. Garrison provided further factual detail, alleging:

---

[5] The Court has discretion to disregard the facts argued by Oracle (Fed. R. Civ. P. 12(d)), and should do so here, especially considering Mr. Garrison has not had an opportunity to conduct any discovery.

[6] Effectively, there were only three companies listed under the entire Restricted Hiring Agreement because Sun Microsystems was a California corporation acquired by Oracle in January 27, 2010.

> . . . during meetings concerning the acquisition of new employees, former CEO, Larry Ellison, and current CEO, Safra Catz, personally ensured that the division of Oracle engaging in the employee acquisitions was not hiring employees from companies who were co-participants in the Restrictive Hiring Agreement. In order to keep the Restrictive Hiring Agreement secretive, Oracle's officers refrained from delegating such tasks.

*Id.* at ¶ 46.

As this Court found with similar allegations in *In re High-Tech*, Mr. Garrison's allegations should be sufficient. Mr. Garrison sufficiently addresses the remaining questions of the "effect, victims, location, and timing" of the conspiracy. He alleges:

- This class action challenges (1) a conspiracy among defendant Oracle ("Defendant" or "Oracle") and other companies to fix and suppress the compensation of their employees by way of Restricted Hiring Agreement (defined below). *Id.* at ¶ 2.

- Without the knowledge or consent of their employees, senior executives from Oracle entered into an agreement with Google not to pursue manager level and above candidates from one another for Product, Sales, General & Administrative ("G&A") positions. The aforementioned agreement shall be known as the "Restricted Hiring Agreement," and is set forth in greater detail in the Factual Background section below. *Id.* at ¶ 4.

- The Restricted Hiring Agreement effectively eliminated competition for skilled labor. *Id.* at ¶ 5.

- "In May 2007, Oracle and Google entered into a Restricted Hiring Agreement pursuant to which Oracle, Google, and the other technology companies who were a party to the Restricted Hiring Agreement agreed to the following. . ." *Id.* at ¶ 19.

- Such agreements resulted in Google and Oracle refusing to competitively seek contracts with one another's managerial employees. *Id.* at ¶ 28.

- Oracle entered into, implemented, and policed the Restricted Hiring Agreement with the knowledge of the overall conspiracy, and did so with the intent and effect of fixing the compensation of the employees of participating companies at artificially low levels. As additional companies joined the conspiracy to control labor costs, competition among participating companies for skilled labor continued to drop, and compensation and mobility of the employees of participating companies was further suppressed. These anticompetitive effects were the purpose of the Restricted Hiring Agreements, and Defendant and the other parties to the Anti-Solicitation Agreement succeeded in lowering the compensation and mobility of their employees below what would have prevailed in a lawful and properly functioning labor market. *Id.* at ¶ 31.

- As a result of the above violations, Plaintiff and Plaintiff Class have been damaged in an amount according to proof. Accordingly, Plaintiff and Plaintiff Class seeks three times their damages caused by Defendant's violations of the Sherman Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendant from ever again entering into similar agreements in violation of the Sherman Act. *Id.* at ¶ 55.

The above allegations are sufficient—Mr. Garrison has stated a valid claim under both his Sherman Act and Cartwright Act antitrust claims, and therefore, Oracle's motion should be denied on that basis.

## B.    Mr. Garrison Has Sufficiently Alleged His Unfair Competition Claims.

Oracle challenges Mr. Garrison's unfair competition claims on two grounds. First, Oracle argues that because Mr. Garrison's antitrust claims above fail, his unfair competition claim must necessarily fail. Mot. at 20:9-14. Second, Oracle argues that Mr. Garrison "may not recover the higher compensation he claims he would have received absent the alleged conspiracy through either disgorgement or restitution." *Id.* at 20:14-16. Neither argument should persuade.

As to Oracle's first argument, Oracle's argument fails for the reasons above explaining that Mr. Garrison sufficiently pled his Sherman Act and Cartwright Act antitrust claims. *See* Section V. A. 2, 3, *supra*. As to its second argument, Oracle specifically claims that Mr. Garrison cannot recover restitutionary relief under the UCL because "he does not have a 'vested interest' in the higher compensation he contends he would have received in the absence of the alleged conspiracy." *Id.* at 21:14-16. Oracle claims that what Mr. Garrison seeks is speculative and merely an expectancy interest. *Id.* at 21:14–22:3. It is not. The restitution Mr. Garrison seeks is for work he has already performed, which is quantifiable.

Restitutionary disgorgement is available under the UCL. *Juarez v. Arcadia Fin. Ltd.*, 152 Cal. App. 4th 889, 914–15 (2007). Restitution is "the act of making good, or of giving an equivalent for, loss." *Walnut Creek Manor v. Fair Employment & Housing Com.*, 54 Cal.3d 245, 263 (1991). Restitution is not limited to recovery of money or property once in the possession of the plaintiff; it includes recovery of a quantifiable sum of money and property that a plaintiff has a vested interest in. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003); *Walnut Creek Manor*, 54 Cal.3d at 263. At this early stage, "allegations of lost income [are] enough to establish injury-in-fact, and therefore standing to seek injunctive relief" under Section 17200. *G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 U.S. Dist. LEXIS 91327, at *14 (N.D. Cal. 2007) (citing *White v. Trans Union LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006)).

-19-

"In the employment context, payment of wages unlawfully withheld from an employee are recoverable under the UCL." *Huck v. Pfizer*, 2011 U.S. Dist. LEXIS 81161, at *30 (S.D. Cal. July 25, 2011) ("*Huck*"); *see Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 178 (2000) (". . . unlawfully withheld wages are property of the employee within the contemplation of the UCL."). It follows then that an employee's vested property interest in wages arises once he performs work for his employer.

Here, the restitution Mr. Garrison seeks is the difference between what Oracle actually paid him for his labor and the true value of the services he performed for Oracle had Oracle not illegally suppressed the value of that labor. This is a sum that can be quantified through competent expert analysis and testimony.

Oracle cites to *In re High Tech*, 856 F. Supp. 2d at 1124 to suggest that this Court already concluded such a request is not recoverable under the UCL because it is an expectancy interest, not a vested interest. Mot. at 21:14-24. But, in *In re High-Tech*, (in the absence of any response by the plaintiffs in the *High-Tech* case to refute the defendants' claim that the plaintiffs were not entitled to restitutionary relief), the Court stated: "The Court agrees with Defendants that the salaries Plaintiffs may have been able to *negotiate* in the absence of the alleged conspiracy is an 'attenuated expectancy'—akin to 'lost business opportunity' or lost revenue—which cannot serve as the basis for restitution." *In re High-Tech*, 856 F. Supp. 2d at 1124–25 (emphasis added). Essentially, this focuses merely on the plaintiffs' mobility in seeking employment elsewhere and negotiating the fair value of their labor. This does not address the difference between what the defendants actually paid and the true value of services the plaintiffs actually provided.

Here, the salary Mr. Garrison may have been able to negotiate is not the issue. The issue is Mr. Garrison's entitlement to recover as restitution the true value of labor he already suffered for Oracle less what Oracle already paid him. Compl. (ECF No. 1) ¶ 69 ("Defendant's conduct injured Plaintiff . . . suppressing the value of managerial employees' services, thus suppressing their wages."). This is not akin to a "lost business opportunity" or simply "lost revenue." Mr. Garrison was not self-employed and he does not simply argue that he suffered a lost opportunity cost by not being hired elsewhere—he actually performed services for Oracle at illegally suppressed rates that

did not reflect the actual value of his labor. He wants to recover the difference. *Id.* at ¶ 70 ("Under California Business and Professions Code section 17203, disgorgement of Defendant's unlawful gains is necessary to prevent the use or employment of Defendant's unfair practices and restitution to Plaintiff and other class members is necessary to restore to them the money or property unfairly withheld from them.").

The true value of the labor Mr. Garrison has already suffered for Oracle is the vested interest, which is recoverable under the UCL. And, this amount can be readily determined through competent expert analysis and testimony—in a quantifiable sum—which can be recovered as restitution under the UCL. *See Huck*, 2011 U.S. Dist. LEXIS 81161 at *30.

Because Mr. Garrison has requested restitution for the value of labor he has already suffered for Oracle, which is a quantifiable sum, Oracle's motion as to Mr. Garrison's unfair competition claim should be denied on this ground.

**C.    Mr. Garrison Has Standing to Seek Injunctive and Declaratory Relief under California Business and Professions Code section 16600.**

A plaintiff has a claim under California Business and Professions Code section 16600 when a contract restrains him from engaging in a lawful profession, trade, or business of any kind. Cal. Bus. & Prof. Code § 16600. Both injunctive and declaratory relief are available as equitable remedies for violations of Section 16600.

"Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) (quoting *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir. 2000)).

Oracle argues that Mr. Garrison cannot seek injunctive or declaratory relief under Section 16600 because he is a former employee, and is accordingly not subject to the Restricted Hiring Agreement; therefore, he lacks Article III standing. Mot. at 22:8-13. But, even as a former employee, Mr. Garrison appears to be subject to the Restricted Hiring Agreement, which has not, by any indication, ceased to exist.

The Restricted Hiring Agreement between Oracle and Google (and others) states that the employers that are parties to the agreement "[w]ill not pursue manager level and above candidates for Product, Sales, or G&A roles – even if they have applied to Google." Complaint (ECF No. 1) ¶ 19. This restriction on hiring does not specify whether the restriction *only* applies to current employees or to all employees (both current and former); it only states that manager level and above candidates will not be hired. *See id.* Further support for this argument lies within the Restricted Hiring Agreement. Specifically, that agreement further states that "[a]s a general rule, we should not be recruiting staffing talent from any of our approved staffing partners." Def.'s RJN, Exhibit "1", at GOOG-HIGH-TECH-00059840. These staffing partners most likely work with current and former manager-level employees of Oracle, who would then be subject to the Restricted Hiring Agreement.

Thus, Mr. Garrison, having been a manager-level Oracle employee may very well be within the agreement's reach, whether or not he is a current employee of Oracle. Accordingly, Mr. Garrison falls within the ambit of the Restricted Hiring Agreement and still faces a real threat of irreparable injury—he has been restrained from engaging in his lawful profession, which is a violation of California Business and Professions Code section 16600.

**D.      Should Oracle Prevail as to Any of Mr. Garrison's Claims, Mr. Garrison Should Be Permitted Leave to Amend.**

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Federal policy favors determination of cases their merits. Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sonoma County Ass'n of Retired Emples. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013). Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal, but before discovery is complete, a proposed amendment is "futile" only if it is "clear . . . that the complaint could not be saved by any amendment." *Krainski v. State of Nevada ex rel. Bd. Of Regents of Nevada System of Higher Ed.*, 616 F.3d 963, 972 (9th Cir. 2010).

Here, Oracle has not explained how it would be unduly prejudiced by an amendment; and Plaintiff cannot see how it would be. And, Mr. Garrison has not engaged in bad faith of any kind. Further, any amendment would not be futile. Thus, in the event that the Court finds the claims alleged in Mr. Garrison's complaint to be insufficient, he respectfully requests leave to amend.

## VI. <u>CONCLUSION</u>

For the reasons explained above, Mr. Garrison's antitrust claims are not barred by the statute of limitations. Further, those antitrust claims are sufficiently alleged and support Mr. Garrison's unfair competition claims, which by themselves are sufficiently pled to survive Oracle's motion for judgment on the pleadings. Thus, Oracle's motion should be denied.

Alternatively, Mr. Garrison requests that this Court permit him the opportunity to allege further facts to support his claims.


Dated: January 20, 2015                                 **HOGUE & BELONG**


                                        <u>/s/ Jeffrey L. Hogue</u>
                                        JEFFREY L. HOGUE
                                        TYLER J. BELONG
                                        BRYCE A. DODDS
                                        Attorneys for Plaintiff Greg Garrison

OPPOSITION TO DEFENDANT ORACLE CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 5:14-cv-04592-LHK