1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREG GARRISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE CORPORATION,<br><br>Defendant. | Case No. 14-CV-04592-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 17 |

Plaintiff Greg Garrison ("Plaintiff") brings this putative class action against Defendant Oracle Corporation ("Oracle") for alleged violations of federal and California antitrust laws. ECF No. 1 ("Compl.").[1]  Before the Court is Oracle's Motion for Judgment on the Pleadings. ECF No. 17.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Oracle's Motion for Judgment on the Pleadings with leave to amend.  The case management conference scheduled for April 23, 2015, at 1:30 p.m. remains as set.

---

[1] Unless otherwise indicated, all ECF references are from the docket of No. 14-04592 in the Northern District of California.

# I.      BACKGROUND

## A.  Factual Background

### 1.  The Parties

Plaintiff is a former employee of Oracle.  Compl. ¶ 14.  Plaintiff worked for Oracle as a senior account manager from approximately December 2008 to June 2009.  *Id.* ¶¶ 14, 23.  In that capacity, Plaintiff managed regional sales of Oracle's Crystal Ball software, a spreadsheet-based software used for predictive modeling, forecasting, simulation, and optimization across various business industries.  *Id.* ¶ 23.

Oracle, a Delaware corporation with its principal place of business in Redwood Shores, California, is a multinational computer technology corporation.  Compl. ¶¶ 15-16.  The world's second-largest software producer by revenue, Oracle specializes in developing and marketing computer hardware systems and enterprise software products, including its own brands of database management systems.  *Id.* ¶ 16.

### 2.  *In re High-Tech Employee Antitrust Litigation*

Plaintiff alleges here that Oracle conspired with Google Inc. ("Google") to enter into a "Restricted Hiring Agreement" (the "Agreement").  Compl. ¶ 19.  There appears to be significant factual overlap between Plaintiff's allegations and the related action *In re High-Tech Employee Antitrust Litigation* ("*High-Tech*"), No. 11-02509.  *See id.* ¶¶ 25-27 (discussing the alleged *High-Tech* conspiracy).  As the factual and procedural history of *High-Tech*, as well as the U.S. Department of Justice's ("DOJ") investigations and complaints, are relevant to this action, the Court briefly summarizes the background of that litigation below.

From 2009 to 2010, DOJ's Antitrust Division investigated the employment and recruitment practices of various Silicon Valley technology companies, including Adobe Systems, Inc. ("Adobe"), Apple Inc. ("Apple"), Intel Corp. ("Intel"), Intuit Inc. ("Intuit"), and Google.  *See In re High-Tech Emp. Litig.*, 856 F. Supp. 2d 1103, 1109 (N.D. Cal. 2012).  In September 2010, DOJ filed civil complaints against the above-mentioned technology companies, in addition to Pixar and Lucasfilm Ltd. ("Lucasfilm").  *Id.*  DOJ filed its complaint against Adobe, Apple,

1   Google, Intel, Intuit, and Pixar on September 24, 2010.  *Id.*  On December 21, 2010, DOJ filed

2   another complaint against Pixar and Lucasfilm.  *See* No. 11-02509, ECF No. 65 ¶ 114.  All of the

3   technology company defendants stipulated to proposed final judgments in which they agreed that

4   DOJ's complaints had stated claims under federal antitrust law and agreed to be "enjoined from

5   attempting to enter into, maintaining or enforcing any agreement with any other person or in any

6   way refrain from . . . soliciting, cold calling, recruiting, or otherwise competing for employees of

7   the other person."  *High-Tech*, 856 F. Supp. 2d at 1109-10.  The D.C. District Court entered the

8   stipulated proposed final judgments on March 17, 2011, and June 2, 2011, respectively.  *Id.* at

9   1110.

10      The *High-Tech* plaintiffs filed five separate state court actions between May and July 2011.

11   Following removal, transfer to San Jose to the undersigned judge, and consolidation, the *High-*

12   *Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011.  856 F. Supp. 2d

13   at 1112-13.  In their complaint, the *High-Tech* plaintiffs alleged antitrust claims against their

14   employers, claiming that the defendants had conspired "to fix and suppress employee

15   compensation and to restrict employee mobility."  *Id.* at 1108.  More specifically, the *High-Tech*

16   plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral

17   agreements."  *Id.* at 1110.  One such agreement, the "Do Not Cold Call" agreement involved one

18   company placing the names of another company's employees on a "Do Not Cold Call" list and

19   instructing its recruiters not to cold call the employees of the other company.  *Id.*  In addition to

20   the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs also alleged that Pixar and Lucasfilm

21   entered into express, written agreements (1) not to cold call each other's employees, (2) to notify

22   the other company whenever making an offer to an employee of the other company, and (3) not to

23   engage in "bidding wars."  *Id.* at 1111.

24      On May 17, 2013, the *High-Tech* plaintiffs publicly filed a number of documents in

25   support of their supplemental motion for class certification.  No. 11-02509, ECF Nos. 418, 428.

26   One of those documents was an internal Google memo describing Google's hiring protocols and

27   practices as of "1.7.2008."  No. 11-02509, ECF No. 428-10 at GOOG-HIGH-TECH-00059839.

28

United States District Court
Northern District of California

3

At one point, the Google memo refers to certain companies on the "'Restricted Hiring' list," including Microsoft, Novell, Sun Microsystems, and, as relevant here, Oracle. *Id.*

### 3. Instant Lawsuit

As indicated above, Plaintiff alleges here that starting in May 2007, Oracle and Google entered into the Agreement. Compl. ¶ 19. Pursuant to the Agreement, Oracle, Google, and other technology companies agreed to the following:

> 1) Not to pursue manager level and above candidates for Product, Sales, or [General and Administrative] roles—even if they have applied to [any of the other companies who are parties to the Restricted Hiring Agreement];
>
> 2) However, there are no restrictions to our recruiting from these companies at individual contributor levels for PSG&A; [and]
>
> 3) Additionally, there are no restrictions at any level for engineering candidates.

*Id.* (second and third alterations in original). According to Plaintiff, Oracle entered into the Agreement with "the intent and effect of fixing the compensation of the employees of participating companies at artificially low levels." *Id.* ¶ 31; *see also id.* ¶ 8 ("The intended and actual effect of the Restricted Hiring Agreement was to fix and suppress employee compensation, and to impose unlawful restrictions on employee mobility."). Other than the senior executives who "actively managed and enforced" the Agreement, "Oracle employees were not apprised and did not consent to this restriction on their mobility of employment." *Id.* ¶¶ 20-22. Accordingly, Plaintiff seeks to represent the following class of Oracle employees in this action:

> All persons who worked at any time from May 10, 2007 to the present for Oracle in the United States in any manager level or above positions for Product, Sales, or General and Administrative roles, excluding engineers.

*Id.* ¶ 34.

### B. Procedural History

In light of the relationship between the instant case and *High-Tech*, the Court briefly summarizes the relevant procedural history in *High-Tech* before turning to the instant case.

### 1. *High-Tech*

The *High-Tech* defendants removed the first state court action on May 23, 2011. No. 11-

02509, ECF No. 1.  On April 18, 2012, the Court granted in part and denied in part the *High-Tech* defendants' joint motion to dismiss and denied Lucasfilm's motion to dismiss.  No. 11-02509, ECF No. 119.  On April 5, 2013, the Court granted in part and denied in part the *High-Tech* plaintiffs' motion for class certification with leave to amend.  No. 11-02509, ECF No. 382.  The Court granted the *High-Tech* plaintiffs' supplemental motion for class certification on October 24, 2013.  No. 11-02509, ECF No. 531.  On November 13, 2013, the *High-Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class certification order.  No. 13-80223 (9th Cir.), ECF No. 1.  The Ninth Circuit denied the defendants' petition on January 14, 2014.  No. 13-80223 (9th Cir.), ECF No. 18.

In the interim, three of the *High-Tech* defendants—Intuit, Lucasfilm, and Pixar—reached an early settlement with the plaintiffs.  On September 21, 2013, the *High-Tech* plaintiffs filed a motion for preliminary approval of a proposed class action settlement as to defendants Intuit, Lucasfilm, and Pixar.  No. 11-02509, ECF No. 501.  On October 30, 2013, the Court preliminarily approved the proposed settlement with Intuit, Lucasfilm, and Pixar.  No. 11-02509, ECF No. 540.  The Court granted final approval as to that settlement on May 16, 2014.  No. 11-02509, ECF No. 915.  The Court entered a final judgment with regards to Lucasfilm, Pixar, and Intuit on June 9, 2014.  No. 11-02509, ECF No. 936.  At the request of Intuit, the Court entered an amended final judgment on June 20, 2014.  No. 11-02509, ECF No. 947.

The remaining *High-Tech* defendants—Adobe, Apple, Google, and Intel—filed individual motions for summary judgment, and joint motions for summary judgment and to strike certain expert testimony on January 9, 2014.  No. 11-02509, ECF Nos. 554 (Intel), 556 and 557 (joint motions), 560 (Adobe), 561 (Apple), 564 (Google).  The Court denied the *High-Tech* defendants' individual motions for summary judgment on March 28, 2014.  No. 11-02509, ECF No. 771.  On April 4, 2014, the Court granted in part and denied in part the *High-Tech* defendants' motion to strike, and denied the defendants' joint motion for summary judgment. No. 11-02509, ECF No. 788.

On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class

5

action settlement as to the remaining defendants.  No. 11-02509, ECF No. 920.  On August 8, 2014, the Court denied the *High-Tech* plaintiffs' motion for preliminary approval, concluding that the proposed settlement did not fall "within the range of reasonableness."  No. 11-02509, ECF No. 974 at 30.  On September 4, 2014, the *High-Tech* defendants filed a petition for a writ of mandamus with the Ninth Circuit.  No. 14-72745 (9th Cir.), ECF No. 1.  On January 13, 2015, the *High-Tech* defendants filed correspondence with the Ninth Circuit referring to a new proposed settlement agreement.  No. 14-72745 (9th Cir.), ECF No. 21.  On January 30, 2015, the defendants filed an unopposed motion to dismiss the petition, which the Ninth Circuit granted on February 2, 2015.  No. 14-72745 (9th Cir.), ECF Nos. 23, 24.

On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of class action settlement as to the remaining defendants.  No. 11-02509, ECF No. 1032.  In this second proposed class action settlement, the parties had reached a settlement amount exceeding the previously rejected settlement by approximately $90.5 million.  *Id.* at 1.  Following a fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015 settlement agreement on March 3, 2015.  No. 11-02509, ECF Nos. 1051, 1054.  A final approval hearing is scheduled for July 9, 2015.

### 2.  Instant Lawsuit

Plaintiff here filed his class action complaint on October 14, 2014.  The complaint asserts four causes of action under the following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.*; (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) California Business & Professions Code § 16600 *et seq.* ("Section 16600").  Compl. ¶¶ 49-80.  Plaintiff seeks damages, pre- and post-judgment interest, attorney's fees and expenses, and injunctive relief.  *Id.* at 14-15.

On October 22, 2014, the Court related this action to *High-Tech*.  ECF No. 6.  After initially answering the complaint on November 10, 2014, ECF No. 9, Oracle filed an amended answer on December 1, 2014, ECF No. 12.

United States District Court
Northern District of California

6

On January 5, 2015, Oracle filed the instant Motion for Judgment on the Pleadings.  ECF No. 17 ("Mot.").  Oracle also filed a request for judicial notice in connection with its motion.  ECF No. 18.  Plaintiff opposed Oracle's motion on January 20, 2015.  ECF No. 21 ("Opp.").  Plaintiff also filed a request for judicial notice in connection with its opposition.  ECF No. 22.[2]  Oracle filed its reply on January 27, 2015.  ECF No. 29 ("Reply").

## II.    LEGAL STANDARD

### A.  Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted).  Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint.  *See id.*  Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard."  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

---

[2] The Court GRANTS the parties' unopposed requests for judicial notice.  ECF Nos. 18, 22.  The Court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Oracle asks the Court to take judicial notice of certain documents filed publicly in other proceedings.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents filed in other courts).  Plaintiff asks the Court to take judicial notice of DOJ documents that are publicly available on government websites.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on a publicly available government website).

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(c) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a motion for judgment on the pleadings. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.  Leave to Amend

If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend.  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend).  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1 omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment

2 would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party

3 has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

5   Oracle offers three bases for the Court to enter judgment on the pleadings as to all of

6 Plaintiff's antitrust claims: (1) Plaintiff's claims are barred by the applicable statutes of

7 limitations; (2) Plaintiff has failed to plead injury-in-fact sufficient to establish Article III

8 standing; and (3) Plaintiff fails to adequately allege an agreement between Oracle and Google.

9 Mot. at 8-20.  Oracle also contends that Plaintiff has failed to state a UCL claim because he is

10 ineligible for restitution or disgorgement.  *Id.* at 20-22.  Lastly, Oracle argues that Plaintiff, as a

11 former Oracle employee, lacks standing to seek injunctive and declaratory relief.  *Id.* at 22-24.

12   As the Court concludes that Plaintiff's claims are time barred, the Court does not reach the

13 remainder of Oracle's arguments, except for Oracle's Article III standing argument, which the

14 Court addresses first.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998)

15 (explaining that Article III jurisdiction must be established "as a threshold matter"); *see also Vt.*

16 *Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("We first address the

17 jurisdictional question whether respondent Stevens has standing under Article III of the

18 Constitution to maintain this suit.").

19   **A. Article III Standing: Injury-in-Fact**

20   A federal court must ask whether a plaintiff satisfies the "case or controversy" requirement

21 of Article III of the U.S. Constitution.  "One element of the case-or-controversy requirement is

22 that plaintiffs must establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 133

23 S. Ct. 1138, 1146 (2013) (internal quotation marks omitted).  To establish Article III standing, a

24 plaintiff must allege: injury-in-fact that is (1) concrete and particularized, as well as actual and

25 imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a

26 favorable ruling.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  "For

27 Article III purposes, an antitrust plaintiff establishes injury-in-fact when he has suffered an injury

28

United States District Court
Northern District of California

9

which bears a causal connection to the alleged antitrust violation." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008). While Plaintiff bears the burden of establishing Article III injury-in-fact, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), at this stage he "need only show that the facts alleged, if proven, would confer standing," *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).

Oracle contends that Plaintiff "has not pled any facts demonstrating that *he* actually suffered any concrete or particularized injury caused by the alleged Restricted Hiring Agreement." Mot. at 15. In particular, Oracle argues, Plaintiff "does not allege that he ever applied to work for Google, desired to work for Google, or was even qualified for a managerial-level position at Google." *Id.* Because Plaintiff "never alleges that *he actually* faced any obstacles in mobility or that *he* applied to Google and was not considered for a job because of the alleged agreement," Oracle says "Plaintiff's allegations of injury are thus only hypothetical and conjectural and he lacks standing to pursue his antitrust claims." *Id.* at 15-16.

The Court disagrees. Oracle fails to appreciate the gravamen of Plaintiff's alleged injury: that Oracle and Google engaged in a conspiracy "to fix and suppress *the compensation* of their employees," Plaintiff included, "by way of [the] Restricted Hiring Agreement." Compl. ¶ 2 (emphasis added); *see also id.* ¶ 31 ("Oracle entered into, implemented, and policed the Restricted Hiring Agreement with the knowledge of the overall conspiracy, and did so with the intent and effect of fixing the compensation of the employees of participating companies at artificially low levels."); *id.* ¶ 32 (alleging that Plaintiff "was harmed by the Restricted Hiring Agreement" through "elimination of competition and suppression of compensation and mobility"); *id.* ¶ 52 (claiming that "Defendant's conduct injured and damaged Plaintiff . . . by suppressing compensation to levels lower than the[employees] otherwise would have received in the absence of the Restrictive Hiring Agreements"). Plaintiff, who worked for and was paid by Oracle from December 2008 to June 2009, alleges that Oracle's anticompetitive conduct artificially depressed his compensation during that period. Plaintiff, therefore, has alleged a cognizable injury for purposes of Article III. *See High-Tech*, 856 F. Supp. 2d at 1123 n.11 (explaining that "Plaintiffs

United States District Court
Northern District of California

1   meet the requirements for Article III standing" because "Plaintiffs allege that their salaries were

2   artificially reduced as a result of Defendants' alleged anticompetitive conduct and that their injury

3   can be redressed through the payment of damages should Plaintiffs establish liability").

4       As a result, the Court DENIES Oracle's Motion for Judgment on the Pleadings on grounds

5   that Plaintiff has failed to allege an Article III injury-in-fact.

6   **B. Statutes of Limitations**

7       Oracle argues that Plaintiff's claims are all time barred by the applicable statutes of

8   limitations.  Mot. at 8-13; Reply at 2-7.  For the reasons stated below, the Court agrees.

9       **1.  Four-Year Limitations Period**

10      As a threshold matter, Plaintiff does not dispute that his claims under the Sherman Act,

11  Cartwright Act, UCL, and Section 16600 are all subject to a four-year statute of limitations.  *See*

12  15 U.S.C. § 15b (Sherman Act); Cal. Bus. & Prof. Code § 16750.1 (Cartwright Act); Cal. Bus. &

13  Prof. Code § 17208 (UCL); Cal. Civ. Proc. Code § 343 (catch-all limitations statute applicable to

14  Section 16600); *see also Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352, at

15  *10-12 (N.D. Cal. Apr. 10, 2015) (concluding that these four statutes are all subject to a four-year

16  limitations period).  Nor does Plaintiff dispute that the applicable statutes of limitations began to

17  run in May 2007 (i.e., when Plaintiff alleges Oracle and Google entered into the Agreement); that

18  the limitations period would have ended in May 2011 absent statutory tolling during the pendency

19  of the DOJ investigation, *see* 15 U.S.C. § 16(i); or that, as a result, Plaintiff had until March 18,

20  2012, at the latest to file suit in this action.  *See* Mot. at 8.[3]

21  _____

22          [3] Federal antitrust law provides:

23          Whenever any civil or criminal proceeding is instituted by the United States to
            prevent, restrain, or punish violations of any of the antitrust laws, but not including
24          an action under section 15a of this title, the running of the statute of limitations in
            respect to every private or State right of action arising under said laws and based in
25          whole or in part on any matter complained of in said proceeding shall be suspended
            during the pendency thereof and for one year thereafter.
26
    15 U.S.C. § 16(i).  Since the parties do not dispute that this provision extended the statute of
27  limitations period to March 18, 2012, and because the outcome is the same whether the limitations
    period expired in May 2011 or March 2012, the Court assumes without deciding that the parties

28
    Case No.14-CV-04592-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

1        Rather, in hopes of avoiding the time bar, Plaintiff argues that two doctrines apply to toll

2   the statutes of limitations: (1) the "continuing violation" doctrine; and (2) fraudulent concealment.

3   Opp. at 6-13.  The Court addresses each in turn.

### 2. Continuing Violation Doctrine

5        Under the "continuing violation" doctrine, "each overt act that is part of the [antitrust]

6   violation and that injures the plaintiff . . . starts the statutory period running again, regardless of

7   the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith*

8   *Corp.*, 521 U.S. 179, 189 (1997) (internal quotation marks omitted); *see also Pace Indus. v. Three*

9   *Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the

10  plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is

11  injured.").  In the Ninth Circuit, an overt act restarts the statute of limitations in an antitrust action

12  if it: (1) is "a new and independent act that is not merely a reaffirmation of a previous act"; and (2)

13  "inflict[s] new and accumulating injury on the plaintiff." *Samsung Elecs. Co. v. Panasonic Corp.*,

14  747 F.3d 1199, 1202 (9th Cir. 2014) (internal quotation marks omitted), *cert. denied*, 135 S. Ct.

15  1157 (2015).

16       At the outset, the Court notes that Plaintiff spends only two brief paragraphs in his

17  complaint alleging a "continuing violation."  Compl. ¶¶ 43-44.  The Court notes further that these

18  two paragraphs are virtually identical to the two paragraphs in the plaintiffs' complaint in *Ryan v.*

19  *Microsoft* that the Court recently found "woefully lacking" in alleging a continuing violation.  *See*

20  2015 WL 1738352, at *13; *see also* No. 14-04634, ECF No. 1 ¶¶ 55-56 (virtually identical

21  paragraphs in the *Ryan* complaint).

22       Similarly, the Court concludes here that the bald assertion that "[Oracle's] conspiracy was

23  a continuing violation through which [Oracle] repeatedly invaded Plaintiff and Plaintiff Class'

24  interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described

25  herein" is insufficient to show a continuing violation.  Compl. ¶ 43.  A review of the specific

27  are correct.

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  factual allegations in Plaintiff's complaint reveals no alleged wrongful communications or specific

2  conduct during the limitations period.  Other than Plaintiff's allegation that Oracle and Google

3  entered into the Agreement in May 2007, the complaint is largely bereft of *any* dates or details

4  with regards to Oracle's specific conduct.  *See generally* Compl.  There are no allegations of any

5  new or independent actions taken by Oracle after October 14, 2010—i.e., within four years of the

6  filing date of this complaint—that caused Plaintiff any new or accumulating injury.  *See Pace*, 813

7  F.2d at 237.  This is not entirely surprising given the complaint's conspicuous absence of specific

8  factual allegations regarding Oracle's alleged conduct before, during, or after the limitations

9  period, with the exception of the allegation that Oracle entered into the Agreement in May 2007.

10     In opposition, Plaintiff relies on his allegation that Oracle communicated "by phone and e-

11  mail and through in-person meetings to further the conspiracy and the secrecy of the conspiracy."

12  Opp. at 9 (quoting Compl. ¶ 44).  The Court is not convinced.  Again, Plaintiff offers no facts

13  detailing when, where, or with whom these alleged phone calls, emails, and in-person meetings

14  took place.  Plaintiff also cites a number of cases describing what type of conduct has been found

15  to be a continuing violation.  *Id.* at 7-8 (citing *Columbia Steel Casting Co. v. Portland Gen. Elec.*

16  *Co.*, 111 F.3d 1427 (9th Cir. 1996); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th

17  Cir. 1986); *Process Specialties, Inc. v. Sematech, Inc.*, No. CIV. S-00-414FCD PAN, 2001 WL

18  36105562 (E.D. Cal. Nov. 8, 2001); *Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*, 63 F. Supp. 2d

19  1218 (E.D. Cal. 1999)).  These cases are inapposite, however, because they do not change the

20  reality that Plaintiff has simply failed to allege any facts indicating *when* the supposed continuing

21  violations took place, let alone that they took place on or after October 14, 2010.

22     At bottom, Plaintiff must allege more than a continuing violation; he must also allege an

23  overt act:

24     A continuing violation is one in which the plaintiff's interests are repeatedly
       invaded and a cause of action arises each time the plaintiff is injured.  *However,*

25     *even when a plaintiff alleges a continuing violation, an overt act by the defendant is*
       *required* to restart the statute of limitations and the statute runs from the last overt

26     act.

27  *Pace*, 813 F.2d at 237 (emphasis added).  Plaintiff's bare allegation that his interests were

28

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

1  "repeatedly invaded" is therefore insufficient as a matter of law.  Compl. ¶ 43.  Consequently, the

2  Court finds that Plaintiff has failed to plead a continuing violation—namely, that Oracle engaged

3  in a "new and independent act that is not merely a reaffirmation of a previous act," which

4  "inflict[ed] new and accumulating injury" on Plaintiff.  *Samsung*, 747 F.3d at 1202; *see also Ryan*,

5  2015 WL 1738352, at *13-14 (finding nearly identical allegations insufficient to plead a

6  continuing violation); *In re Animation Workers Antitrust Litig.*, — F.3d —, 2015 WL 1522368, at

7  *12 (N.D. Cal. Apr. 3, 2015) (holding that the plaintiffs had failed to plead a continuing violation

8  because "Plaintiffs do not allege that any Defendant abided by, attempted to enforce, or otherwise

9  'reaffirmed' the anti-solicitation scheme or salary range setting on or after September 8, 2010, i.e.,

10  four years prior to the first-filed complaint in this consolidated action").

11        **3.  Fraudulent Concealment**

12        "A statute of limitations may be tolled if the defendant fraudulently concealed the

13  existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did

14  not know of its existence."  *Hexcel Corp. v. Ienos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir.

15  2012).  The plaintiff bears the burden of pleading and proving fraudulent concealment.  *Id.*; *see*

16  *also Conmar v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).  To plead

17  fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to

18  mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts

19  giving rise to [his] claim" as a result of the defendant's affirmative acts; and (3) the plaintiff acted

20  diligently in trying to uncover the facts giving rise to his claim.  *Hexcel*, 681 F.3d at 1060.

21  Moreover, allegations of fraudulent concealment must be pled with particularity.  *Conmar*, 858

22  F.2d at 502.

23        To start, Plaintiff says he need not plead affirmative acts of concealment because Oracle

24  had a "duty to disclose" its participation in the alleged anticompetitive conspiracy to Plaintiff.

25  Opp. at 12.  In the Ninth Circuit, "[p]assive concealment of information is not enough to toll the

26  statute of limitations, unless the defendant had a fiduciary duty to disclose information to the

27  plaintiff."  *Conmar*, 858 F.2d at 505 (citation omitted).  Plaintiff relies on a single case for the

28

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1    proposition that Oracle owed Plaintiff, and all of Oracle's employees, a fiduciary duty.  Opp. at 12

2    (citing *Harris v. Duty Free Shoppers Ltd. P'ship*, 940 F.2d 1272, 1276 (9th Cir. 1991)).  *Harris*,

3    however, is inapposite.  Indeed, the Ninth Circuit in *Harris* held that tour guides did *not* owe

4    fiduciary duties to tourists under California law.  *Id.* at 1275.  Furthermore, as a general matter, the

5    fact of an employer-employee relationship alone is insufficient to create a fiduciary relationship.

6    *See, e.g.*, *Salsgiver v. Am. Online, Inc.*, 32 F. App'x 894, 897 (9th Cir. 2002) (citing *O'Dell v.*

7    *Freightliner Corp.*, 10 Cal. App. 4th 645, 659 (1992)) ("[T]here is generally no fiduciary

8    relationship between employee and employer.").  Plaintiff offers no other argument or authority

9    for the proposition that Oracle owes a fiduciary duty to Plaintiff, much less to all of Oracle's

10   employees.  As Plaintiff has provided no basis for the Court to conclude that Oracle owed Plaintiff

11   a fiduciary duty, the Court concludes that Oracle had no obligation to affirmatively disclose its

12   alleged illicit conduct.

13          Additionally, having reviewed Plaintiff's complaint, the Court finds that Plaintiff's

14   allegations with respect to Oracle's alleged fraudulent concealment of Plaintiff's claims fail to

15   pass muster under Rule 9(b).  To satisfy the heightened standard under Rule 9(b), Plaintiff must

16   allege "an account of the time, place, and specific content of the false representations as well as

17   the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764

18   (9th Cir. 2007) (internal quotation marks omitted).  However, Plaintiff fails to allege sufficient

19   facts showing the "who, what, where, when, and how" of Oracle's alleged fraudulent concealment.

20   For instance, Plaintiff alleges that Oracle "provided pretextual, incomplete, or materially false and

21   misleading explanations for hiring, recruiting, and compensation decisions made under the

22   conspiracy."  Compl. ¶ 46.  Plaintiff does not allege when, where, or to whom Oracle allegedly

23   provided these false and misleading explanations, or the content of these allegedly misleading

24   explanations.  This conclusory allegation devoid of factual content does not satisfy Rule 12(b)(6)'s

25   pleading standard, much less Rule 9(b)'s heightened pleading standard.  *See Animation Workers*,

26   2015 WL 1522368, at *16 (finding a verbatim allegation insufficient to support a claim of

27   fraudulent concealment under Rule 9(b)).

28

United States District Court
Northern District of California

15

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

1    The only allegation with any detail—also, the only allegation differentiating this portion of

2    Plaintiff's complaint from the virtually identical complaint the Court has already dismissed against

3    Microsoft in *Ryan*, *see* No. 14-04634, ECF No. 1 ¶¶ 57-61—involves former Oracle CEO, Larry

4    Ellison ("Ellison"), and current Oracle CEO, Safra Catz ("Catz").  According to Plaintiff, "during

5    meetings concerning the acquisition of new employees," Ellison and Catz "personally ensured that

6    the division of Oracle engaging in the employee acquisitions was not hiring employees from

7    companies who were co-participants in the Restrictive Hiring Agreement."  Compl. ¶ 46.

8    Critically, however, Plaintiff makes no allegation as to when any of these supposed "meetings"

9    took place.  Nor is there any allegation regarding what was said at those meetings, let alone that

10   what was said was in any way misleading to Plaintiff, as is required to plead fraudulent

11   concealment.  *See Conmar*, 858 F.2d at 505.  If anything, the complaint suggests the opposite—to

12   wit, that Ellison and Catz told the truth about the alleged conspiracy by "personally ensur[ing]"

13   that Oracle "was *not* hiring employees from companies" that were party to the Agreement.

14   Compl. ¶ 46 (emphasis added).

15      Even if Plaintiff's allegation with respect to Ellison and Catz was sufficient under Rule

16   9(b), which it isn't, Plaintiff has still failed to plead an "affirmative act" of concealment.  Indeed,

17   the Court does not even understand what Plaintiff is alleging when he says in the very next

18   sentence, "In order to keep the Restrictive Hiring Agreement secretive, Oracle's officers refrained

19   from delegating such tasks."  Compl. ¶ 46.  To what "tasks" is Plaintiff referring?  Who are

20   "Oracle's officers"?  As the Ninth Circuit explained in *Conmar*, the fact that a defendant's acts are

21   "by nature self-concealing" is insufficient to show that the defendant has affirmatively misled the

22   plaintiff as to the existence of the plaintiff's claim.  *See* 858 F.2d at 505; *see also* Phillip E. Areeda

23   & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*

24   ¶ 320e (2014) ("Of course, regarding every secret conspiracy as sufficiently self-concealing to toll

25   the statute would often force the courts to deal with stale, if not ancient, evidence.").  The same is

26   true here.

27      In the absence of any factual allegations regarding Oracle's alleged wrongful conduct in

28

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

1   affirmatively concealing the existence of Plaintiff's claims, the Court concludes that Plaintiff has

2   failed to adequately allege an essential element of fraudulent concealment.  *See Hexcel*, 681 F.3d

3   at 1060.  As such, the Court finds that Plaintiff has failed to plead fraudulent concealment.

### 4.   Conclusion

5   In sum, the Court finds that all of Plaintiff's antitrust claims are time barred, and that

6   Plaintiff has failed to adequately allege a plausible tolling theory.  Accordingly, the Court

7   GRANTS Oracle's Motion for Judgment on the Pleadings.  The Court does so with leave to

8   amend because the Court concludes that amendment would not necessarily be futile, as Plaintiff

9   may be able to allege sufficient facts to support his tolling theories.  *See Lopez*, 203 F.3d at 1127

10   (holding that "a district court should grant leave to amend . . . unless it determines that the

11   pleading could not possibly be cured by the allegation of other facts" (internal quotation marks

12   omitted)).

## IV.   CONCLUSION

14   For the foregoing reasons, the Court rules as follows:

15   - The Court hereby DENIES Oracle's Motion for Judgment on the Pleadings on grounds

16     that Plaintiff has failed to allege an Article III injury-in-fact; and

17   - The Court hereby GRANTS Oracle's Motion for Judgment on the Pleadings with leave

18     to amend on grounds that Plaintiff's claims are time barred by the applicable statutes of

19     limitations.

20   Should Plaintiff elect to file an amended complaint curing the deficiencies identified

21   herein, Plaintiff shall do so within thirty (30) days of the date of this Order.  Failure to meet the

22   thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in

23   this Order will result in a dismissal with prejudice of Plaintiff's claims.  Plaintiff may not add new

24   causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule

25   15 of the Federal Rules of Civil Procedure.

26   **IT IS SO ORDERED.**

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

1   Dated: April 22, 2015

2                                          _____
                                            LUCY H. KOH
3                                           United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.14-CV-04592-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California