UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREG GARRISON, et al., | Case No. 14-CV-04592-LHK |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE** |
| v. | |
| ORACLE CORPORATION, | Re:  Dkt. Nos. 110, 137, 138 |
| Defendant. | |

Plaintiffs Greg Garrison ("Garrison"), Deborah Van Vorst ("Van Vorst"), and Sastry Hari ("Hari") (collectively, "Plaintiffs") bring this putative class action against Defendant Oracle Corporation ("Oracle") for alleged violations of federal and California antitrust laws.  ECF No. 105 (Second Amended Complaint, or "SAC").[1]  Before the Court is Oracle's motion to dismiss. ECF No. 110.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Oracle's motion to dismiss with prejudice.

---

[1] Unless otherwise indicated, all ECF references are from the docket of No. 14-04592 in the Northern District of California.

# I.    BACKGROUND

## A.   Factual Background

### 1.   The Parties

Oracle is a Delaware corporation with its principal place of business in Redwood Shores, California.  SAC ¶ 22.  The world's second-largest software producer by revenue, Oracle specializes in developing and marketing computer hardware systems and enterprise software products, including its own brands of database management systems.  *Id.* ¶ 23.

Plaintiffs are former employees of Oracle.  *Id.* ¶¶ 16, 18, 20.  Garrison worked for Oracle as a senior account manager from "approximately December 2008 to June 2009."  *Id.* ¶¶ 16-17.  Van Vorst worked for Oracle as a sales operations manager and business analyst from "approximately 2009 to August 2012."  *Id.* ¶¶ 18-19.  Hari was a senior manager of quality assurance at Oracle from "approximately the middle of 2012 to November 2013."  *Id.* ¶¶ 20-21.

Plaintiffs seek to represent the following classes:

> All natural persons who were employed by Oracle on a salaried basis in the technical, creative, and/or research and development fields in the United States from May 10, 2007 to the present. Excluded from the Class are: retail employees, corporate officers, members of the boards of directors, and senior executives of Oracle.

> All natural persons who were employed by Oracle on a salaried basis in a manager level or above position, for product, sales, or general and administrative roles in the United States at any time from May 10, 2007 to the present.  Excluded from the Class are: retail employees[,] corporate officers, members of the boards of directors, and senior executives of Oracle.

*Id.* ¶ 64.

### 2.  *In re High-Tech Employee Antitrust Litigation*

Here, Plaintiffs allege that Oracle conspired with Google, Inc. ("Google"), Intuit Inc. ("Intuit"), Adobe Systems, Inc. ("Adobe"), International Business Machines Corp. ("IBM") and "various other technology companies," as well as with non-technology based companies and recruiting companies, to fix and suppress employee compensation.  SAC ¶¶ 2-3.  As the factual and procedural history of *In re High-Tech Employee Antitrust Litigation* ("*High-Tech*"), No. 11-CV-02509, as well as the U.S. Department of Justice's ("DOJ") investigations and complaints, are

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    relevant to this action, the Court briefly summarizes the background of that litigation below.  *See*

2    SAC ¶¶ 48, 50-53 (discussing DOJ investigation).

3          From 2009 to 2010, DOJ's Antitrust Division investigated the employment and

4    recruitment practices of various Silicon Valley technology companies, including Adobe, Apple

5    Inc. ("Apple"), Intel Corp. ("Intel"), Intuit, and Google.  *See High-Tech*, 856 F. Supp. 2d 1103,

6    1109 (N.D. Cal. 2012).  DOJ filed its complaint against Adobe, Apple, Google, Intel, Intuit, and

7    Pixar on September 24, 2010.  *Id.*  On December 21, 2010, DOJ filed another complaint against

8    Lucasfilm Ltd. ("Lucasfilm").  *See* No. 11-2509, ECF No. 93-4.  The defendants in these two

9    lawsuits stipulated to proposed final judgments in which they agreed that DOJ's complaints had

10   stated claims under federal antitrust law and agreed to be "enjoined from attempting to enter into,

11   maintaining or enforcing any agreement with any other person or in any way refrain from . . .

12   soliciting, cold calling, recruiting, or otherwise competing for employees of the other person."

13   *High-Tech*, 856 F. Supp. 2d at 1109-10 (quoting Adobe Proposed Final Judgment at 5).  The U.S.

14   District Court for the District of Columbia entered the stipulated proposed final judgments on

15   March 17, 2011, and June 2, 2011, respectively.  *Id.* at 1110.

16         Private plaintiffs filed five separate state court actions between May and July 2011.

17   Following removal, transfer to San Jose to the undersigned judge, and consolidation as *In re High*

18   *Tech Employee Antitrust Litigation*, the *High-Tech* plaintiffs filed a consolidated amended

19   complaint on September 13, 2011.  *Id.* at 1112-13.  In their complaint, the *High-Tech* plaintiffs

20   alleged antitrust claims against their employers, claiming that the defendants had conspired "to fix

21   and suppress employee compensation and to restrict employee mobility."  *Id.* at 1108.  More

22   specifically, the *High-Tech* plaintiffs alleged a conspiracy comprised of "an interconnected web of

23   express bilateral agreements."  *Id.* at 1110.  One such agreement, the "Do Not Cold Call"

24   agreement, involved one company placing the names of another company's employees on a "Do

25   Not Cold Call" list and instructing its recruiters not to cold call the employees of the other

26   company.  *Id.*  In addition to the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs alleged

27   that Pixar and Lucasfilm entered into express, written agreements (1) not to cold call each other's

28

3

1  employees; (2) to notify the other company whenever making an offer to an employee of the other

2  company; and (3) not to engage in "bidding wars." *Id.* at 1111.

3         On May 17, 2013, the *High-Tech* plaintiffs publicly filed a number of documents in

4  support of their supplemental motion for class certification.  No. 11-2509, ECF Nos. 418, 428.

5  One of those documents was an internal Google memo describing Google's hiring protocols and

6  practices as of "1.7.2008."  No. 11-2509, ECF No. 428-10 at GOOG-HIGH-TECH-00059839.  At

7  one point, the Google memo refers to certain companies on the "'Restricted Hiring' list,"

8  including Microsoft, Novell, Sun Microsystems, and, as relevant here, Oracle.  *Id.*  Although DOJ

9  began investigating Oracle with the *High-Tech* defendants in 2009, DOJ concluded its

10  investigation into Oracle without filing a lawsuit on October 29, 2014.  SAC ¶ 53.

11       **3.  Alleged Conspiracy in the Instant Lawsuit**

12         Plaintiffs allege a conspiracy among Oracle, other technology companies, the technology

13  departments of non-technology-based companies, and recruiting companies "to fix and suppress

14  employee compensation, and impose unlawful restrictions on employee mobility."  SAC ¶¶ 2-4, 9.

15  As part of this conspiracy, Oracle allegedly entered into a series of anti-solicitation "Secret

16  Agreements."  *Id.* ¶ 2.  Other than the senior executives who "actively managed and enforced" the

17  Secret Agreements, Oracle employees "were not apprised of any of these Secret Agreements and

18  did not consent to this restriction on their mobility of employment."  *Id.* ¶¶ 34, 57.

19         Plaintiffs allege three types of Secret Agreements.  First, Oracle allegedly established a "no

20  hire" list, on which Oracle placed companies that entered into a reciprocal agreement with Oracle

21  not to solicit each other's employees.  *Id.* ¶¶ 26-27.  Plaintiffs do not further define the terms of

22  the "no hire" agreements, so it is unclear whether the "no hire" agreements alleged here include all

23  of the activities alleged in *High-Tech*: (1) not to cold call each other's employees, (2) not to notify the

24  other company whenever making an offer to an employee of the other company, and (3) not to

25  engage in "bidding wars."  *See High-Tech*, 856 F. Supp. 2d at 1111.

26         Second, Plaintiffs allege that Oracle formed "gentlemen's agreements" when the CEOs of

27  "certain companies" would agree orally not to solicit one another's employees.  SAC ¶ 6.

28
Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1  According to Plaintiffs, "gentlemen's agreements" were often not added to the "no hire" list. *Id.*

2  ¶ 31. Third, Plaintiffs allege a "Restricted Hiring Agreement" between Oracle and Google. *Id.*

3  ¶ 5. The Restricted Hiring Agreement between Oracle and Google was the sole Secret Agreement

4  alleged in Garrison's original complaint. *See Garrison v. Oracle Corp.*, No. 14-CV-04592-LHK

5  2015 WL 1849517, at *2 (N.D. Cal. Apr. 22, 2015).

6      Now, the SAC specifically identifies the following Secret Agreements:

7      • In an email dated March 30, 2006, Oracle's Director of Recruiting stated that
         Oracle had a "gentleman's agreement with IBM whereby both companies would
8         not solicit each other's consultants." SAC ¶ 30; *see also id.* ¶ 44 (January 16, 2008
         email from Oracle's Director of Recruiting, who told an Oracle recruiter to stop
9         soliciting employees from IBM). The SAC does not allege the date that Oracle
         entered into the agreement with IBM.
10

11     • In May 2007, Oracle and Google entered into a Restricted Hiring Agreement: "Not
         to pursue manager level and above candidates for Product, Sales, or [General and
12        Administrative] roles—even if they have applied to [any of the other companies
         who are parties to the Restricted Hiring Agreement]." *Id.* ¶ 32 (second alteration in
13        original). A Google employee confirmed the Restricted Hiring Agreement in an
         October 9, 2007 email: "I would like to make sure there is no confusion around our
14        Restricted Hiring Rule: We are not to pursue any PSG&A [Product, Sales,
         General, and Administrative] candidate at the manager level or above from
15        Microsoft, Novell, Oracle, or Sun." *Id.* ¶ 33 (alteration in original) (emphases
         omitted).
16

17     • In a June 4, 2007 email, Oracle's Director of Recruiting memorialized an
         agreement with Deloitte: "Please get a note out to our team that no emails of this
         kind and no solicitation voicemails should be left for Deloitte candidates or to any
18        other candidates who we have no-hire agreements with." *Id.* ¶ 40.

19     • In an email dated November 30, 2007, a VP at Oracle contacted Oracle's HR
         department and stated "pls confirm that we can put Micros on a no hire list." *Id.*
20        ¶ 42. The SAC does not specify whether Micros was added to the "no hire" list.

21     • By March 19, 2009, Oracle and Adobe came to an agreement "not to directly or
         indirectly solicit employees from any company on the 'no hire' list." *Id.* ¶ 47.
22        Plaintiffs allege that Adobe was not added to the "no hire" list but had a
         "gentleman's agreement" with Oracle. *Id.* ¶ 28.

23     • On December 29, 2009, Oracle added CoreTech, Inc. ("CoreTech") to the "no hire"
         list. *Id.* ¶ 49. Plaintiffs allege that CoreTech's inclusion on the "no hire" list was
24        scheduled to end on September 4, 2012. *Id.*

25     • At unspecified dates, Oracle added Texas Instruments, Honeywell, Novell, and
         Novartis to the "no hire" list. *Id.* ¶ 27.
26

27     • At an unspecified date, Oracle and recruiting company Riviera Partners agreed that
         Riviera Partners would "not perform job placement services for Oracle employees."

28

United States District Court
Northern District of California

5

1   *Id.* ¶ 55.  This agreement was in place at least in 2014, when Riviera Partners told a
2   former Senior Director at Oracle that Riviera Partners could not place the former
    Oracle employee due to Riviera Partners's agreement with Oracle.  *Id.*

3   • At an unspecified date, Oracle added Intuit to the "no hire" list.  *Id.* ¶ 27.  In an
4     undated email, an Intuit recruiting employee expressed concern about hiring a
      consultant, asking "can we make an offer to him after he signs on as a consultant
5     and not be in violation of non-solicitation clauses from Oracle (where he is
      employed)?"  *Id.* ¶ 29 (emphases omitted).

6   • Hewlett-Packard and Xerox were "part of the conspiracy at some time from 2007
7     through 2015."  *Id.* ¶ 75.  Plaintiffs do not allege when Oracle entered into an
      agreement with either Hewlett-Packard or Xerox, or the content of any such
      agreements.

8      Altogether, Plaintiffs identify around 15 companies with which Oracle allegedly entered

9   into a Secret Agreement.  Plaintiffs further point to "scores and scores" and a "plethora" of other

10  companies with Secret Agreements with Oracle.  *Id.* ¶¶ 7, 27.  Plaintiffs do not identify these

11  companies, or the content or date of these companies' Secret Agreements with Oracle.  Plaintiffs

12  allege that "Oracle continued to enter into new Secret Agreements with companies" and to ratify

13  the Secret Agreements "well into 2012."  *Id.* ¶ 49.  However, the last year that Plaintiffs allege that

14  Oracle entered into a specific Secret Agreement is 2009.  *See generally* SAC.

15     Plaintiffs additionally allege that Oracle ensured that its employees and other companies

16  adhered to the "no hire" list.  For example, internally, Oracle disseminated the "no hire" list to

17  "key human resource and recruiting personnel" in June 2007.  *Id.* ¶ 31; *see also id.* ¶ 41 (June 8,

18  2007 email from Oracle's Director of Recruiting to the "recruiting team," stating, "While we have

19  no written policy concerning non-solicitation of our partners' employees; our policy is and

20  continues to be that **we do not directly solicit from our partners.** . . . Our partners have the same

21  arrangement with Oracle").  Externally, Oracle could allegedly fine other companies for violating

22  a Secret Agreement.  *Id.* ¶¶ 35-36.  Additionally, Oracle allegedly threatened companies with

23  baseless lawsuits "as a means to punish them for breaching the Secret Agreement."  *Id.* ¶¶ 37-39.

24     According to Plaintiffs, the effect of the Secret Agreements was to depress the salaries of

25  "all employees of participating companies."  *Id.* ¶ 60.  In a restricted hiring market, Oracle and the

26  other companies with Secret Agreements faced decreased pressure to match or better a rival's

27  employment offer to an employee.  *Id.*  Thus, the Secret Agreements "fix[ed] the compensation of

28

6

United States District Court
Northern District of California

the employees of participating companies at artificially low levels." *Id.* ¶ 61.  Moreover, depressing the wages of "top tier employees" also allegedly suppressed the wages of all employees underneath the top tier employees.  *Id.* ¶ 60.

### 4.  Statute of Limitations Allegations

The SAC adds a new section titled "Statute of Limitations," which alleges that Plaintiffs' claims were timely filed for two reasons:  (1) Oracle's conspiracy was a continuing violation of the antitrust laws until at least 2013; and (2) Oracle fraudulently concealed the conspiracy from Plaintiffs until 2013.  Plaintiffs' specific allegations as to each theory follow.

#### a.  Continuing Violation

Plaintiffs allege that "Oracle's conspiracy was a continuing violation through which Oracle repeatedly invaded Plaintiffs' and Plaintiff Class' interests by adhering to, enforcing, and reaffirming the anticompetitive" Secret Agreements.  SAC ¶ 73.  First, Plaintiffs allege that "Oracle continued to enter into new Secret Agreements with companies . . . well into 2012." *Id.* ¶ 49.  Second, Plaintiffs allege that, during their collective employment with Oracle from 2009 to 2013, neither Plaintiff Van Vorst nor Plaintiff Hari was solicited by any technology company with which Oracle had a Secret Agreement.  *Id.* ¶¶ 18, 20, 77, 80.  Third, all Plaintiffs were unable to find employment in the technology industry after leaving Oracle, allegedly due to the Secret Agreements.  *Id.* ¶¶ 74-81.  Plaintiff Van Vorst specifically alleges that, during the end of her employment with Oracle, she applied to "technology companies, including those with which Oracle had entered a Secret Agreement," and was not hired by said companies.  *Id.* ¶ 78.

#### b.  Fraudulent Concealment

Plaintiffs allege that Oracle fraudulently concealed the conspiracy in two ways, which prevented Plaintiffs from filing their claims on time.  First, Plaintiffs allege that Oracle affirmatively aimed "to avoid dissemination of the [S]ecret [A]greements and restrict the knowledge to the smallest possible group within Oracle."  *Id.* ¶ 101; *see also id.* ¶ 109 (knowledge of the Secret Agreements was allegedly "confined to only the most senior executives and the most senior employees from its human resources and recruiting departments").  As "representative" of

7

1    this corporate policy, Plaintiffs highlight a January 17, 2008 email by Oracle's Director of

2    Recruiting telling an Oracle recruiter, "DO NOT email any employees of our partners or

3    employees on our no-hire list—period." *Id.* ¶ 98, 101.  Plaintiffs also point to a February 12, 2008

4    email by an Oracle employee to "the HR department" allegedly "attaching a 'No Hire' list, and

5    directing them to not forward, but to call if they have any questions." *Id.* ¶ 100.  Additionally,

6    Plaintiffs allege that Oracle required DOJ to redact any publicly filed or disclosed documents that

7    Oracle produced during the DOJ investigation, "so as not to publicly reveal the substance of the

8    Secret Agreements and the specific companies involved." *Id.* ¶ 104.  Because of Oracle's active

9    concealment of the Secret Agreements, Plaintiffs allegedly received notice of the Secret

10   Agreements only when certain documents were unsealed during the *High-Tech* litigation on May

11   17, 2013.  *Id.* ¶¶ 105-106.

12       Second, Plaintiffs allege that Oracle misled Plaintiffs into believing their compensation

13   was competitive.  Plaintiff Garrison alleges that "an Oracle human resource employee" falsely

14   informed Garrison that "Oracle's commission structure was competitive with other technology

15   companies." *Id.* ¶ 90.  Plaintiff Hari alleges that he was "directed by a senior executive to inform

16   his team of subordinates that their compensation levels at Oracle were highly competitive and that

17   they should be very pleased with the level of compensation Oracle offered." *Id.*  According to

18   Plaintiff Hari, the statement was false because Oracle was actively suppressing compensation

19   levels by way of the Secret Agreements.  *Id.*  Further, Plaintiffs allege that "Class members

20   repeatedly asked Oracle about how compensation was determined," but Oracle responded

21   misleadingly that compensation was "competitive." *Id.* ¶ 97.  According to Plaintiffs, in these

22   conversations about compensation Oracle "never once admitted that it had any agreements with

23   any other company not to solicit one another's employees." *Id.* ¶ 103.

24       In addition to these alleged misrepresentations, Plaintiffs claim that Oracle's public filings

25   with the Securities and Exchange Commission ("SEC") have been misleading.  *Id.* ¶¶ 92-94.  For

26   example, Oracle's 2008 filing stated "We may be unable to hire enough qualified employees or we

27   may lose key employees. . . . In the software industry, there is substantial and continuous

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    competition for highly skilled business, product development, technical and other personnel. . . .

2    We may also experience increased compensation costs that are not offset by either improved

3    productivity or higher prices." *Id.* ¶ 93 (emphases omitted).  Plaintiffs aver that Oracle made

4    substantially identical statements in Oracle's 10-K SEC filings from 2010 to 2013.  *Id.* ¶ 94.

5    Plaintiffs also highlight Oracle's employee handbook, which from 2008 to 2014 stated, "Oracle

6    commits rigorously to observing applicable antitrust or competition laws of all countries or

7    organizations." *Id.* ¶¶ 85-87.

8    **B.  Procedural History**

9         In light of the relationship between the instant case and *High-Tech*, the Court briefly

10   summarizes the relevant procedural history in *High-Tech* before turning to the instant case.

11        **1.  *High-Tech***

12        The *High-Tech* defendants removed the first state court action on May 23, 2011.  No. 11-

13   2509, ECF No. 1.  The last state court action in the *High-Tech* litigation was removed on July 19,

14   2011.  No. 11-2509, ECF No. 41.  The *High-Tech* cases were reassigned to the undersigned judge

15   on August 5, 2011.  No. 11-2509, ECF No. 60.  The *High-Tech* cases were consolidated on

16   September 12, 2011.  No. 11-2509, ECF No. 64.  The First Consolidated Amended Complaint was

17   filed on September 13, 2011.  No. 11-2509, ECF No. 65.  On April 18, 2012, the Court granted in

18   part and denied in part the *High-Tech* defendants' joint motion to dismiss and denied Lucasfilm's

19   motion to dismiss.  No. 11-2509, ECF No. 119.  On April 5, 2013, the Court granted in part and

20   denied in part the *High-Tech* plaintiffs' motion for class certification with leave to amend.  No. 11-

21   2509, ECF No. 382.  The Court granted the *High-Tech* plaintiffs' supplemental motion for class

22   certification on October 24, 2013.  No. 11-2509, ECF No. 531.  On November 13, 2013, the *High-

23   Tech* defendants filed a Rule 23(f) petition before the Ninth Circuit, requesting permission to

24   appeal this Court's October 24, 2013 class certification order.  No. 13-80223 (9th Cir.), ECF No.

25   1.  The Ninth Circuit denied the defendants' petition on January 14, 2014.  No. 13-80223 (9th

26   Cir.), ECF No. 18.

27        In the interim, three of the *High-Tech* defendants—Intuit, Lucasfilm, and Pixar—reached

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    an early settlement with the plaintiffs.  On September 21, 2013, the *High-Tech* plaintiffs filed a

2    motion for preliminary approval of a proposed class action settlement as to defendants Intuit,

3    Lucasfilm, and Pixar.  No. 11-2509, ECF No. 501.  On October 30, 2013, the Court granted

4    preliminary approval.  No. 11-2509, ECF No. 540.  The Court granted final approval as to that

5    settlement on May 16, 2014.  No. 11-2509, ECF No. 915.  The Court entered a final judgment

6    with regards to Lucasfilm, Pixar, and Intuit on June 9, 2014.  No. 11-2509, ECF No. 936.  At the

7    request of Intuit, the Court entered an amended final judgment on June 20, 2014.  No. 11-2509,

8    ECF No. 947.

9        The remaining *High-Tech* defendants—Adobe, Apple, Google, and Intel—filed individual

10   motions for summary judgment, and joint motions for summary judgment and to strike certain

11   expert testimony on January 9, 2014.  No. 11-2509, ECF Nos. 554 (Intel), 556 and 557 (joint

12   motions), 560 (Adobe), 561 (Apple), 564 (Google).  The Court denied the *High-Tech* defendants'

13   individual motions for summary judgment on March 28, 2014.  No. 11-2509, ECF No. 771.  On

14   April 4, 2014, the Court granted in part and denied in part the *High-Tech* defendants' motion to

15   strike, and denied the defendants' joint motion for summary judgment.  No. 11-2509, ECF No.

16   788.

17       On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class

18   action settlement as to the remaining defendants.  No. 11-2509, ECF No. 920.  On August 8, 2014,

19   the Court denied the *High-Tech* plaintiffs' motion for preliminary approval and concluded that the

20   proposed settlement did not fall "within the range of reasonableness."  No. 11-2509, ECF No. 974

21   at 30.  On September 4, 2014, the *High-Tech* defendants filed a petition for a writ of mandamus

22   with the Ninth Circuit.  No. 14-72745 (9th Cir.), ECF No. 1.  On September 22, 2014, the Ninth

23   Circuit found that the petition "raises issues that warrant a response," and ordered briefing.  No.

24   14-72745 (9th Cir.), ECF No. 2.  On January 13, 2015, the *High-Tech* defendants filed

25   correspondence with the Ninth Circuit referring to a new proposed settlement agreement.  No. 14-

26   72745 (9th Cir.), ECF No. 21.  On January 30, 2015, the defendants filed an unopposed motion to

27   dismiss the petition, which the Ninth Circuit granted on February 2, 2015.  No. 14-72745 (9th

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  Cir.), ECF Nos. 23, 24.

2  On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of

3  class action settlement as to the remaining defendants.  No. 11-2509, ECF No. 1032.  In this

4  second proposed class action settlement, the parties had reached a settlement amount exceeding

5  the previously rejected settlement by approximately $90.5 million.  *Id.* at 1.  Following a fairness

6  hearing on March 2, 2015, the Court granted preliminary approval to the January 2015 settlement

7  agreement on March 3, 2015.  No. 11-2509, ECF Nos. 1051, 1054.  The Court held a final

8  approval hearing on July 9, 2015.  No. 11-2509, ECF No. 1096.  Plaintiffs' counsel completed

9  their supplemental briefing on attorney's fees and potential opt outs on July 24, 2015.  ECF Nos.

10  1108, 1109.  On September 2, 2015, the Court granted final approval of the class action settlement

11  and entered final judgment with regard to Adobe, Apple, Google, and Intuit.  No. 11-2509, ECF

12  Nos. 1111, 1113.

13  **2.  Instant Lawsuit**

14  Plaintiff Garrison filed the class action complaint on October 14, 2014.  ECF No. 1.  On

15  October 22, 2014, the Court related this action to *High-Tech*.  ECF No. 6.  After initially

16  answering the complaint on November 10, 2014, ECF No. 9, Oracle filed an amended answer on

17  December 1, 2014, ECF No. 12.

18  On January 5, 2015, Oracle filed a motion for judgment on the pleadings, ECF No. 17,

19  which the Court granted on April 22, 2015, ECF No. 72.  The Court found that Garrison's claims

20  were time barred under the applicable statutes of limitations, and that Garrison had failed to

21  adequately plead a "continuing violation" or "fraudulent concealment" theory to toll the statutes of

22  limitations.  *See Garrison*, 2015 WL 1849517, at *9.  The dismissal was without prejudice, as the

23  Court determined that Garrison might be able to allege sufficient facts to support his continuing

24  violation or fraudulent concealment theories.  *Id.*

25  On May 22, 2015, Garrison filed an amended complaint.  ECF Nos. 98 (conditionally

26  sealed); 102 (unredacted).  After the Court approved a stipulation for Garrison to file a second

27  amended complaint, ECF No. 104, Garrison, along with additional plaintiffs Van Vorst and Hari,

28  

United States District Court
Northern District of California

11

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1   filed the SAC on June 5, 2015, ECF No. 105.  The SAC asserts causes of action under the

2   following statutes: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright

3   Act (the "Cartwright Act"), Cal. Bus. & Prof. Code § 16720 *et seq.*; (3) California's Unfair

4   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) California's Business

5   & Professions Code § 16600 *et seq.* ("Section 16600").  SAC ¶¶ 111-142.  Plaintiffs seek

6   damages, pre- and post-judgment interest, attorneys' fees and expenses, and a permanent

7   injunction.  *Id.* at 29.

8         Oracle filed the instant motion to dismiss on June 25, 2015.  ECF No. 110 ("Mot.").

9   Oracle renews the argument that Plaintiffs' claims are untimely, and also moves to dismiss for

10  failure to state a claim on the merits.  *See id.*  Oracle also filed a request for judicial notice.  ECF

11  No. 111.  On July 15, 2015, the Court granted a stipulation to strike one paragraph of the SAC.

12  ECF No. 113.  On July 22, 2015, Plaintiffs opposed the motion to dismiss, ECF No. 114 ("Opp."),

13  and filed a request for judicial notice, ECF No. 114-1.  Oracle replied on August 13, 2015.  ECF

14  No. 125 ("Reply").  On December 4, 2015, Plaintiffs filed an ex parte motion to supplement the

15  record and to stay proceedings pending Plaintiffs' anticipated motion to compel compliance with a

16  subpoena.  ECF No. 138.  Plaintiffs also filed a motion to seal materials associated with the

17  motion to supplement the record.  ECF No. 137.  Although Oracle was not served with the ex

18  parte motion, Oracle filed an opposition on December 7, 2015.  ECF No. 139.  As of the date of

19  this order, Plaintiffs have not filed the anticipated motion to compel.

20        On December 17, 2015, the Court ordered the parties to file supplemental briefing.  ECF

21  No. 144.  The Court noted that the parties, in the original briefing, did not dispute that Plaintiffs'

22  claims accrued under the default accrual rules by 2009, at the latest, and thus that Plaintiffs' claims

23  were untimely absent an exception to the default accrual rules or a tolling doctrine.  *Id.*  The Court

24  asked the parties to address whether Plaintiff Hari's employment at Oracle impacts the statutes of

25  limitations analysis.  *Id.*  On January 5, 2016, the parties filed simultaneous briefs in response to

26  the Court's order.  ECF Nos. 148 (Oracle's supplemental brief); 149 (Plaintiffs' supplemental

27  brief).  Plaintiffs filed an administrative motion to file Plaintiffs' supplemental brief and

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   associated documents under seal.  ECF No. 150.  On January 15, 2016, the parties filed

2   simultaneous reply briefs.  ECF Nos. 153 (Oracle's reply); 155 (Plaintiffs' reply).

3   **II.      LEGAL STANDARD**

4       **A.  Rule 12(b)(6)**

5           Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

6   short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

7   that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

8   plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

9   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

12  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

13  defendant has acted unlawfully."  *Id.*

14          For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

15  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

16  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

17  Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see*

18  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's

19  complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion

20  for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the

21  Court "assume the truth of legal conclusions merely because they are cast in the form of factual

22  allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

23  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

24  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

25      **B.  Rule 9(b)**

26          Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

27  Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "must state with

28

United States District Court
Northern District of California

13

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford*

2    *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule

3    9(b), the allegations must be "specific enough to give defendants notice of the particular

4    misconduct which is alleged to constitute the fraud charged so that they can defend against the

5    charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

6    727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time,

7    place, and specific content of the false representations as well as the identities of the parties to the

8    misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

9    (citation omitted).  "A plaintiff must set forth what is false or misleading about a statement, and

10   why it is false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc),

11   *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir.

12   2011).  However, "intent, knowledge, and other conditions of a person's mind" need not be stated

13   with particularity, and "may be alleged generally."  Fed. R. Civ. P. 9(b).

14       **C.  Leave to Amend**

15       If the court concludes that the complaint should be dismissed, it must then decide whether

16   to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

17   amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

18   of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

19   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

20   Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith

21   or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

22   previously allowed, undue prejudice to the opposing party by virtue of allowance of the

23   amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

24   522, 532 (9th Cir. 2008).

25   **III.    DISCUSSION**

26       Oracle moves to dismiss Plaintiffs' complaint on four grounds: (1) all of Plaintiffs' claims

27   are barred by the applicable statute of limitations; (2) Plaintiffs fail to state a Sherman Act claim

14

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   because Plaintiffs fail to adequately allege an agreement between Oracle and Google or a

2   conspiracy among Oracle and other companies; (3) Plaintiffs are ineligible for restitution or

3   disgorgement under the UCL; and (4) Plaintiffs, as former Oracle employees, lack standing to seek

4   injunctive and declaratory relief.  Mot. at 7-25.  As the Court concludes below that Plaintiffs'

5   claims are time barred, the Court need not reach the remainder of Oracle's arguments.

6        As a preliminary matter, the Court addresses the parties' requests for judicial notice and

7   Plaintiffs' ex parte motion to supplement the record and to stay the ruling.  The Court then turns to

8   the statutes of limitations applicable to Plaintiffs' claims.  Next, the Court considers Plaintiffs'

9   arguments that an exception to the default accrual rules or a tolling doctrine renders Plaintiffs'

10  claims timely.

11  **A. Motions for Judicial Notice, to Supplement the Record, and to Stay the Ruling**

12       **1. Judicial Notice**

13       Although a district court generally may not consider any material beyond the pleadings in

14  ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in

15  the complaint, as well as matters in the public record, without converting a motion to dismiss into

16  one for summary judgment.  *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001),

17  *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir.

18  2002).  In addition, the Court may take judicial notice of matters that are either "generally known

19  within the trial court's territorial jurisdiction" or "can be accurately and readily determined from

20  sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

21       Oracle requests that the Court take judicial notice of documents incorporated by reference

22  into the SAC, including emails quoted or relied upon in SAC ¶¶ 29, 33, 36, 40, 45, 47, 49, 98-100;

23  Oracle documents quoted or relied upon in SAC ¶¶ 84-110; and deposition testimony relied upon

24  in SAC ¶ 54.  Oracle also requests judicial notice of matters of public record (complaints and final

25  judgments in federal district courts), and a newspaper article.  Plaintiffs request the Court take

26  judicial notice of certain matters of public record (an official government document in a DOJ file,

27  and complaints and final judgments in federal district courts).  These documents are appropriate

28

15

1   for judicial notice.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)

2   (materials incorporated by reference into the complaint); *Von Saher v. Norton Simon Museum of*

3   *Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) (the fact that information was published in

4   news articles); *Lee*, 250 F.3d at 689-90 (matters of public record).  Accordingly, the Court

5   GRANTS the parties' unopposed requests for judicial notice.  *See* ECF Nos. 111, 114-1.

### 2.  Plaintiffs' Ex Parte Motion to Supplement the Record and to Stay the Ruling

7   On Friday evening, December 4, 2015—almost four months after the completion of

8   briefing in the instant motion—Plaintiffs filed an ex parte motion to supplement the record and to

9   stay the Court's ruling on the instant motion pending an anticipated motion to compel documents

10   from the defendants and the counsel for the plaintiffs in the *High-Tech* litigation.  ECF No. 138

11   (noting the motion to compel is "set to be filed next week").  Plaintiffs seek to supplement the

12   record with numerous documents allegedly discovered after the completion of the briefing on the

13   instant motion, which Plaintiffs claim demonstrate Oracle's alleged antitrust violations and

14   fraudulent concealment.  Plaintiffs filed a corresponding motion to file the documents under seal.

15   ECF No. 137.  Although Oracle was not served with Plaintiffs' filings, and did not have access to

16   the documents that Plaintiffs filed conditionally under seal, Oracle filed an opposition on

17   December 7, 2015.  ECF No. 139.  As of the date of this order, Plaintiffs have not filed the

18   anticipated motion to compel documents from the parties involved in the *High-Tech* litigation.

19   Civil Local Rule 7-10 provides that a party may file an ex parte motion "only if a statute,

20   Federal Rule, local rule or Standing Order authorizes the filing of an ex parte motion," unless

21   otherwise ordered by the Court.  Civ. L.R. 7-10.  The Rule also provides that the ex parte motion

22   "must include a citation to the statute, rule or order which permits the use of an ex parte motion to

23   obtain the relief sought."  *Id.*  Plaintiffs' ex parte motion does not cite to any authority permitting

24   the filing of an ex parte motion.  Nor does Plaintiffs' motion provide any reason for filing ex parte.

25   Accordingly, the Court STRIKES Plaintiffs' motion.  *See* Civ. L.R. 7-10; *cf. Bertuccio v. San*

26   *Benito Cty.*, No. 13-CV-01339-LHK, 2013 WL 2147421, at *3 (N.D. Cal. May 15, 2013) ("None

27   of Plaintiffs' motions identified any authorization for her ex parte communications.  This alone

United States District Court
Northern District of California

28

16

would justify denial . . . .").  The Court DENIES as moot Plaintiffs' corresponding motion to file

under seal.[2]

Even if the Court were to consider Plaintiffs' motion, however, the Court would decline to

supplement the record or stay the instant ruling.  First, the proffered documents would not alter the

Court's statutes of limitations analysis.  The proffered documents all refer to conduct from 2006 to

2009.  However, as discussed below, Plaintiffs' claims are untimely unless Plaintiffs allege actions

by Oracle after October 14, 2010—i.e., within four years of the filing of the complaint on October

14, 2014.  Additionally, the documents do not show fraudulent concealment by Oracle.  Rather,

the documents are consistent with the fraudulent-concealment allegations and judicially-noticed

documents already in the record.  Thus, the proffered documents would not render Plaintiffs'

claims timely.

Second, on a motion to dismiss, the Court does not look beyond the pleadings to evidence

presented by the parties, and Plaintiffs do not assert that the proffered documents are proper

subjects of judicial notice.  *See Manzarek*, 519 F.3d at 1030-31 (noting that on a motion to

dismiss, the district court may "generally consider only allegations contained in the pleadings,

exhibits attached to the complaint, and matters properly subject to judicial notice").  There is

therefore no basis for the Court to consider the proffered documents.

Third, the majority of "newly discovered" documents proffered by Plaintiffs were,

according to a declaration by Oracle, produced by June 2015, a month before Plaintiffs filed their

opposition to the instant motion.  *See* ECF Nos. 140, 141.  Plaintiffs offer no reason for their

---

[2] The Court notes that Plaintiffs also apparently failed to comply with the Court's local rules when filing the motion to seal.  When seeking to file under seal a document designated as confidential by the opposing party or a non-party, Civil Local Rule 79-5(e) requires Plaintiffs to file a declaration identifying the document sought to be sealed and the designating party.  Civ. L.R. 79-5(e).  Plaintiffs did not identify non-parties Google or IBM in Plaintiffs' required declaration.  *See* ECF No. 137-1.  However, on December 9, 2015, Oracle informed the Court that Plaintiffs sought to seal documents designated as confidential by Google and IBM.  ECF No. 141.  On December 14, 2015, Google filed a declaration stating that Plaintiffs sought to seal documents designated as confidential by Google, and that Google was informed by Oracle's counsel that Plaintiffs sought to seal these documents.  ECF No. 143.  IBM has not filed a response to Plaintiffs' motion to seal, and it is not clear to the Court whether Plaintiffs informed IBM that Plaintiffs sought to file documents designated by IBM as confidential.

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    multiple-month delay in seeking to supplement the record or to stay the case to conduct further

2    discovery.  *See generally* ECF No. 138.  It appears that Plaintiffs' motion was not triggered by

3    new discovery in this case, but by the Court's November 23, 2015 dismissal of virtually identical

4    allegations brought by the same Plaintiffs' counsel against Microsoft.  *See Ryan v. Microsoft*

5    *("Ryan II")*, No. 14-CV-04634-LHK, 2015 WL 7429495, at *18-19 (N.D. Cal. Nov. 23, 2015).

6    Additionally, Plaintiffs offer no authority that discovery from a third party, sought after briefing

7    on a motion to dismiss was completed, justifies a stay of that motion.  Nor have Plaintiffs filed the

8    anticipated motion to compel that forms the basis of Plaintiffs' motion to stay, although Plaintiffs

9    have had over two months to do so.  Accordingly, Plaintiffs have not shown good cause to

10   supplement the record or to stay the instant ruling.

**B.  Four-Year Statute of Limitations**

12   Plaintiffs do not dispute that Plaintiffs' claims under the Sherman Act, Cartwright Act,

13   UCL, and Section 16600 are all subject to a four-year statute of limitations.  *See Garrison*, 2015

14   WL 1849517, at *6 (applying-four year statute of limitations) (citing 15 U.S.C. § 15b (Sherman

15   Act); Cal. Bus. & Prof. Code § 16750.1 (Cartwright Act); Cal. Bus. & Prof. Code § 17208 (UCL);

16   Cal. Civ. Proc. Code § 343 (catch-all limitations statute applicable to Section 16600); *see also*

17   *Ryan v. Microsoft Corp. ("Ryan I")*, No. 14-CV-04634-LHK, 2015 WL 1738352, at *10-12 (N.D.

18   Cal. Apr. 10, 2015) (concluding that these four statutes are each subject to a four-year limitations

19   period).  Because the original complaint was filed on October 14, 2014, *see* ECF No. 1, Plaintiffs

20   must allege either that the causes of action accrued after October 14, 2010, or that the statutes of

21   limitations were tolled until at least October 14, 2010, in order to plead timely claims.

**C.  Accrual of Plaintiffs' Claims under the Default Accrual Rules**

23   The parties agree that all of Plaintiff Garrison's and Plaintiff Van Vorst's claims accrued

24   under the default accrual rules by 2009, at the latest.  *See, e.g.*, ECF No. 148, at 1 (Oracle claiming

25   that the "statute of limitations began to run no later than 2009 and expired in 2013"); ECF No.

26   150, at 3 (Plaintiffs stating that Garrison's and Van Vorst's claims accrued when Garrison and

27   Van Vorst were injured by Oracle's alleged misconduct between 2007-2009).  Accordingly, an

28

United States District Court
Northern District of California

18

1   exception to the default accrual rules or a tolling doctrine must apply in order for Garrison's and

2   Van Vorst's claims to be timely.

3       The parties dispute when Plaintiff Hari's claims accrued under the default accrual rules,

4   and thus whether an exception to the default accrual rules or a tolling doctrine is necessary to

5   render Hari's claims timely.  In order to determine the accrual of Hari's claims under the default

6   accrual rules, the Court must first review the history of the parties' dispute over the accrual of

7   Hari's claims.

8       In briefing Oracle's motion for judgment on the pleadings, the parties did not dispute that,

9   for Garrison's federal Sherman Act claim and three California state law claims, under the default

10  accrual rules, "the applicable statutes of limitations began to run in May 2007 (i.e., when Plaintiff

11  alleges Oracle and Google entered into the Agreement)."  *Garrison v. Oracle Corp.*, No. 14-CV-

12  04592-LHK, 2015 WL 1849517, at *6 (N.D. Cal. Apr. 22, 2015).  Accordingly, the parties agreed

13  that an exception to the default accrual rules or a tolling doctrine was necessary for all of

14  Garrison's claims to be timely.  *Id.*

15      In the SAC, Plaintiffs allege new Secret Agreements, in addition to the alleged 2007

16  agreement between Oracle and Google.  The SAC also adds Hari as a named plaintiff.  ECF No.

17  105.  Highlighting the new Secret Agreements, Oracle argues in the instant motion to dismiss that,

18  according to the default accrual rules, Plaintiffs' Sherman Act and state law claims accrued by

19  2009, which is the latest date that Plaintiffs allege that Oracle entered a specific Secret Agreement.

20  Mot. at 7; Reply at 2.  Thus, according to Oracle, the statutes of limitations for all of Plaintiffs'

21  claims expired in 2013 absent an exception to the default accrual rules or a tolling doctrine.  Reply

22  at 2.

23      In Plaintiffs' opposition to the instant motion to dismiss, Plaintiffs do not dispute Oracle's

24  contention that Plaintiffs' Sherman Act and state law claims accrued in 2009, at the latest.  *See*

25  *generally* Opp.  Nor do Plaintiffs analyze when Plaintiffs' claims accrued according to the default

26  accrual rules.  Rather, Plaintiffs assert that an exception to the default accrual rules or a tolling

27  doctrine applies and thus renders Plaintiffs' claims timely.  *See id.*

28

United States District Court
Northern District of California

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    Neither party separately addressed Hari's claims in the briefing on the instant motion to

2    dismiss.  Thus, the Court requested supplemental briefing on whether Hari's employment at

3    Oracle, which began in 2012, impacts the statute of limitations analysis.  ECF No. 144.  In the

4    order requesting supplemental briefing, the Court summarized its understanding of the parties'

5    positions on the accrual of Plaintiffs' claims under the default accrual rules.  First, the Court noted

6    that the parties agreed, in the briefing for the motion for judgment on the pleadings, that the

7    federal and state statutes of limitations began to run in May 2007.  *See id.*  Next, the Court noted

8    Plaintiffs' failure to dispute Oracle's contention, in the instant motion to dismiss, that Plaintiffs'

9    Sherman Act and state law claims accrued by 2009.  *See id.*  Finally, the Court noted that the

10   parties have not disputed that Plaintiffs' claims are untimely absent an exception to the default

11   accrual rules or a tolling doctrine.  *See id.*

12   In the requested supplemental briefing, the parties do not contest the Court's understanding

13   of the parties' positions.  *See generally* ECF Nos. 148, 150, 153, 155.  However, Plaintiffs now

14   argue that Hari's claims are timely under the default accrual rules, without any exceptions to the

15   default accrual rules or tolling.  According to Plaintiffs, Hari's claims did not accrue until 2012,

16   when Hari was hired by Oracle and injured through the receipt of an artificially depressed salary

17   from Oracle.  ECF Nos. 150, 155.  Specifically, Plaintiffs state that Hari began working for Oracle

18   in 2012 when Oracle acquired the company for whom Hari worked.  *See* ECF No. 150, at 2.  As in

19   Plaintiffs' original briefing, Plaintiffs' two supplemental briefs fail to address the state law default

20   accrual rules.  Instead, Plaintiffs' supplemental briefs focus entirely on the federal default accrual

21   rule for Hari's Sherman Act claim, and cite only federal case law.  *See* ECF No. 150, at 2-3; ECF

22   No. 155.  Similarly, Oracle's two supplemental briefs focus on the accrual of Hari's Sherman Act

23   claim.  *See generally* ECF Nos. 148, 153.  Oracle argues that Hari's Sherman Act claim accrued

24   by 2009, when Oracle allegedly committed the anticompetitive conduct that depressed the labor

25   market in which Hari participated.  Oracle asserts that Hari's state law claims accrued at the same

26   time as Hari's Sherman Act claim.  *See* ECF No. 148, at 4 n.2.

27   Accordingly, in four rounds of briefing—the opposition to the motion for judgment on the

28

United States District Court
Northern District of California

20

1   pleadings, the opposition to the instant motion to dismiss, and the two supplemental briefs—

2   Plaintiffs assume that Plaintiffs' state law claims accrue at the same time as Plaintiffs' Sherman

3   Act claims.  Plaintiffs have never distinguished the accrual of Plaintiffs' state law claims from the

4   accrual of Plaintiffs' Sherman Act claim under the default accrual rules.  By contrast, Oracle has

5   repeatedly asserted that Plaintiffs' Sherman Act and state law claims accrue at the same time.  In

6   the supplemental briefing, both parties focus on the federal default accrual rule for Sherman Act

7   claims to determine the accrual of Hari's state law and Sherman Act claims.

8          Under California law, the general accrual rule is the "last element rule," where a claim

9   accrues "'when [it] is complete with all of its elements'—those elements being wrongdoing, harm,

10  and causation." *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011) (quoting *Norgart*

11  *v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).  The California Supreme Court has held that federal

12  interpretations of the Sherman Act are instructive in interpreting California's Cartwright Act.

13  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013).  Given the *Aryeh* court's

14  guidance and the parties' exclusive focus on the default accrual rule for Hari's Sherman Act claim,

15  the Court addresses Hari's Sherman Act claim to resolve when Hari's Sherman Act and California

16  law claims accrued under the default accrual rules.  *See In re Animation Workers Antitrust Litig.*

17  *("Animation Workers I")*, 87 F. Supp. 3d 1195, 1208 n.10 (N.D. Cal. 2015) (considering

18  timeliness of Sherman Act claim to resolve both Sherman and Cartwright Act statutes of

19  limitations); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-cv-03613 EJD, 2012 WL

20  2711040, at *8 (N.D. Cal. July 6, 2012) (interpreting Sherman Act and Cartwright Act claims

21  together for statutes of limitations purposes); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,

22  No. CV F 09-0560 LJO SMS, 2010 WL 3521979, at *13 (E.D. Cal. Sept. 3, 2010) (applying same

23  accrual rules to Sherman Act and Cartwright Act claims).

24         Plaintiffs contend that, under the default accrual rule for a Sherman Act claim, Hari's

25  claims accrued at the time Hari experienced injury from Oracle's anticompetitive conduct.  ECF

26  No. 150, at 2-3.  According to Plaintiffs, Hari was not injured until 2012, when Oracle paid Hari

27  an artificially depressed salary.  *Id.*  Oracle counters that Hari's claims accrued at the time of the

28
Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    anticompetitive conduct, and thus Hari's claims accrued in 2009, at the latest, when Oracle entered

2    into the last alleged Secret Agreement.  ECF No. 148, at 2-5.  Oracle also argues that Hari was

3    injured in 2009, at the latest, because Hari was in the allegedly affected labor market working at

4    another technology company that was acquired by Oracle in 2012, and thus received a depressed

5    salary prior to Hari's employment with Oracle.  *Id.*; ECF No. 150, at 4 (referring to Hari's

6    LinkedIn account to confirm Hari's previous employment).  Finally, Oracle claims that Plaintiffs

7    "have consistently alleged that they suffered an injury and their claims accrued at the time of

8    Oracle's allegedly anticompetitive conduct."  ECF No. 148, at 4.

9            The Court agrees with Oracle that Hari's Sherman Act claim accrued by 2009 under the

10   default accrual rule.  The Court finds the Ninth Circuit's recent decision in *Samsung Elecs. Co. v.*

11   *Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1157 (2015), to

12   be instructive.  In *Samsung*, Panasonic Corporation, Panasonic Corporation of North America, and

13   SD-3C, LLC (collectively, "Panasonic") allegedly entered into anticompetitive agreements in

14   2003 and 2006 to charge a royalty for certain manufacturers producing SD cards.  *Id.* at 1201.

15   When Samsung Electronics Company ("Samsung") began to manufacture SD cards in 2006,

16   Samsung paid the requested royalty to Panasonic.  *Id.* at 1202.  Samsung filed suit in 2010 and

17   alleged that Panasonic's agreements violated the Sherman Act.  *Id.*

18          Samsung was not in the SD market at the time of Panasonic's initial anticompetitive

19   agreement, and thus "the harm to Samsung challenged in this suit was speculative at the time of

20   the initial wrong."  *Id.* at 1204-05.  However, the Ninth Circuit did not find that Samsung's claim

21   accrued, under the default accrual rules, when Samsung began to pay royalties in 2006.  *See id.* at

22   1202-05.  Rather, the Ninth Circuit held that the continuing violation and speculative damages

23   exceptions to the default accrual rules were necessary to render Samsung's claims timely.  *Id.* at

24   1203-05 (noting that the 2006 agreement was a continuing violation, and that the speculative

25   damages exception applies when damages are not clear at the "time of the initial act").  Under the

26   Ninth Circuit's reasoning, Samsung's claim accrued—absent an exception to the default accrual

27   rules—at the time of Panasonic's anticompetitive conduct in 2003.  *See id.* at 1203-04.  Therefore,

28
                                                      22

1    in the Ninth Circuit, Sherman Act claims accrue under the default accrual rules at the time of the

2    alleged anticompetitive conduct.  *See id.*; *see also Pace Indus., Inc. v. Three Phoenix Co.*, 813

3    F.2d 234, 237 (9th Cir. 1987) ("A cause of action in antitrust accrues each time a plaintiff is

4    injured by an act of the defendant and the statute of limitations *runs from the commission of the*

5    *act*." (emphasis added) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338

6    (1971))); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (noting that, under the

7    Clayton Act, "the limitations period may start to run after the defendant's initial violation of the

8    antitrust law," if an exception applies).

9             The Court acknowledges that some courts, including this Court, have stated that Sherman

10    Act claims accrue "at the time of injury."  *See Animation Workers I*, 87 F. Supp. 3d at 1216; *see*

11    *also Detrick v. Panalpina, Inc.*, 108 F.3d 529, 538 (4th Cir. 1997) (noting that "under the antitrust

12    accrual rule, the statute of limitations is triggered by the date of the injury alone").  However,

13    these courts were determining whether to apply a discovery rule of accrual to the plaintiff's

14    claims.  *See Animation Workers I*, 87 F. Supp. 3d at 1208 (rejecting argument that accrual began

15    "at the time that Plaintiffs discovered, or reasonably should have discovered[,] their injuries");

16    *Detrick*, 108 F.3d at 538 (discussing the "injury discovery" rule applied by the Ninth Circuit in

17    RICO actions).  In neither case did the timeliness of the plaintiff's claims turn on whether accrual

18    began at the time of injury or the time of the alleged anticompetitive conduct, and thus the courts

19    were not presented with the arguments made by the parties in the instant case.  Additionally, this

20    Court is bound by the Ninth Circuit's decision that, absent an exception, a Sherman Act claim

21    accrues at the time of the anticompetitive conduct.  *See Samsung*, 747 F.3d at 1202-05.

22             In the instant case, Oracle's alleged anticompetitive conduct is entering into the Secret

23    Agreements.  *See* SAC ¶¶ 2-6, 113-116, 120-121, 124.  Plaintiffs allege that Oracle first entered

24    into a Secret Agreement in 2006.  *Id.* ¶ 30.  This Secret Agreement, and others later formed by

25    Oracle, allegedly depressed compensation in the labor market for technology and management

26    employees.  SAC ¶¶ 9, 60-61.  If each subsequent Secret Agreement entered into by Oracle

27    constituted a new antitrust violation, then Hari's Sherman Act claim could have accrued as late as

28
                                                             23

1   2009, the last year in which Plaintiffs allege that a specific new Secret Agreement was entered into

2   by Oracle.  *See generally* SAC.  Accordingly, the statute of limitations for Hari's Sherman Act

3   claim began to run, under the default accrual rules, by 2009.  *See Samsung*, 747 F.3d at 1202-05.

4   As noted above, the Court finds that—in light of Plaintiffs' assumption that Hari's California law

5   claims and Sherman Act claims accrue at the same time—Hari's California law claims also

6   accrued by 2009.  The statutes of limitations expired four years later, in 2013, a year before the

7   complaint was filed on October 14, 2014.  Thus, as with Garrison's and Van Vorst's claims,

8   Hari's claims are untimely unless an exception to the default accrual rules or a tolling doctrine

9   applies.

10          In hopes of avoiding the time bar, Plaintiffs offer the following five arguments: (1)

11  Plaintiffs are entitled to statutory tolling under 15 U.S.C. § 16(i); (2) Oracle committed a

12  "continuing violation"; (3) Oracle fraudulently concealed Oracle's anticompetitive conduct; (4)

13  the California "discovery rule" applies to the UCL claim; and (5) the California "continuous

14  accrual" rule applies to the California claims.[3]  The Court addresses each argument in turn.

15          **D.  Tolling under Section 16(i)**

16          Plaintiffs contend that the statutes of limitations are tolled by four past DOJ proceedings:

17  (1) the DOJ investigation into Oracle, from 2009 until October 2014; (2) and (3) the DOJ's

18  lawsuits against Adobe and Lucasfilm, which Plaintiffs treat collectively, from September 24,

19  2010 to June 3, 2012; and (4) the DOJ's lawsuit against eBay, from November 16, 2012 to

20  September 2, 2014.[4]  Plaintiffs rely on 15 U.S.C. § 16(i), which provides:

21

22  _____

23  [3] The Court notes that Plaintiffs do not argue that the speculative damages exception, discussed by
    the Ninth Circuit in *Samsung*, applies to Plaintiffs' claims.  In the instant case, after Plaintiffs have
    twice amended the complaint and had multiple opportunities to brief the issue, "[t]he Court is not

24  inclined to manufacture arguments on Plaintiff[s'] behalf."  *Kiland v. Boston Scientific Corp.*, No.
    C 10-4105 SBA, 2011 WL 1261130, at *7 (N.D. Cal. Apr. 1, 2011) (citing *Indep. Towers of*

25  *Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the
    advocates to inform the discussion and raise the issues to the court.")).  Accordingly, the Court

26  addresses only the exceptions to the default accrual rules and the tolling doctrines raised in
    Plaintiffs' original and two supplemental briefs.

27  [4] In Plaintiffs' brief, they argue that the *eBay* litigation tolls their claims until September 2, 2014.
    However, the DOJ proceeding against eBay ended on September 2, 2014.  Section 16(i) provides

28
    Case No. 14-CV-04592-LHK
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided*, *however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

15 U.S.C. § 16(i).

In other words, to receive tolling under § 16(i) a private plaintiff must show that the plaintiff's antitrust suit is "based in whole or in part on any matter complained of" in a government antitrust proceeding. *Id.*; *see also Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985) (noting "[t]he plaintiff bears the burden of showing that the two suits are based in whole or in part" on the same matter) (citing *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir. 1974)). To determine whether a private suit is "based in whole or in part on any matter complained of" in prior government action, the Court is "limited to a comparison of the two complaints on their face." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983) (quoting *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965)).

A private plaintiff "is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." *Leh*, 382 U.S. at 59. However, there must be a "real relation" between the government and private causes of action. *Id.* "The real relation test is met where the conspiratorial acts of the defendants are intertwined with and fundamentally the same" as those alleged in the government's filed lawsuits. *See Charley's Tour*, 618 F. Supp. at 86. Factors that courts have considered to assess a "real relation" include the "substantial identity of parties," *Leh*, 382 U.S. at 63, whether Plaintiffs have alleged "a conspiracy that included the objectives, means, time span, and geographic scope of the conspiracy

---

that the statute of limitations is "suspended during the pendency thereof *and for one year thereafter*." (emphasis added). Oracle suggests that Plaintiffs seek to toll the statutes of limitations until September 2, 2015. *See* Reply at 5.

1    alleged in the government suit" and whether "evidence adduced in the trial of the government suit

2    would be of practical assistance to plaintiffs," *Chipanno*, 702 F.2d at 832.  For example, § 16(i)

3    "tolls the statute of limitations against all participants in a conspiracy which is the object of a

4    Government suit, whether or not they are named as defendants or conspirators therein." *Zenith*

5    *Radio Corp.*, 401 U.S. at 336.

6            Plaintiffs first contend that the DOJ investigation into Oracle tolls the statutes of

7    limitations.  According to Plaintiffs, DOJ opened an investigation into Oracle in 2009 when DOJ

8    began investigating other technology companies for unlawful recruiting practices.  Opp. at 3.  DOJ

9    informed Oracle that DOJ would not pursue a case against Oracle on October 29, 2014, more than

10   two weeks after Plaintiffs filed the instant action.  ECF No. 114-1 Ex. A.

11           At the outset, the Court notes that Plaintiffs spend only a single sentence arguing that the

12   DOJ investigation into Oracle tolls the statutes of limitations.  Opp. at 7-8.  Plaintiffs rely solely

13   on *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 871 (9th Cir. 1978), in which the Ninth

14   Circuit noted that "[t]he initiation of an investigation or a decision to prosecute more comfortably

15   fits the statutory language than does empanelling the grand jury."  However, the Ninth Circuit

16   proceeded to say that to begin tolling upon the initiation of an investigation or upon a decision to

17   prosecute "would introduce great uncertainty in fixing the time at which the suspension period

18   commences" and "would frustrate the statute-of-repose purpose of section 16(i)."  *Id.*  The Ninth

19   Circuit therefore *declined* to select the initiation of a government investigation as the trigger for

20   the start of § 16(i) tolling.  *Id.*

21           Instead, courts have used the date on which the government filed a complaint as the date

22   on which statutory tolling began.  *See Leh*, 382 U.S. at 59-63 (giving tolling effect from the time

23   that the government filed a complaint); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381

24   U.S. 311, 313 (1965) (giving tolling effect from the date Federal Trade Commission filed a

25   proceeding); *Chipanno*, 702 F.2d at 832-33 (giving tolling effect from the date government filed a

26   complaint); *In re Scrap Metal Antitrust Litig.*, No. 1:02 CV 0844, 2006 WL 2850453, at *22 (N.D.

27   Ohio Sept. 30, 2006) (noting "more than a government investigation is needed to activate

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

§ 16(i)"); *see also* Areeda and Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, § 321 (2014) (stating that § 16(i) "is not triggered by . . . government proceedings falling short of the filing of a complaint"). This view is consistent with the instruction of the U.S. Supreme Court and the Ninth Circuit that the private and government proceedings are to be compared by examining "*the two complaints* on their face." *Chipanno*, 702 F.2d at 832 (emphasis added) (quoting *Leh*, 382 U.S. at 59). In 2014, DOJ "closed its investigation of [Oracle] relating to potential agreements among certain firms regarding employee recruiting," without filing a complaint. ECF No. 114-1 Ex. A. Because DOJ never filed a complaint against Oracle, Plaintiffs are not entitled to § 16(i) tolling based on the DOJ's investigation of Oracle.

Plaintiffs additionally seek tolling under § 16(i) for the pendency of three government-filed lawsuits: *United States v. Adobe Sys., Inc.*, No. 10-CV-1629 (D.D.C.), *United States v. Lucasfilm, Inc.*, No. 10-CV-2220 (D.D.C.), and *United States v. eBay, Inc.*, No. 12-CV-5869 (N.D. Cal.). To receive statutory tolling for the pendency of these lawsuits, Plaintiffs must show that these lawsuits are "based in whole or in part on the same matter" as the instant lawsuit. *Charley's Tour*, 618 F. Supp. at 86. Plaintiffs argue that the three government-filed lawsuits and the instant lawsuit have many similarities: the agreements alleged in each of the lawsuits seek wage suppression; the "means" of each of the lawsuits were non-solicitation agreements implemented in part through "no hire" lists; Google, Adobe, and Intuit, which allegedly entered anti-solicitation agreements with Oracle, were defendants in *Adobe*; and there is an overlap in time between the alleged conspiracies. Opp. at 9. However, Plaintiffs do not point to specifics in any complaint and do not conduct a "comparison of the [] complaints on their face." *Chipanno*, 702 F.2d at 832.

The Court first notes that there is no overlap between the parties in the government-filed lawsuits and the instant lawsuit. The *Adobe* defendants were Adobe, Apple, Google, Intel, Intuit, and Pixar. ECF No. 111-11. The sole defendant in *Lucasfilm* was Lucasfilm. ECF No. 114-1 Ex. B. The sole defendant in *eBay* was eBay. *Id.* Ex. E. Oracle was not a defendant in any of the three government-filed lawsuits.

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1        Moreover, not one of the complaints in the three government-filed lawsuits mentions

2   Oracle.  The *Adobe* complaint alleges five substantially similar agreements, each between two

3   companies: (1) Apple and Google, (2) Apple and Adobe, (3) Apple and Pixar, (4) Google and

4   Intel, and (5) Google and Intuit.  ECF No. 111-11.  The two companies in each agreement agreed

5   not to "cold call" each other's employees.  *Id.*  The *Adobe* complaint does not mention any other

6   technology company.  Oracle was not a party to any of these agreements, and none of the alleged

7   agreements restricted any of the named companies from hiring employees from Oracle.  *Id.*

8        Similarly, the *Lucasfilm* complaint alleged an agreement between Lucasfilm and Pixar "not

9   to cold call, not to make counteroffers under certain circumstances, and to provide notification

10  when making employment offers to each other's employees."  ECF No. 114-1 Ex. B.  The

11  *Lucasfilm* complaint does not mention any other technology companies.

12       Likewise, the *eBay* complaint alleges that eBay and Intuit "agreed not to recruit each

13  other's employees" and "eBay agreed not to hire Intuit employees, even those that approached

14  eBay for a job."  *Id.* Ex. E.  The complaint further alleges direct communications between eBay

15  CEO Meg Whitman and Founder and Chairman of the Executive Committee at Inuit Scott Cook.

16  *See id.*  The *eBay* complaint does not mention any other technology companies.

17       Because the conspiracies alleged in the *Adobe*, *Lucasfilm*, and *eBay* complaints do not

18  involve Oracle, Plaintiffs' allegations of misconduct by Oracle in the instant lawsuit are not

19  "intertwined with and fundamentally the same as those alleged in the government action[s]."

20  *Charley's Tour*, 618 F. Supp. at 86.  As noted, the government-filed lawsuits and the instant

21  lawsuit lack "substantial identity of the parties."  *Leh*, 382 U.S. at 63.  Additionally, Plaintiffs

22  have not shown that "evidence adduced in the trial of the government suit would be of practical

23  assistance to plaintiffs," as there is no need for Plaintiffs to prove the existence of any of the

24  agreements in *Adobe*, *Lucasfilm*, or *eBay*.  *Chipanno*, 702 F.2d at 832; *see also In re Coordinated*

25  *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 481, 486 (C.D. Cal. 1991)

26  (finding no factual overlap from the government lawsuit when the government lawsuit was based

27  on anticompetitive conduct in different geographic area than that alleged in the private lawsuit).

28

United States District Court
Northern District of California

28

Plaintiffs rely heavily on the similarity between the kinds of alleged anticompetitive behavior, namely the existence of anti-solicitation agreements in both the instant lawsuit and the three government-filed lawsuits.  However, "the pendency of separate and distinct actions that the government filed against other [related companies] that were never alleged to be a part of a conspiracy" does not toll the statute of limitations for a private suit against a related company.  *See Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 693 (9th Cir. 1982); *see also Chipanno*, 702 F.2d at 830, 833 (finding § 16(i) applied when plaintiffs sued three of the four defendants in prior government proceeding and alleged a conspiracy that included the objectives, means, time span, and geographic scope of the conspiracy alleged in the government suit); *see also Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 322 (4th Cir. 2007) (rejecting application of § 16(i) when some of the private suit's counts alleged a different market than the government suit).  Oracle was not a "participant[] in a conspiracy which is the object of a Government suit." *Zenith Radio Corp.*, 401 U.S. at 336.  Consequently, Plaintiffs have not met their burden of showing a "real relation" between the three government-filed lawsuits and the instant lawsuit, and are not entitled to statutory tolling.  *See Leh*, 382 U.S. at 59; *Novell Inc. v. Microsoft Corp.*, 505 F.3d 302, 322 (4th Cir. 2007) ("[W]e do not believe § [16(i)] should be construed to permit private plaintiffs to 'sit on their rights' and to assert, years after the traditional statute of limitations has run, 'claims so much broader than those asserted by the government that they open entirely new vistas of litigation.'").

### E. Continuing Violation

Under the "continuing violation" theory, "each overt act that is part of the [antitrust] violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (internal quotation marks omitted); *see also Pace*, 813 F.2d at 237 ("A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured.").  In the Ninth Circuit, an overt act restarts the statute of limitations in an antitrust action if it: (1) is "a new and independent act that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating injury on the

29

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    plaintiff." *Samsung*, 747 F.3d at 1202 (internal quotation marks omitted).

2         The Court previously determined that Plaintiff Garrison's original complaint failed to

3    allege a continuing violation because "the bald assertion that '[Oracle's] conspiracy was a

4    continuing violation through which [Oracle] repeatedly invaded Plaintiff and Plaintiff Class'

5    interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described

6    herein' is insufficient to show a continuing violation." *Garrison*, 2015 WL 1849517, at *7.  The

7    Court noted, "the complaint is largely bereft of *any* dates or details with regards to Oracle's

8    specific conduct" and "there are no allegations of any new or independent actions taken by Oracle

9    after October 14, 2010—i.e., within four years of the filing date of this complaint—that caused

10   Plaintiff any new or accumulating injury." *Id.*  The Court further explained, "Plaintiff has simply

11   failed to allege any facts indicating *when* the supposed continuing violations took place, let alone

12   that they took place on or after October 14, 2010." *Id.*  The Court cautioned Plaintiffs that "failure

13   to cure the deficiencies identified" would result in a dismissal with prejudice. *Id.* at *9.

14        Plaintiffs assert that the SAC fixes the deficiencies in the original complaint by alleging:

15   (1) Oracle entered new Secret Agreements and added companies to the "no hire" list "well into

16   2012," SAC ¶ 49; (2) Oracle adhered to, enforced, and reaffirmed the Secret Agreements, *id.* ¶ 73;

17   and (3) Plaintiffs were not solicited by other companies while working at Oracle and could not

18   find employment outside of Oracle until 2015, *id.* ¶¶ 74-81.[5]

19        A review of the allegations in the SAC again fails to reveal any specific conduct by Oracle

20   during the limitations period.  Although Plaintiffs allege that Oracle continued to enter into new

21   Secret Agreements and add companies to the "no hire" list "well into 2012," Plaintiffs fail to

22

23   ───────────────
     [5] Plaintiffs expressly disclaim that Oracle's hiring of Hari in 2012 constitutes a continuing
24   violation. *See* ECF No. 155, at 3.  The Court agrees that Oracle's hiring of Hari is not an "overt
     act" sufficient to trigger the continuing violation theory.  Even if Oracle hired Hari at an
25   artificially depressed salary, the salary was based on alleged anticompetitive actions taken by
     Oracle prior to the limitations period.  *See In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68,
26   71-72 (9th Cir. 1979) (holding that the defendants' refusal during the limitations period to
     purchase afterburner devices from a particular company did not constitute an overt act because the
27   defendants' refusal was based on an agreement entered into prior to the limitations period).  Thus,
     Oracle's hiring of Hari is not "a new and independent act that is not merely a reaffirmation of a
28   previous act." *See Samsung*, 747 F.3d at 1202.

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    identify a single new agreement after 2009.  *See generally* SAC.  Although the Court accepts

2    "factual allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, the Court need not

3    accept as true "allegations that are merely conclusory," *In re Gilead Scis Sec. Litig.*, 536 F.3d

4    1049, 1055 (9th Cir. 2008).  The Court's order granting Oracle's motion for judgment on the

5    pleadings found that "the complaint is largely bereft of *any* dates or details with regards to

6    Oracle's specific conduct," and explicitly warned Plaintiffs that they must allege details regarding

7    "any new or independent actions taken by Oracle after October 14, 2010" in order to plead a

8    continuing violation.  *See Garrison*, 2015 WL 1849517, at *7.  Nonetheless, Plaintiffs' SAC—

9    which is the third complaint filed in this case—does not identify any information as to an

10   agreement entered into by Oracle after 2009, including the companies involved or the dates of

11   formation.  Plaintiffs' conclusory allegations are insufficient to allege that Oracle formed a new

12   Secret Agreement after 2009.  *See In re Gilead Scis*, 536 F.3d at 1055 (noting courts do not need

13   to accept allegations that are "merely conclusory").

14        Similarly, all of Plaintiffs' allegations about Oracle's enforcement of the Secret

15   Agreements are undated or pre-date 2009.  *See* SAC ¶¶ 26, 31, 41, 43 (discussing Oracle's

16   dissemination of the "no hire" list and adherence to the Secret Agreements in 2007 and 2008); *id.*

17   ¶¶ 35-39 (discussing Oracle's enforcement of the Secret Agreements in 2007 and 2008).  Plaintiffs

18   do allege that the 2009 "no hire" CoreTech agreement, for example, was not set to terminate until

19   2012. *Id.* ¶ 49.  However, Plaintiffs need to do more than merely allege a continuing violation—

20   they must also allege an overt act:

21        A continuing violation is one in which the plaintiff's interests are repeatedly
22        invaded and a cause of action arises each time the plaintiff is injured.  *However,
         even when a plaintiff alleges a continuing violation, an overt act by the defendant is
         required* to restart the statute of limitations and the statute runs from the last overt
23        act.

24   *Pace*, 813 F.2d at 237 (emphasis added) (citations omitted); *see also Samsung*, 747 F.3d at 1202-

25   03 (explaining that an overt act must be "a new and independent act that is not merely a

26   reaffirmation of a previous act").  Merely carrying out during the limitations period a final,

27   binding decision made prior to the limitations period does not qualify as a new overt act.  *See In re*

28

                                                  31

United States District Court
Northern District of California

1    *Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71-72 (9th Cir. 1979) (holding that the

2    defendants' refusal during the limitations period to purchase afterburner devices from a particular

3    company did not constitute an overt act because the defendants' refusal was based on an

4    agreement entered into prior to the limitations period).  Plaintiffs fail to allege any new and

5    independent actions by Oracle to enforce the 2009 CoreTech agreement—or any other

6    agreement—during the limitations period.

7        In opposition, Plaintiffs rely on *Samsung*, 747 F.3d 1199, *Columbia Steel Casting Co. v.*

8    *Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444-45 (9th Cir. 1996), and *Hennegan v. Pacifico*

9    *Creative Serv., Inc.*, 787 F.3d 1299, 1300-01 (9th Cir. 1986).  Opp. at 10.  From these cases,

10   Plaintiffs argue that each act by Oracle to enforce, renew, or expand the Secret Agreements was an

11   overt act that restarted the limitations period.  *Id.* at 10-11.  However, Plaintiffs' argument misses

12   the fact that Plaintiffs have simply failed to allege any acts of enforcement, renewal, or expansion

13   after 2009.

14       Lastly, the Court turns to Plaintiffs' allegations that they were not solicited by other

15   companies while working at Oracle and were unable to find meaningful employment after leaving

16   Oracle.  SAC ¶¶ 74-82.  Plaintiffs argue that they "are entitled to the inference at the pleading

17   stage that this was because of those agreements."  Opp. at 11.  Plaintiffs additionally point to the

18   experience of one former Oracle employee, who was told by the recruiting company Riviera

19   Partners that it could not place the former employee because Riviera Partners had an agreement

20   with Oracle not to perform job placement services for Oracle employees.  *Id.* ¶ 55.  Oracle

21   counters that the failure of other companies to solicit, hire, or place Plaintiffs cannot be an overt

22   act *by Oracle*.  Mot. at 10; Reply at 8 n.9.

23       The Court agrees with Oracle that Plaintiffs have not alleged any overt acts by Oracle after

24   2009, as required by Ninth Circuit law.  *See Pace*, 813 F.2d at 237 (holding that "even when a

25   plaintiff alleges a continuing violation, an overt act *by the defendant* is required to restart the

26   statute of limitations" (emphasis added)).  Plaintiffs contend that any overt act by co-conspirators

27   should be imputed to Oracle, and cite two cases holding that co-conspirators may be held jointly

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    and severally liable for damages caused by violations of the antitrust laws.  Opp. at 11 (citing *Beltz*

2    *Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *In re K-Dur*

3    *Antitrust Litig.*, 338 F. Supp. 2d 517, 538 (D.N.J. 2004)).  However, these cases do not address the

4    continuing violation theory nor what constitutes an "overt act," and Plaintiffs offer no substantive

5    argument to apply these cases to the continuing violation context.  As Plaintiffs have provided no

6    basis for the Court to conclude that Oracle committed an overt act, the Court concludes that Oracle

7    has not committed a continuing violation based on the acts of other companies.

8        Because Plaintiffs do not allege an overt act by Oracle during the limitations period, the

9    Court finds that Plaintiffs have failed to plead a continuing violation—namely, that Oracle

10   engaged in a "new and independent act that is not merely a reaffirmation of a previous act," which

11   "inflict[ed] new and accumulating injury" on Plaintiffs.[6]  *See Samsung*, 747 F.3d at 1202.

12   **F.  Fraudulent Concealment**

13       The purpose of fraudulent concealment is to prevent a defendant from "concealing a fraud

14   . . . until such a time as the party committing the fraud could plead the statute of limitations to

15   protect it."  *In re Animation Workers Antitrust Litig. ("Animation Workers II")*, No. 14-CV-

16   04062-LHK, 2015 WL 4974343, at *13 (N.D. Cal. Aug. 20, 2015) (quoting *Bailey v. Glover*, 88

17   U.S. (21 Wall.) 342, 349 (1874)).  Thus, "[a] statute of limitations may be tolled if the defendant

18   fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as

19   a reasonable person, did not know of its existence."  *Hexcel Corp. v. Ienos Polymers, Inc.*, 681

20   F.3d 1055, 1060 (9th Cir. 2012).  The plaintiff bears the burden of pleading and proving

21   fraudulent concealment.  *Conmar v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.

22   1988).  To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took

23   affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive

24   knowledge of the facts giving rise to [his] claim" as a result of the defendant's affirmative acts;

25

26   ────────────────

[6] The Court reiterates that this result is the same even if the Court were to consider the documents
submitted by Plaintiffs in their procedurally improper ex parte motion to supplement the record.
27   *See* ECF No. 138.  None of the proffered documents reveal specific Secret Agreements, or actions
by Oracle to ratify existing Secret Agreements, after 2009.

28

33

United States District Court
Northern District of California

1    and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to his claim.  *Hexcel*,

2    681 F.3d at 1060.

3          Moreover, allegations of fraudulent concealment must be pled with particularity.  *Conmar*,

4    858 F.2d at 502.  Although "it is generally inappropriate to resolve the fact-intensive allegations of

5    fraudulent concealment at the motion to dismiss stage," *In re Rubber Chemicals Antitrust Litig.*,

6    504 F. Supp. 2d 777, 789 (N.D. Cal. 2007), Plaintiffs nevertheless must allege specific factual

7    allegations of fraudulent concealment to survive a motion to dismiss, *In re Transpacific Passenger*

8    *Air Transp. Antitrust Litig.*, No. C 07-5634 CRB, 2011 WL 1753738, at *20-21 (N.D. Cal. May 9,

9    2011).  "Conclusory statements are not enough."  *Conmar*, 858 F.2d at 502.

10         In granting Oracle's motion for judgment on the pleadings, the Court rejected Plaintiff

11   Garrison's argument that Oracle had an affirmative duty to disclose Oracle's participation in the

12   alleged conspiracy.  The Court then identified two deficiencies in Garrison's allegations of

13   affirmative acts.  First, the Court found that Garrison failed "to allege sufficient facts showing the

14   'who, what, where, when, and how' of Oracle's alleged fraudulent concealment."  *See Garrison*,

15   2015 WL 1849517, at *8.  Specifically, the Court explained that Garrison's allegation about

16   Oracle's "pretextual, incomplete, or materially false and misleading explanations for hiring,

17   recruiting, and compensation decisions made under the conspiracy" was "conclusory," "devoid of

18   factual content" and did "not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s

19   heightened pleading standard."  *Id.*  Second, the Court found that Garrison alleged only passive

20   concealment, not "affirmative acts" of concealment.  *Id.*  Because the Court found that Plaintiffs

21   failed to allege affirmative acts, the Court did not have to reach whether Garrison had "actual or

22   constructive knowledge" or "acted diligently."

23         Plaintiffs now concede that Oracle did not have a duty to disclose its allegedly illegal

24   behavior.  *See* Opp. at 13-15.  Thus, Plaintiffs acknowledge that they must plead "affirmative acts

25   to mislead" by Oracle.  Plaintiffs contend that they have alleged four categories of "affirmative

26   acts" sufficient to demonstrate fraudulent concealment: (1) "efforts by Oracle to limit access to

27   and circulation of documents reflecting its secret agreements"; (2) "attempts by Oracle in the DOJ

28
                                                          34

United States District Court
Northern District of California

proceedings and follow-on private litigation to conceal portions of key documents from public

scrutiny through excessive redactions and overbroad confidentiality agreements"; (3) individual

conversations about compensation where "Oracle misled the Plaintiffs themselves"; and (4)

"misleading oral and written statements issued by Oracle during the limitations period," including

Oracle's employee handbook and SEC filings.  Opp. at 13-14.  Oracle counters that (1) the

allegations are insufficient under Rule 9(b); (2) Plaintiffs have pled passive and not active

concealment; and (3) Plaintiffs did not rely on any misleading statements by Oracle.  Mot. at 13-

18; Reply at 9-11.  The Court addresses Oracle's arguments in turn.

### 1.  Rule 9(b)

Having reviewed the SAC, the Court finds that the allegations for two categories of

"affirmative acts" fail to meet the heightened pleading standard of Rule 9(b).  First, Plaintiffs fail

to sufficiently allege affirmative acts of concealment during the DOJ proceedings.  Second,

Plaintiffs fail to sufficiently allege misleading conversations between Oracle personnel and

Plaintiffs.  After addressing these two categories, the Court will then address Plaintiffs' remaining

two categories of overt acts: efforts by Oracle to maintain secrecy and the public statements by

Oracle about compensation.

### a.  DOJ Proceedings

Plaintiffs argue that Oracle's conduct during the DOJ investigation was an affirmative act

of fraudulent concealment because "Oracle refused to produce any documents without first

securing agreements that the document production would not be publicly filed or disclosed,

including requiring that any documents that were publicly filed or disclosed would be heavily

redacted so as not to publicly reveal the substance of the Secret Agreements and the specific

companies involved."  SAC ¶ 104.

Plaintiffs do not cite, and the Court is not aware of, any case holding that agreements with

DOJ to redact the public versions of documents properly produced during a government

investigation are acts of fraudulent concealment.  Furthermore, Plaintiffs do not provide the "who,

what, where, when, and how" for any of the alleged document production or related agreements.

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    *See Swartz*, 476 F.3d at 764.  Plaintiffs point to no specific document or set of documents that was

2    improperly withheld or redacted.  Instead, Plaintiffs make only the conclusory allegation that

3    Oracle took these actions "between 2009 and 2013, all with the intent of preventing the disclosure

4    of its Secret Agreements."  *Id.*  Plaintiffs also fail to "set forth what is false or misleading" about

5    the redactions.  *GlenFed*, 42 F.3d at 1548.  Here, Plaintiffs fail to allege any facts that could lead

6    this Court to conclude that Oracle redacted documents during the DOJ investigation in a

7    fraudulent or misleading way, let alone facts that could pass muster under Rule 9(b).  *See*

8    *Garrison*, 2015 WL 1849517, at *8 ("This conclusory allegation devoid of factual content does

9    not satisfy Rule 12(b)(6)'s pleading standard, much less Rule 9(b)'s heightened pleading

10   standard.").

### b.  Misleading Conversations with Plaintiffs

12          Similarly, the Court finds insufficient under Rule 9(b) Plaintiffs' allegations that Oracle's

13   misleading statements on compensation to Plaintiffs and class members constitute affirmative acts

14   of fraudulent concealment.  For instance, Plaintiff Garrison alleges that "an Oracle human

15   resource employee" falsely informed Garrison that "Oracle's commission structure was

16   competitive with other technology companies."  SAC ¶ 90.  Plaintiff Hari alleges that he was

17   "directed by a senior executive to inform his team of subordinates that their compensation levels at

18   Oracle were highly competitive and that they should be very pleased with the level of

19   compensation Oracle offered."  *Id.*  Plaintiffs further allege that, "many times" during the class

20   period, "Class members repeatedly asked Oracle about how compensation was determined," but

21   Oracle responded misleadingly that compensation was "competitive" without admitting the Secret

22   Agreements.  *Id.* ¶¶ 97, 103.  The SAC provides no further information about to whom Plaintiffs

23   spoke at Oracle, where these conversations took place, the date or time of the alleged

24   conversations, or the content of the conversations.

25          The Court previously admonished Plaintiffs that, to plead fraudulent concealment in

26   accordance with Rule 9(b), Plaintiffs must allege "an account of the time, place, and specific

27   content of the false representations as well as the identities of the parties to the

28
Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  misrepresentations." *Garrison*, 2015 WL 1849517, at *8 (quoting *Swartz*, 476 F.3d at 764).

2  However, the SAC still fails to allege the "who, what, where, when, and how" of Oracle's

3  allegedly misleading conversations with Plaintiffs and class members.  For example, the SAC does

4  not specify the identity of the parties who allegedly made false representations to Plaintiffs,

5  beyond broad descriptors like "an Oracle human resource employee," a "senior executive," and

6  "Oracle."  SAC ¶¶ 90, 97.  Plaintiffs additionally do not specify the time, date, or place of the

7  allegedly misleading conversations.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

8  ("The complaint must specify such facts as the times, dates, places, benefits received, and other

9  details of the alleged fraudulent activity.").  Without more specific information as to who spoke to

10  Plaintiffs when, Plaintiffs have not given Oracle sufficient notice of what conversations Plaintiffs

11  allege were fraudulent.  As such, Oracle is hindered in its ability to adequately defend against the

12  accusation through the testimony of the Oracle employees involved.  *See Swartz*, 476 F.3d at 764

13  ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants

14  notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

15  defend against the charge."); *see also Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166

16  (N.D. Cal. 2011) ("Plaintiffs, for instance, did not plead with the requisite particularity the name

17  of the AmNet employee who concealed material facts . . . .  As such, Plaintiffs have failed to

18  sufficiently allege the circumstances constituting the alleged fraudulent concealment.").  As this

19  Court stated in its previous order, such conclusory allegations are insufficient to pass muster under

20  Rule 9(b).  *See Garrison*, 2015 WL 1849517, at *8.

21     **2.  Allegations of Oracle's Efforts at Secrecy**

22       Plaintiffs allege that Oracle's efforts to maintain the secrecy of the Secret Agreements

23  constitute affirmative acts of fraudulent concealment.  Specifically, Plaintiffs allege that Oracle

24  aimed "to avoid dissemination of the [S]ecret [A]greements and restrict the knowledge to the

25  smallest possible group within Oracle."  SAC ¶ 101.  Plaintiffs additionally allege that knowledge

26  of the Secret Agreements was "confined to only the most senior executives and the most senior

27  employees from [Oracle's] human resources and recruiting departments."  *Id.* ¶ 109.  Oracle

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

*United States District Court Northern District of California*

counters that Plaintiffs' factual allegations reveal "that Oracle's hiring policies and agreements, as well as its 'no-hire' list, were disseminated broadly to Oracle's human resources and other employees, and were anything but secret." Mot. at 13. Oracle also argues that Plaintiffs' secrecy allegations amount to passive concealment, at most. *Id.* at 13-14.

In this circuit, "affirmative acts" must consist of more than mere passive concealment. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415-16 (9th Cir. 1987). Affirmative conduct need not be "separate and apart" from acts in furtherance of the underlying conspiracy, but plaintiffs must plead more than acts that "by nature are self-concealing." *Id.* (citing *Conmar*, 858 F.2d at 505) (brackets omitted). Thus, the mere "failure to own up to illegal conduct" in response to an inquiry about whether the defendant engaged in illegal antitrust activity is not sufficient for fraudulent concealment, and to find otherwise "would effectively nullify the statute of limitations in these cases." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987); *see also Conmar*, 858 F.2d at 505 (citing favorably *Pocahontas*, 828 F.2d at 218).

In reviewing the SAC, the Court agrees with Oracle that Oracle's alleged efforts at secrecy do not plead fraudulent concealment. Plaintiffs' specific factual allegations contradict Plaintiffs' general allegations about Oracle's efforts at secrecy. In the SAC, Plaintiffs excerpt over a dozen emails from Oracle employees discussing the "no hire" list or alleged Secret Agreements. These emails reveal that Oracle employees spoke openly about the "no hire" list and the gentleman's agreements, both within Oracle and with other companies. *Id.* ¶¶ 30-31, 36, 40-47, 98-100; *see also id.* ¶ 26 (noting HR webpage lists "works for company on the Do Not Hire List" as a reason for rejecting a candidate). For instance, as "representative" of Oracle's "corporate policy" of secrecy, Plaintiffs highlight a January 17, 2008 email by Oracle's Director of Recruiting ordering an Oracle recruiter, "DO NOT email any employees of our partners or employees on our no-hire list." *Id.* ¶¶ 98, 202. In another email, the Director of Recruiting writes "to her recruiting team" that "our policy is and continues to be that **we do not directly solicit from our partners.** What this means is that we **do not** send email solicitations; we **do not** solicit by phone." *Id.* ¶ 41

38

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

(emphases in original).[7]  Plaintiffs do not explain how these emails fraudulently concealed the Secret Agreements from Plaintiffs.  If anything, these emails suggest the opposite—namely, that Oracle openly spoke about the Secret Agreements to ensure that Oracle employees adhered to the "no hire" list.  *See Garrison*, 2015 WL 1849517, at *9.

Moreover, the emails in the SAC reveal that, rather than restrict knowledge of the Secret Agreements to a limited number of employees, Oracle shared the "no hire" list with numerous people: at least the "HR department," "key human resource and recruiting personnel," the "recruiting team," and Oracle's Director of Consulting.  SAC ¶¶ 31, 41, 100; ECF No. 111-5.  Of the dozen emails in the SAC, only one email was marked do not forward.  *Id.* ¶ 100.[8]  The "do not forward" email was not confined to a limited group of senior executives, but rather was sent "to the HR department" by an "Oracle employee."  *Id.* (February 12, 2008 email allegedly "attaching a 'No Hire' list, and directing them to not forward, but to call if they have any questions").  Thus, Plaintiffs' allegations show that Oracle did not limit knowledge of the Secret Agreements "to only the most senior executives and the most senior employees from [Oracle's] human resources and recruiting departments" as Plaintiffs allege.  *Id.* ¶ 109

By comparison, in *Animation Workers II*, the Court found that the plaintiffs had alleged affirmative acts to keep the conspiracy secret.  The *Animation Workers II* plaintiffs alleged that the defendants took efforts to avoid sending emails related to the non-solicitation agreements, to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper trail relating to the agreements by using a code name for the agreements.  *Animation Workers II*, 2015

---

[7] Oracle denies that the "no hire" list is unlawful, and argues that the identified non-solicitation agreements are either unilateral policies by Oracle not to hire from its business partners or are narrowly tailored and ancillary to legitimate business interests.  Mot. at 4, 20-22.  Oracle further argues that the "no hire" list reflects the tracking of permissible non-solicitation agreements that DOJ requires of the *Adobe* and *eBay* defendants.  *Id.* at 3-4.

[8] Plaintiffs also allege that an Adobe employee sent an email about a "no hire" agreement to an Oracle employee from the Adobe employee's private email account.  SAC ¶ 47.  However, Plaintiffs do not argue that the *Adobe employee's* act should constitute fraudulent concealment by Oracle.  Additionally, Plaintiffs fail to allege that the use of a private email account was unusual at Adobe.  *See Animation Workers II*, 2015 WL 4974343, at *8 (plaintiffs averred that the defendants "sometimes communicated about the conspiracy over personal email accounts instead of employer accounts," which was a "sharp deviation from standard business practice").

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    WL 4974343, at \*19.  These allegations of secrecy in *Animation Workers II* detailed the specific

2    conduct taken by the defendants to disguise the conspiracy.  For example, the complaint in

3    *Animation Workers II* alleged that one of the defendants, Lucasfilm, "made affirmative efforts to

4    eliminate a paper trail regarding its code-named 'DNR' agreements.  In an October 2009

5    'Recruiting Staff Meeting Summary,' Lucasfilm staff emphasized in bolded, all-caps lettering that

6    all discussions of 'DNR' needed to be conducted over the phone: 'DNR questions CALL Steve.  If

7    you see an email forward to Steve and one of our lawyers.'"  *Animation Workers II*, Second

8    Consolidated Amended Class Action Compl., ECF No. 121 ¶ 138.

9         Similarly, in *Lithium Ion* a district court found fraudulent concealment when defendants

10   took affirmative steps to destroy evidence of the conspirators' secret meetings, avoided

11   memorializing conversations, and used secret codes to refer to coconspirators and topics.  *See In*

12   *re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 309192, at \*16 (N.D. Cal.

13   Jan. 21, 2014).  The *Lithium Ion* plaintiffs supported their allegations by quoting specific examples

14   of the defendants' affirmative acts to keep the conspiracy secret, such as an email in which the

15   representative of one of the defendants "asked that the recipients of his email . . . 'destroy this e-

16   mail immediately.'"  No. 13-2420, Second Consolidated Amended Compl., ECF No. 415 ¶ 219.

17        Here, by contrast, Plaintiffs fail to allege affirmative acts of concealment.  Unlike the

18   *Animation Workers II* and *Lithium Ion* plaintiffs, Plaintiffs put forth no specific factual allegations

19   that Oracle took steps to keep employees from discussing the Secret Agreements, that Oracle

20   attempted to eliminate a paper trail for the Secret Agreements, that Oracle avoided memorializing

21   the Secret Agreements in writing, that Oracle used code names, or that Oracle employees avoided

22   discussing the "no hire" list orally or in writing.

23        Additionally, Plaintiffs have not alleged that Oracle instructed supervisors or Human

24   Resources personnel to respond to inquiries about compensation with a misleading, fraudulent, or

25   pretextual response.  At best, Plaintiffs allege only that Oracle's senior executives and members of

26   the human resources and recruiting departments did not disclose the Secret Agreements to

27   Plaintiffs.  That is insufficient to allege "affirmative acts" of concealment.  *Animation Workers I*,

United States District Court
Northern District of California

28

40

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    87 F. Supp. 3d at 1216 ("That Defendants did not affirmatively disclose the details of their

2    allegedly unlawful conspiracy to Plaintiffs is neither surprising nor sufficient to constitute

3    'affirmative steps to mislead.'" (citing *Conmar*, 858 F.2d at 505)).[9]

4        **3.  Reliance on Misleading Statements**

5          The Court turns to Plaintiffs' remaining allegations, that Oracle made misleading public

6    statements in Oracle's employee handbook and its SEC filings.[10]  In the annual employee

7    handbook, for example, Oracle stated that "Oracle commits rigorously to observing applicable

8    antitrust or competition laws of all countries or organization."  SAC ¶ 85; *see also id.* ¶¶ 84, 86,

9    89-91 (discussing employee handbook).  In Oracle's annual SEC filings, Oracle stated, "In the

10    software industry, there is substantial and continuous competition for highly skilled business,

11    product development, technical and other personnel. . . . We may also experience increased

12    compensation costs that are not offset by either improved productivity or higher prices."  *Id.*

13    ¶¶ 93-94 (emphases omitted).  Plaintiffs allege that the SEC filings were false or misleading

14    because Oracle was committing antitrust violations that enabled Oracle to reduce compensation

15    expenses. *Id.* ¶ 95-96.

16

17 [9] In Plaintiffs' procedurally improper ex parte motion to supplement the record, and in Plaintiffs'
supplemental briefing on the accrual of Hari's claims, Plaintiffs argue that the Court should find

18 fraudulent concealment based on the actions of Google.  *See* ECF No. 138 Ex. B; ECF No. 149, at
6-7.  Plaintiffs appear to argue that, even in the absence of sufficient allegations that Oracle itself

19 fraudulently concealed the Secret Agreements, the Court may find fraudulent concealment based
entirely on actions of concealment taken by Google.  As noted above, the Court struck Plaintiffs'

20 ex parte motion.  However, even if the Court were to consider, and accept, Plaintiffs' argument,
the Court would find that Plaintiffs' ex parte motion does not sufficiently allege fraudulent

21 concealment by Google that may be imputed to Oracle.  The documents attached to Plaintiffs' ex
parte motion reveal Google employees openly discussing a restricted hiring policy.  *See* ECF No.

22 138 Ex. B.  The documents do not reveal that Google took steps to keep employees from
discussing the restricted hiring policy, that Google sought to destroy evidence of the restricted

23 hiring policy, or that Google avoided discussing the restricted hiring policy in writing.  There are
also no allegations about fraudulent concealment by Google in the SAC.  Accordingly, the Court's

24 conclusion that Plaintiffs have not sufficiently pled fraudulent concealment would not be altered
were the Court to consider the documents from Plaintiffs' ex parte motion.

25 [10] Plaintiffs also allege that Oracle continues to mislead the public about the Secret Agreements
because an Oracle spokeswoman stated on October 14, 2014 that "Oracle was deliberately

26 excluded from all prior litigation filed in this matter because all the parties investigating the issue
concluded there was absolutely no evidence that Oracle was involved." *Id.* ¶ 108.  Regardless of

27 whether this statement misleads the public, the statement was made after Plaintiffs filed the instant
action and thus could not have fraudulently concealed Plaintiffs' claims.

28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

*United States District Court*
*Northern District of California*

1    The Court recently found that similar allegations were insufficient to establish fraudulent

2  concealment.  *See Ryan II*, 2015 WL 7429495, at *18-19.  The Court is not aware of, and

3  Plaintiffs do not cite, any case finding that a defendant's statements in routine public filings that

4  the defendant obeys antitrust laws and participates in a competitive market alone suffice to show

5  fraudulent concealment, absent other evidence that the defendant attempted to conceal its alleged

6  antitrust behavior.  *Id.*  Rather, in the Ninth Circuit an affirmative act of denial of wrongdoing

7  constitutes an affirmative act of fraudulent concealment only "if the circumstances make the

8  plaintiff's reliance on the denial reasonable." *Conmar*, 858 F.2d at 505.[11]

9    Plaintiffs here rely solely upon *Lithium Ion*, 2014 WL 309192, to support the argument

10  that Oracle's allegedly misleading public statements constitute affirmative acts of fraudulent

11  concealment.  However, *Lithium Ion* did not hold that the defendants' public, putatively false

12  statements were sufficient on their own to support an allegation of fraudulent concealment.

13  Instead, "[i]t was the combination of those misleading, pretextual statements and the affirmative

14  efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret that

15  supported the respective plaintiffs' fraudulent concealment allegations." *Animation Workers II*,

16  2015 WL 4974343, at *18.  Specifically, the allegations in *Lithium Ion* that the defendants

17  attempted to conceal their conspiracy by destroying documents, instructing employees not to

18  memorialize conversations, and using code names constituted circumstances that rendered the

19  plaintiffs' reliance on the defendants' public statements reasonable.  *See Lithium Ion*, 2014 WL

20

21  [11] Other courts have found that misleading statements constitute affirmative acts of fraudulent
    concealment only if Plaintiffs allege actual reliance upon the allegedly misleading statements.  *See*
22  *Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047, 1061 (D. Minn. 2014) (finding no fraudulent
    concealment based on allegedly false public statements where plaintiffs did not show that they
23  were aware of the public statements); *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943
    (DRD), 2011 WL 5008090, at *23 (D.N.J. Oct. 20, 2011) ("Implicit in the notion that a plaintiff's
24  inquiry was misled or relaxed by an act of concealment is that the plaintiff relied on that act of
    concealment. . . . Here, Plaintiffs make no allegations that they were misled by Defendants'
25  concealment of the alleged conspiracy and therefore have failed to meet the second element of
    fraudulent concealment.").  The Court observes that Plaintiffs do not allege that they ever read, let
26  alone relied on, Oracle's SEC filings.  *See Animation Workers I*, 87 F. Supp. 3d at 1217 (noting
    "Plaintiffs simply offer no factual allegations with regards to . . . Plaintiffs' reliance on such
27  information").  Though the Court need not resolve whether Plaintiffs must allege actual reliance,
    the Court is skeptical that Plaintiffs could satisfy any actual reliance requirement.
28

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

309192, at *16 (describing how the *Lithium Ion* defendants "instruct[ed] the recipient of documents or emails to destroy, delete, or discard them after reading, instruct[ed] personnel to refrain from memorializing conversations, and used code to refer to particular entities or topics"); *see also Conmar*, 858 F.2d at 505 (denial of antitrust violations is an affirmative act of fraudulent concealment only "if the circumstances make the plaintiff's reliance on the denial reasonable").

Similarly, in *Animation Workers II*, the plaintiffs made ample allegations of affirmative acts of fraudulent concealment that rendered reliance upon the defendants' allegedly misleading public filings with the SEC reasonable.  2015 WL 4974343, at *10.  These included allegations that the *Animation Workers II* defendants' Human Resources departments were exchanging voluminous information about salary ranges and bonuses and colluding to fix compensation.  *Id.* at *6-7.  For example, the *Animation Workers II* plaintiffs alleged that the defendants held meetings at which they "set the parameters of a compensation survey" that "provides wage and salary ranges for the studios' technical or artistic positions, broken down by position and experience level."  *Id.* at *6.  The *Animation Workers II* plaintiffs further alleged that after participating in these meetings fixing compensation, Pixar circulated annual "talking points" memos instructing managers on how to explain compensation.  *Id.* at *9.  These "talking points" memos allegedly did not mention Pixar's agreements colluding with Pixar's competitors to fix salary ranges, and the 2007 "talking points" memo specifically instructed managers to explain that "one of the main reasons" compensation increases were low was in order to "fund additional benefit programs."  *Id.* The plaintiffs alleged that Pixar's president similarly sent a company-wide email justifying the modest compensation increases as a result of the company's construction of a new child-care center.  *Id.*

The *Animation Workers II* plaintiffs additionally alleged that they had discussed their compensation with specific, named individuals, and provided the dates, method of communication, and content of these conversations.  *Id.*  The *Animation Workers II* plaintiffs alleged that in these specifically identified conversations, the individuals with whom they spoke did not mention the collusive salary agreements.  *Id.*  The *Animation Workers II* plaintiffs also

alleged that the defendants took efforts to avoid sending emails related to the non-solicitation agreements, to avoid writing down the details of the non-solicitation agreements, and to eliminate any paper trail relating to the agreements by using a code name for the agreements.  *Id.* at *8.  Further, the *Animation Workers II* plaintiffs alleged that the defendants made affirmative misrepresentations in their public statements and filings during the DOJ investigations and made unjustified or misleading sealing motions in order to improperly seal documents that did not satisfy the requirements for sealing.  *Id.* at *10-11.  On top of all of these allegations, the plaintiffs alleged that the defendants falsely stated in their public filings that they engaged in competitive hiring.  *Id.* at *10.  This Court found that the plaintiffs' allegations in combination were adequate to render reliance upon the allegedly misleading SEC filings reasonable.  *Id.*; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008) (defendants provided "numerous specific pretextual reasons for inflated prices" and also kept conspiracy secret).

In the instant case, on the other hand, Plaintiffs have not alleged circumstances that would render their reliance on Oracle's allegedly misleading public statements reasonable.  Plaintiffs' allegations of allegedly misleading conversations with Oracle employees and of efforts by Oracle to conceal the conspiracy during the DOJ investigation do not satisfy Rule 9(b), and Plaintiffs' allegations of efforts to keep the conspiracy secret by avoiding disseminating information about the Secret Agreements is contradicted by the numerous emails quoted by Plaintiffs in which Oracle freely discussed the "no hire" list and gentleman's agreements.  Unlike the plaintiffs in *Animation Workers II* and *Lithium Ion*, Plaintiffs here have not alleged that Oracle used a code name to refer to the alleged anti-solicitation agreements or that Oracle instructed employees not to discuss the anti-solicitation agreements by email.  Plaintiffs provided just a single example of an Oracle email that was labeled do not forward.  Additionally, Plaintiffs have not alleged that Oracle instructed supervisors or Human Resources personnel to respond to inquiries about compensation

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

with a misleading, fraudulent, or pretextual response.[12]  Plaintiffs have not alleged that Oracle intentionally provided a false justification for why compensation was not higher, or that Oracle's supervisors and Human Resources personnel would have known about the effect of the anti-solicitation agreements on compensation.

Thus, Plaintiffs are left solely with the allegation that Oracle falsely represented in public filings that it abides by antitrust laws and engages in a competitive market.  However, absent *any* evidence of pretextual justifications for compensation or of steps taken by Oracle to conceal the agreements, the public filings are inadequate, on their own, to satisfy Plaintiffs' burden to show that Oracle took affirmative acts to fraudulently conceal the alleged conspiracy.  *See Hexcel*, 681 F.3d at 1060 ("[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." (emphasis omitted) (alterations in original)); *see also Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 52 F. Supp. 3d 961, 970 (N.D. Cal. 2014) (noting, in securities regulation context, that "a code of ethics is inherently aspirational; it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all").  Accordingly, Plaintiffs have

---

[12] Plaintiffs argue that the documents submitted with Plaintiffs' procedurally improper ex parte motion reveal Oracle exchanged compensation information with competitors.  First, Plaintiffs include an email from an Adobe employee asking Oracle and other technology companies to participate in a survey regarding the equity options given to employees.  *See* ECF No. 138 Ex. B.  However, the email itself indicates that Oracle had not responded to the request for information. *See id.*  Second, Plaintiffs point to a document listing compensation information for Director and Vice President positions at four companies that Oracle received from a "confidential source."  *Id.*  Given that the proposed class excludes corporate officers and senior Oracle executives, it appears that this compensation information is not relevant to Plaintiffs' allegations.  *See* SAC ¶ 64 (providing class definition).  Moreover, Garrison, Van Vorst, and Hari were not corporate officers or senior executives, and thus this compensation information would not apply to them.  Further, Plaintiffs fail to allege that Oracle used this information to create pretextual reasons for Plaintiffs' compensation, or to conceal the Secret Agreements.  Plaintiffs thus fail to explain how Oracle fraudulently concealed the Secret Agreements or why Plaintiffs' reliance on Oracle's SEC filings was reasonable.  Accordingly, even if the Court were to consider the documents submitted in Plaintiffs' ex parte motion, the Court would not find that Plaintiffs adequately alleged fraudulent concealment.

45

1  failed to plead fraudulent concealment.

2  **G. Discovery Rule**

3        Plaintiffs contend that the discovery rule applies to delay the accrual of their UCL claim.

4  Opp. at 9.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal.

5  Bus. & Prof. Code § 17200.  Plaintiffs allege that Oracle violated the UCL by entering into

6  "illegal Secret Agreements to suppress wages of their respective workforce by restricting the

7  ability of its managerial employees from attaining employment with the other technology

8  companies."  SAC ¶ 129.  Plaintiffs further allege that these acts "were unfair, unlawful, and or

9  unconscionable, both in their own right and because they violated the Sherman Act and the

10  Cartwright Act."  *Id.* ¶ 130.

11        In California, the discovery rule postpones accrual of a claim until the plaintiff discovers,

12  or has reason to discover, the cause of action.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

13  1024 (9th Cir. 2008).  Thus, according to Plaintiffs, their UCL claim did not accrue until Plaintiffs

14  "discovered" the claim on May 17, 2013, when Plaintiffs gained access to documents from the

15  *High-Tech* litigation that allegedly indicated that Oracle was party to Secret Agreements.  Opp. at

16  9.  Plaintiffs acknowledge that this Court determined in *Animation Workers I* and *Ryan I* that the

17  discovery rule does not apply to UCL claims that arise purely out of anticompetitive conduct, like

18  Plaintiffs' claim here.  *Id.* at 9 & n.2.  The Court dismissed as time barred the complaints in both

19  *Animation I* and *Ryan I*, yet Plaintiffs rely on the same arguments that the Court rejected in both of

20  those cases.  *See* Opp. at 9-10; *see also Ryan II*, 2015 WL 7429495, at *20-21 (rejecting

21  application of discovery rule to UCL claim).  The Court remains unpersuaded.

22        Plaintiffs argue that *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013), calls for

23  the application of the discovery rule here.  However, *Aryeh* does not require the application of the

24  discovery rule to all UCL claims.  *See Aryeh*, 55 Cal. 4th at 1196.  Rather, the *Aryeh* court

25  explained that the "UCL is a chameleon," and whether the discovery rule may apply is determined

26  by "the nature of the right sued upon."  *See id.*  Under Cal. Code Civ. Proc. § 338(d), "the

27  discovery rule applies to fraud actions."  *See E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App.

28  

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    4th 1308, 1318 (2007) (citing Cal. Code Civ. Proc. § 338(d)).  Thus, the *Aryeh* court held that the

2    discovery rule might be appropriate for UCL claims based on allegations of fraud, but the

3    discovery rule does not apply to UCL claims based purely on allegations of unfair competition.

4    *See Aryeh*, 55 Cal. 4th at 1196 (citing approvingly *M&F Fishing, Inc. v. Sea-Pac Ins. Managers,*

5    *Inc.*, 202 Cal. App. 4th 1509, 1531-32 (2012) (nature of UCL unfair competition claim rendered

6    discovery rule inappropriate)).

7          Applying *Aryeh*, this Court has already concluded that the discovery rule does not apply to

8    UCL claims similar to the UCL claim alleged here.  *See Animation Workers I*, 87 F. Supp. 3d at

9    1210-11.  In *Animation Workers I*, the plaintiffs based their UCL claim on the defendants' "efforts

10   to limit competition for and suppress compensation of their employees" and the defendants'

11   agreement "to restrict competition for class members' services through anti-solicitation

12   agreements and agreements to set and fix the compensation of class members."  *See* No. 14-4062,

13   Consolidated Amended Class Action Compl., ECF No. 63 ¶ 143.  The Court concluded that these

14   allegations were allegations purely of anticompetitive conduct and not allegations of fraud.

15   *Animation Workers I*, 87 F. Supp. 3d at 1210-11.  Therefore, the Court held that the discovery rule

16   did not apply to the *Animation Workers I* plaintiffs' UCL claim.  *Id.*; *see also Ryan II*, 2015 WL

17   7429495, at *20-21 (declining to apply the discovery rule to similar allegations of anticompetitive

18   conduct).

19         In the instant case, the conduct alleged as the basis for Plaintiffs' UCL claim consists of

20   Oracle's attempts to suppress the wages of Oracle employees by entering into non-solicitation

21   Secret Agreements with other companies.  SAC ¶ 129.  These allegations are equivalent to the

22   allegations in *Animation Workers I* that the *Animation Workers I* defendants took "efforts to limit

23   competition for and suppress compensation of their employees" and "agreed to restrict

24   competition for class members' services through anti-solicitation agreements and agreements to

25   set and fix the compensation of class members."  No. 14-4062, Consolidated Amended Class

26   Action Compl., ECF No. 63 ¶ 143.  Like the allegations in *Animation Workers I*, Plaintiffs' UCL

27   claim allegations are purely of anticompetitive behavior.

28    

United States District Court
Northern District of California

47

1    Although elsewhere in the SAC Plaintiffs allege that Oracle engaged in fraudulent

2    concealment, Plaintiffs' UCL claim does not mention fraudulent concealment or any alleged act of

3    fraudulent concealment by Oracle as a basis for the alleged UCL violation.  *See* SAC ¶¶ 126-133

4    (Plaintiffs' UCL claim).  Indeed, Plaintiffs do not specify any fraudulent conduct by Oracle that

5    violates the UCL.  Moreover, the Court concludes above that the SAC does not sufficiently allege

6    fraudulent concealment.  *See supra*.  Thus, the SAC does not include allegations of fraud

7    sufficient to support application of the discovery rule to Plaintiffs' UCL claim.  Because Plaintiffs'

8    UCL claim is based solely on Oracle's alleged anticompetitive conduct, the discovery rule does

9    not apply.  *See Ryan II*, 2015 WL 7429495, at *20-21 (rejecting application of discovery rule to

10   UCL claim similar to the one in the instant case); *Animation Workers I*, 87 F. Supp. 3d at 1210-11

11   (same).

12   **H.  Continuous Accrual**

13       The Court turns to Plaintiffs' argument that the Court should apply the California

14   "continuous accrual" rule to Plaintiffs' state law claims.  Under "continuous accrual," "a series of

15   wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for

16   relief may be partially time-barred as to older events but timely as to those within the applicable

17   limitations period."[13]  *Aryeh*, 55 Cal. 4th at 1192.  "[S]eparate, recurring invasions of the same

18   right can each trigger their own statute of limitations."  *Id.* at 1198.  "Generally speaking,

19   continuous accrual applies whenever there is a continuing or recurring obligation: 'When an

20   obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful

21   act occurs, triggering a new limitations period.'"  *Id.* at 1199 (quoting *Hogar Dulce Hogar v.*

22   *Cmty. Dev. Comm'n*, 110 Cal. App. 4th 1288, 1295 (2003)).

23       Accordingly, California courts have held that disputes regarding monthly billing and

24

25   _____

26   [13] The continuous accrual rule is similar to the continuing violation theory.  "However, unlike the
     continuing violation doctrine, which renders an entire course of conduct actionable, the theory of
27   continuous accrual supports recovery only for damages arising from those breaches falling within
     the limitations period."  *See Aryeh*, 55 Cal. 4th at 1199.  Whether Plaintiffs have sufficiently
     alleged a continuing violation is discussed above.  *See supra*.

28   

48

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

1    payments qualify for continuous accrual, with each month triggering a new limitations period.

2    *See, e.g.*, *id.* at 1200-01 (allegations of unlawful charges in monthly bills were recurring

3    obligations); *Tsemetzin v. Coast Fed'l Sav. & Loan Ass'n*, 57 Cal. App. 4th 1334, 1344 (1997)

4    (monthly rent payments owed were a recurring obligation); *Armstrong Petroleum Corp. v. Tri-*

5    *Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388-89 (2004) (monthly payments on a gas and

6    oil lease created a recurring obligation).  However, if the alleged recurring injuries during the

7    limitations period "arose out of a single transaction" that occurred before the limitations period,

8    the continuous accrual rule does not apply.  *State ex rel. Metz v. C.C.C. Info. Servs., Inc.*, 149 Cal.

9    App. 4th 402, 418 (2007).  Thus, allegedly fraudulent statements and admissions following an

10   inaccurate valuation in an insurance claim did not trigger new limitations periods under the

11   continuous accrual rule because all of the false statements arose out of the same insurance

12   valuation, which occurred before the limitations period.  *Id.*

13          In the instant case, Plaintiffs contend that Oracle had a "continuing obligation not to

14   collude with competitors to restrict free competition for engineers and managers that was

15   susceptible to being breached each time a Secret Agreement was entered into or renewed or

16   reaffirmed."  Opp. at 13.  The Court first observes that the SAC fails to allege this continuing

17   duty.  *See generally* SAC.  Additionally, Oracle's duty "not to collude with competitors" bears

18   little relation to the monthly payments or monthly bills that California courts have found to be

19   periodic, recurring obligations warranting continuous accrual.  *See Metz*, 149 Cal. App. 4th at 418

20   (holding that continuous accrual does not apply where "[the plaintiff's] action does not involve a

21   recurring obligation or any such period payment obligations"); *see also Aryeh*, 55 Cal. 4th at

22   1200-01 (applying continuous accrual to dispute over monthly bills); *Tsemetzin*, 57 Cal. App. 4th

23   at 1344 (applying continuous accrual to dispute over monthly rent payments); *Armstrong*

24   *Petroleum*, 116 Cal. App. 4th at 1388-89 (applying continuous accrual to dispute over monthly

25   lease payments).  The SAC contains no allegations of unlawful behavior by Oracle about any

26   similar periodic transactions.  *See generally* SAC.

27          More importantly, even if Oracle breached a continuing duty each time that Oracle

28
49

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

"entered into or renewed or reaffirmed" a Secret Agreement, Plaintiffs have failed to allege that Oracle took any of these actions during the limitations period.  Although Plaintiffs allege that Oracle continued to enter into new Secret Agreements and add companies to the "no hire" list "well into 2012," Plaintiffs fail to identify a single new agreement after 2009.  *See generally* SAC. As discussed above, in the section on the continuing violation theory, although the Court accepts "factual allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, the Court need not accept as true "allegations that are merely conclusory."  *In re Gilead Scis*, 536 F.3d at 1055.  Here, Plaintiffs offer no facts about what companies formed post-2009 Secret Agreements with Oracle, much less when those Secret Agreements took place.   Similarly, all of Plaintiffs' allegations about Oracle's "reaffirmation" or enforcement of the Secret Agreements are undated or pre-date 2009. This includes Plaintiffs' allegations that Oracle disseminated the "no hire" list and abided by the Secret Agreements internally, *see* SAC ¶¶ 26, 31, 41, 43 (listing dates in 2007 and 2008), and that Oracle threatened other companies with fines or lawsuits to ensure adherence to the Secret Agreements, *id.* ¶¶ 36-39 (listing dates in 2007 and 2008).  Thus, Plaintiffs have failed to identify any "separate, recurring invasions" of Plaintiffs' rights after 2009, and the continuous accrual rule does not apply.  *See Aryeh*, 55 Cal. 4th at 1198.

## I.  Leave to Amend

As Plaintiffs have failed to allege any applicable exception to the default accrual rules or tolling doctrine, the Court concludes that Plaintiffs' claims are time barred.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (alterations omitted).  The Court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger*, 512 F.3d at 532.

In the instant case, the Court's April 22, 2015 order dismissed Plaintiffs' claims as

Case No. 14-CV-04592-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

untimely and noted that "the complaint is largely bereft of *any* dates or details with regards to Oracle's specific conduct." *See Garrison*, 2015 WL 1849517, at *9. The Court's April 22, 2015 order stated that "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice." *Id.* Plaintiffs then filed a first amended complaint on May 28, 2015, ECF No. 102, and the SAC on June 5, 2015, ECF No. 105. The SAC has failed to cure the timeliness deficiencies—even after Plaintiffs had months of discovery, received all of the documents that Oracle produced to DOJ during the DOJ investigation, filed an opposition to the motion to dimiss, submitted additional evidence in a procedurally improper ex parte motion, and filed two supplemental briefs. The Court finds that permitting further amendment would be futile. The Court also finds that giving Plaintiffs yet another opportunity to amend their complaint to address the statutes of limitations would cause undue delay and would unduly prejudice Oracle by requiring Oracle to file repeated motions to dismiss. Therefore, the Court's dismissal of Plaintiffs' SAC is with prejudice. *See Leadsinger*, 512 F.3d at 532.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Oracle's motion to dismiss with prejudice. **IT IS SO ORDERED.**

Dated: February 2, 2016

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California